**YURY SHADRIN**
*individually and on behalf of all*
*others similarly situated*
2617 Meadowland Court
Parkville, Maryland 21234

**AND**

**TANIA BURINSKAS**
*individually and on behalf of all*
*others similarly situated*
416 Belfast Road
Sparks Glencoe, Maryland 21152

       *Plaintiffs*

**v.**

**STUDENT LOAN SOLUTIONS, LLC**
707 Landfall Drive
Rock Hill, South Carolina 29732

    **SERVE ON:**
    **RESIDENT AGENT**
    Cogency Global, Inc.
    1519 York Road
    Lutherville, Maryland 21093

**AND**

**WILLIAMS & FUDGE, INC.**
300 Chatham Avenue
Rock Hill, South Carolina 29730

    **SERVE ON:**
    **RESIDENT AGENT**
    The Corporation Trust, Inc.
    2405 York Road
    Suite 201
    Lutherville-Timonium,
    Maryland 21093-2264

**IN THE**

**CIRCUIT COURT**

**OF**

**MARYLAND**

**FOR**

**ANNE ARUNDEL COUNTY**

**CASE NO.:**   C-02-CV-20-002123

**JURY TRIAL DEMANDED**

**AND**

**FELDMAN & ASSOCIATES, P.C.**
451 Hungerford Drive
Suite 201
Rockville, Maryland 20850

    **SERVE ON:**
    **RESIDENT AGENT**
    William R. Feldman
    451 Hungerford Drive
    Suite 210
    Rockville, Maryland 20850

    *Defendants*

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Yury Shadrin and Tania Burinskas, individually and on behalf of all others similarly situated, file this Class Action Complaint against Student Loan Solutions, LLC, Williams & Fudge, Inc., and Feldman & Associates, P.C., and for cause state as follows:

## INTRODUCTION

> A creditor or a collector may not initiate a consumer debt collection action after the expiration of the statute of limitations applicable to the consumer debt collection action.

Md. Code Ann., Cts. & Jud. Proc. § 5-1202(a).

1.    Plaintiffs sue for violations of the Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act (MCDCA), the Maryland Consumer Protection Act (MCPA), and the Maryland Code, Courts and Judicial Proceedings Article, § 5-1201, *et seq.* Collectively and independently, these

2

remedial statutes prohibit debt collectors from suing consumers beyond the applicable statute of limitations, and from engaging in abusive, deceptive, or unfair collection practices.

2.    In violation of these statutes, the Defendants routinely file or threaten to file consumer collection lawsuits against Maryland consumers that are barred by Maryland's statute of limitations.  Upon information and belief, the defendants do so pursuant to a premeditated "re-aging" scheme that the debt-purchaser and two separate debt collection law firms created together to sue Maryland consumers for time-barred debts.

3.    The Federal Trade Commission ("FTC") has determined that "[m]ost consumers do not know their legal rights with respect to collection of old debts past the statute of limitations ... when a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." *See*, https://www.ftc.gov/opa/2012/01/asset.hstm. (last accessed October 28, 2020).

4.    In 2011, the Maryland legislature responded to unfair attempts to revive expired debt by enacting Md. Code Ann., Cts. & Jud. Proc. § 5-1201.  This states that "A creditor or a collector may not initiate a consumer debt collection action after the expiration of the statute of limitations applicable to the consumer debt collection action" and that any action by the consumer does not revive or extend the statute of limitations.

3

5.      Between 2018 and 2020, Defendant Student Loan Solutions, LLC and its out-of-state debt collection attorneys, Williams & Fudge, Inc., have been sued in at least nine federal and state courts for suing consumers on time-barred debts. Despite these numerous lawsuits, the Defendants continue to sue Maryland consumers on time-barred consumer debt, and they do so with knowledge that to do so is illegal, and with actual knowledge that the debt is time-barred.

6.      The Plaintiffs and putative class members are not members of any other certified or putative class filed in the other nine state and federal actions.

7.      The alleged debts of the named Plaintiffs arose from a portfolio of charged-off private student loans for Maryland consumers that Bank of America allegedly sold to Student Loan Solutions on October 31, 2017 (the "Maryland accounts").

## **PARTIES**

8.      Plaintiff Yury Shadrin ("Shadrin") is a resident of Baltimore County, Maryland.  At all times material hereto, Mr. Shadrin was a "consumer" as said term is defined in the FDCPA, MCDCA and MCPA.

9.      Plaintiff Tania Burinskas ("Burinskas") is a resident of Baltimore County, Maryland.  At all times material hereto, Burinskas was a "consumer" as said term is defined in the FDCPA, MCDCA and MCPA.

10.      Defendant Student Loan Solutions, LLC ("SLS") is a limited liability company organized under South Carolina law and registered to do business as a foreign corporation with the Maryland State Department of Assessments and

4

Taxation ("SDAT"). SLS is licensed with the Maryland Department of Labor as a debt collector and can be served with process in Maryland.

11.    SLS regularly acquires defaulted student loan debts and enforces the loans against the borrowers.

12.    SLS regularly files lawsuits to conduct collection activities in Maryland, and has filed debt collection lawsuits in at least ten different counties since 2018.

13.    According to its attorneys, SLS was not involved with the Maryland accounts prior to default; all debt collection activities occurred post-default.

14.    Defendant Williams & Fudge, Inc. ("W&F"), is a collection agency organized under South Carolina law and registered to do business as a foreign corporation with SDAT. W&F is licensed with the Maryland Department of Labor as a debt collector and can be served with process in Maryland.

15.    Defendant Feldman & Associates, P.C. ("Feldman") is a collection agency organized under South Carolina law and registered to do business as a foreign corporation with SDAT. Feldman is licensed with the Maryland Department of Labor as a debt collector and can be served with process in Maryland.

## JURISDICTION AND VENUE

16.    The Circuit Court has exclusive original subject matter jurisdiction over the claims asserted herein because the Plaintiffs seek in excess of $30,000 in damages and has exercised their right to a trial by jury.

17.    The Circuit Court can exercise personal jurisdiction over the Defendants.  Defendants regularly conducts business in Maryland.  The cause of action for this dispute arose from the Defendants' statewide debt collection activities.

18.    This Court has jurisdiction and venue of all causes of actions alleged herein, as the claims for relief accrued in Maryland.

19.    Because there are multiple defendants and there may be no single venue applicable to all defendants, venue is proper in this court because the Defendant Feldman regularly files lawsuits in this county, and has filed at least 45 such lawsuits in the past two years.  Md. Code Ann., Cts. & Jud. Proc. § 6-201(b).

## FACTS SPECIFIC TO THE PLAINTIFFS

20.    For the purposes of the Fair Debt Collection Practices Act, each of the Plaintiffs is a "consumer", each had a "debt", and each of the Defendants is a "debt collector" that engaged in "communication" as those terms are defined by § 15 U.S.C. § 1692a of the FDCPA.

21.    For the purposes of the Maryland Consumer Debt Collection Act, each of the Defendants is a "person" and a "collector", and each of the alleged debts arose from a "consumer transaction" as those terms are defined in.  Md. Code Ann., Com. Law § 14-201.

22.    For the purposes of the Maryland Consumer Protection Act, each of the Plaintiffs is a "consumer", each of the alleged debts was a "consumer debt" and

each Defendant is a "person" as those terms are defined in Md. Code Ann., Com. Law § 13-101.

23.    Defendants are "debt collectors," as defined by the FDCPA, 15 U.S.C § 1692a(6). Defendants W&F and Feldman are debt collectors because they routinely collect debts owed to others (namely SLS). Defendant SLS is a debt collector because it is a business that operates for the principal purpose of collecting defaulted student loans.

24.    For the purposes of the Consumer Debt Collection Actions statute, each of the Plaintiffs is a "debtor" and the Defendants are each a "collector" attempting to collect "consumer debt" in a "consumer debt collection action" as those terms are defined in Md. Code Ann. CJ § 12-501.

25.    SLS is also a "creditor" and a "debt buyer" as those terms are defined in Md. Code Ann. CJ § 5-1201.

## I.    <u>Defendants' Illegal Debt Collection Scheme</u>

26.    According to the United States Office of the Comptroller of the Currency, as of 2000, account management policy for all national banks and their subsidiaries "generally requires that closed-end loans be charged off when 120 days past due and that open-end credit be charged off when 180 days past due." https://www.occ.treas.gov/news-issuances/bulletins/2000/bulletin-2000-20.html, last accessed October 28, 2020.

27.    Upon information and belief, the last date of payments on the Maryland accounts occurred in 2014 and 2015.

28.    According to Plaintiffs' records, when these accounts were charged-off, as required by federal law, the entire balance became due.

29.    According to one Maryland consumer's records, Bank of America regularly sent consumers post-default notices advising that the entire balance was then due.

30.    According to the Plaintiffs' records, their Maryland student loans were serviced by a loan servicer named "American Education Services" ("AES"). AES also typically sent consumers notices known as the "final notice" that advised consumers that their balance was at least 120 days late, and stated, "the entire principal balance and accrued interest will soon be due in full unless you act."

31.    Following the final notice from AES, Bank of America then hired third-party debt collectors, including Defendant Williams & Fudge, who sent Maryland consumers form notices demanding the entire balance in full.

32.    Williams & Fudge also sent Maryland consumers form notices stating that Student Loan Solutions hired them to demand the entire balance in full.

33.    Bank of America does not keep any records of accounts that are older than seven years, and does not have any records of the Plaintiffs' accounts that are the subject of this dispute.

34.    Upon information and belief from Plaintiffs' records, Plaintiffs both received multiple demands for the entire amounts allegedly due on their accounts from different debt collectors.

35.    In 2019, Defendants sent Maryland consumers new written communications and filed debt collection lawsuits in an attempt to collect time-barred debts. This scheme was designed to mislead consumers and work around any potential affirmative defenses related to the statute of limitations.

36.    The nature of the scheme, to which each of the Named Plaintiffs was subjected, was as follows:

a. Student Loan Solutions acquired the debts from Bank of America in October of 2017.

b. Despite having previously sent letters demanding the full account balances, Williams & Fudge devised new form "acceleration" notices to be sent to Maryland consumers to advise them of a so-called acceleration of the loan balance from an arbitrary date three years prior to the date on which they sent the newly devised form.

c. Student Loan Solutions drafted an affidavit that stated that the acceleration notice was valid, and that calculated principal-only payments for three years back through the remaining balance of the loan.

d. Feldman communicated with consumers via telephone to demand payment on the stale accounts and then filed debt collection lawsuits against Maryland consumers, which incorporated the newly devised form "acceleration" notices and the Affidavits as supporting exhibits to the debt collection lawsuits.

9

37.    The Defendants willfully and knowingly concocted this scheme as a workaround in hopes that Maryland consumers would not have documents from six and seven years prior to show that the balance of the loan had already been charged-off and demanded in full.

38.    Unfortunately for the Co-Defendants, Plaintiffs did have records of prior the letters they received in which Williams & Fudge demanded the entire balance in full.

39.    In addition, according to discovery produced in the underlying debt collection actions filed against the Named Plaintiffs, Williams & Fudge admitted that, more than three years prior to the debt collection attempts in Maryland against the Named Plaintiffs, it used a form letter template to demand the total balances for the accounts which were the subject of the time-barred collection attempts.

40.    Defendants did not compute interest on the time-barred accounts because they knew they did not send consistent notices to the Plaintiffs under federal law that would have permitted them to charge interest on the alleged debts.

41.    Defendants knowingly lowered the total balance to the principal balance for the past three years in an attempt to side-step federal regulations, when in fact, they had failed to timely collect these alleged debts.

42.    In sum, the entire theory to collect the principal balance from three years prior to the artificial acceleration date has no basis or justification in Maryland or federal law.

## II.    **Facts Specific to Plaintiff Shadrin**

43.    On or about September 28, 2006, Shadrin obtained a private student loan to attend college.

44.    The private student loan was a Gate Universal Loan with Bank of America. This was known as a "direct-to-consumer" loan that did not require authorization from a university.

45.    Shadrin financed $12,150.00 with an APR of 7.839% and an adjustable rate. According to the payment schedule, payments began on January 6, 2009 at $117.79 per month.

46.    Between 2006 and 2014, Shadrin received communications from AES, the student loan servicer for his private student loan. He made payments on the alleged debt during this time period.

47.    Shadrin did not make any payments on his private student loan after 2014.

48.    Upon information and belief, Bank of America charged off the private student loan in 2015 pursuant to federal law.

49.    At the time of the charge-off, the entire balance was accelerated by Bank of America and through its third-party debt collectors.

50.    On or about August 16, 2016, Shadrin received a form letter from Williams & Fudge demanding the full amount due, $15,452.61. A copy of the letter is attached as **Exhibit A**.

51.    On March 6, 2020, Defendant SLS, by and through its attorneys, Feldman & Associates, filed a debt collection action in the District Court for Baltimore County, Case No. D-08-CV-20-014318 to collect the alleged private student loan (the "Shadrin debt collection action.")

52.    Defendants SLS and Feldman sought to collect $7,188.04 in an allegedly outstanding principal balance.

53.    As justification for the amount, Defendants SLS and Feldman submitted an affidavit stating that they were waiving prejudgment interest and had created a monthly installment value of "$50.62".

54.    Pursuant to their scheme, they falsely stated that they had "accelerated" the principal value as of March 6, 2020, when in fact the entire balance had been accelerated in 2016, as evidenced by the August 16, 2016 Williams and Fudge acceleration letter attached as Exhibit A.

55.    The affidavit also referred to an "Acceleration Notice dated November 26, 2019." *See* attached **Exhibit B**, "Affidavit." This supposedly triggered Defendant SLS' right to collect the whole debt.

56.    The Affidavit further stated that "within the past 3 years, SLS's records reflect no installment payments on the Note." *See* Exhibit B. It further stated, in relevant part, that Plaintiff owed $7,188.04 to original creditor Bank of America, and "Pursuant to the Agreement, SLS hereby accelerates the loan and demands all payments due. Consequently, $7,188.04 is now immediately due and owing to SLS." *See* Exhibit B.

57.    The "Acceleration Notice" that is referred to in the Affidavit (Exhibit B) is actually a form letter from Williams & Fudge, dated November 26, 2019 and addressed to Mr. Shadrin, demanding $7,188.04 in an alleged outstanding principal balance. *See* **Exhibit C**, "Acceleration Notice."

58.    The so-called "acceleration" which allegedly occurred in 2019 is a complete fabrication, as W&F had already demanded the full balance of Mr. Shadrin's account on August 16, 2016, more than three years prior to the 2019 Acceleration Notice.

59.    Moreover, the Acceleration Notice from Defendant W&F failed to mention that the debt was barred by the applicable statute of limitations in Maryland.

60.    Contrary to what is required by Maryland law, the Defendants did not attach a true and accurate copy of terms and conditions of the debt. Instead, Defendants included a document labeled "General Promissory Note Example."

61.    When he got served with the complaint, Shadrin contacted Defendant Feldman for more information.

62.    Defendant Feldman's representative advised Plaintiff that he had no defenses and was required to pay back his private student loan. Defendant Feldman further advised Plaintiff that if he did not enter into a payment arrangement with them, they would put a lien on his property and garnish his wages and bank accounts.

13

63.    Defendant Feldman then advised Plaintiff that it would be best to enter into a Consent Judgment for the full amount, but that Defendants would lower the amount once they agreed to the exact number.

64.    Defendant Feldman did not advise Plaintiff that this debt was time-barred.

65.    The Defendants' illegal actions in attempting to collect this debt caused the Plaintiff to suffer costs, attorney's fees, inconvenience, plus physical manifestations of emotional distress, humiliation, familial tensions, and mental anguish. The emotional distress included but was not limited to: anxiety, fear for the future, depression, loss of appetite, nausea, and loss of sleep. Plaintiff sought medical help from his provider for the emotional distress, but it was not available due to limited resources dedicated to the COVID-19 pandemic.

### III.    Facts Specific to Plaintiff Burinskas

66.    Plaintiff Burinskas signed two direct-to-consumer private student loans with Bank of America to finance her college tuition.

67.    She obtained the first loan ("Loan #1") on or about January 14, 2008. Her last date of payment was on or about December 7, 2015.

68.    The principal amount of Loan #1 was $11,049.72 with an adjustable interest rate.

69.    She obtained the second loan ("Loan #2") on or about March 18, 2008. Her last date of payment was on or about September 29, 2015. The loan was charged-off on March 23, 2016.

70.    The principal amount of Loan #2 was $13,259.67 with an adjustable interest rate.

71.    On August 5, 2016, Sunrise Credit Services, Inc., a debt collector acting for Bank of America, wrote to Burinskas, seeking to collect Loan #2. The letter stated that both the "account balance" and the "balance due" were $17,683.79, demonstrating that Bank of America accelerated Loan #2 on or before August 5, 2016. *See* **Exhibit D**, "Sunrise Debt Collection Letter."

72.    On November 12, 2017, Defendant W&F sent Burinskas a collection letter stating that Defendant SLS had purchased both loans. The letter stated that the "Amount Due" for the two loans was $29,213.91 and that the "amount owed" was $$11,530.12 for Loan #1, and $17,683.79 for Loan #2. *See* **Exhibit E**, "W&F Debt Collection Letter."

73.    Despite the prior acceleration of both loans, W&F sent two letters dated November 26, 2019 to Burinskas, each claiming to accelerate Loans #1 and #2 respectively as of that date, and demanding $7,182.24 on Loan #1 and $9,832.72 on Loan # 2. *See* **Exhibit F**, "W&F Acceleration Letters."

74.    On January 2, 2020, Defendant Feldman sent two collection letters to Burinskas, in substantially identical terms, demanding payment "due in full" plus "attorney's fees of $250" and threatening that "court costs will accrue and be added to the debt if a lawsuit is filed." *See* **Exhibit G**, "Feldman Collection Letters."

75.    On information and belief, Feldman's fee agreement with SLS was contingent. This is based on Feldman's attorney's fees affidavits in the collection

cases against Burinskas. SLS had therefore not incurred $250 in attorney's fees the letter was sent.

76.    Because each loan agreement required Burinskas to pay only amounts *incurred* by the lender to enforce the loan agreement, including reasonable attorney's fees, Burinskas was not obligated to pay the $250 when the letter was sent.

77.    Further, Burinskas would not have become liable for any court costs merely because suit was filed. Burinskas would be liable for those fees only if SLS ultimately obtained a judgment against her in which the court included those costs in the judgment, or if she agreed to pay them as part of a settlement.

78.    Plaintiff Burinskas' court file for Loan #1 contains an Affidavit similar to Plaintiff Shadrin's, in that it falsely claimed the date of acceleration as occurring years after it had actually occurred. *See* **Exhibit H**, "Affidavit for Loan 1."

79.    Her court file for Loan #2 also contains an Affidavit similar to Plaintiff Shadrin's, in that it falsely claimed the date of acceleration as occurring years after it had actually occurred. *See* **Exhibit I**, "Affidavit for Loan 2."

80.    In violation of Maryland law, the Defendants did not include a true and accurate copy of terms and conditions in the debt collection action. Instead, Defendants included a document labeled "General Promissory Note Example."

81.    Plaintiff Burinskas has advised Defendants of her statute of limitations defenses, but they have refused to dismiss the illegal debt collection actions against her.

16

82.    The Defendants' illegal actions in attempting to collect this debt caused the Plaintiff to suffer costs, attorney's fees, inconvenience, and physical manifestations of emotional distress, humiliation, familial tensions, and mental anguish.  The physical manifestations of emotional distress include but are not limited to included: loss of sleep, constant anxiety, weight gain, heart palpitations, and exacerbation of a chronic nervous system condition that is made worse by stress.

## CLASS ACTION ALLEGATIONS

83.    According to the debt collection actions, Defendants Feldman and SLS maintain a large portfolio of assigned consumer debt that originated between Bank of America and Maryland consumers.

84.    Upon information and belief based on a review of records and research from other state and federal actions, collection activity on much if not all of this portfolio of debt is barred by the three-year statute of limitations under Md. Code Ann., Cts. & Jud. Proc. § 5-101.

85.    In the past three years, SLS has filed, with Feldman as its attorneys, at least thirty-eight debt collection actions against Maryland consumers.

86.    Defendants Feldman and SLS submitted assignment documents to Maryland courts claiming that these files have transferred directly from Bank of America to Defendant SLS, when these loans have not been directly assigned and were serviced by different entities.

17

87.     Defendants Feldman and SLS regularly file cases for time-barred debt in Maryland.

88.     Defendants W&F regularly draft and send Maryland consumers bogus Acceleration Notices that are identical in form and style to the ones received by Plaintiffs and do not contain statements advising that the debt is time-barred.

89.     Under Md. Code Ann., Cts. & Jud. Proc. § 5-1202, "a creditor or a collector may not initiate a consumer debt collection action after the expiration of the statute of limitations applicable to the consumer debt collection action."

90.     All Defendants regularly violate Md. Code Ann., Cts. & Jud. Proc. § 5-1202 by attempting to collect time-barred debt.

91.     In Maryland, Md. Code Ann., Com. Law § 15-402 governs when a debt collection action may be maintained under seal.

92.     Defendant SLS did not follow the requirements of Md. Code Ann., Com. Law § 15-402 and cannot maintain actions for this debt.

93.     Defendants lost on this very issue on August 7, 2019 in the Circuit Court for Prince George's County, Case No., CAL-19-15448, but have knowingly continued to file time-barred debt against Maryland consumers.

94.     Defendants SLS and W&F have been sued in state and federal courts in Iowa, Kentucky, New York, Pennsylvania, Illinois, Virginia, Washington, and Oregon for violating state statutes of limitation.

95.     On June 3, 2020, Defendant SLS lost a motion for summary judgment in  Case No. LACL144993, in the Iowa District Court in and for Polk County, on the

basis that it could not prove the assignment of the debt from Bank of America. In that action, Defendant SLS "produced no documents showing it has been sold or assigned the alleged account of the Defendants."

96.    On September 14, 2020, the Superior Court of the State of Washington granted summary judgment in favor of a consumer in Case No. 20-2-02306-0 SEA against Defendant SLS, and found that SLS misrepresented on multiple occasions that a private student loan was accelerated in 2019 when in fact it had been accelerated in 2009. The court also found that these collection efforts violated multiple provisions of the FDCPA.

97.    Defendant Feldman knew or had reason to know of these actions, but has disregarded the related lawsuits.

98.    Defendant Feldman regularly attempts to convince consumers like Plaintiffs to enter into consent judgments for this stale portfolio of debt.

99.    Defendant Feldman regularly seeks attorney's fees of twenty percent on debts in the SLS portfolio.

100.    Defendant W&F regularly sends Maryland consumers debt collection letters in an attempt to collect time-barred debt, in violation of Maryland law, and without any statement to advise consumers that the debt is time-barred.

101.    Defendant Feldman regularly sends collection letters to Maryland consumers claiming that they owe an additional $250 in attorney's fees, even though Feldman's fee agreement with SLS is contingent.

102.    Defendant Feldman regularly sends collection letters to Maryland consumers stating that court costs "will" be added to their debt if suit is filed.

103.    The Plaintiffs bring this action on behalf of themselves and two classes of other persons similarly situated.

104.    **Definition of Statute of Limitations Class.**  The first class is the "Limitations Class":

> All Maryland residents from whom the Defendants collected or sought to collect an alleged debt on behalf of Student Loan Solutions where the original debt was incurred more than 3 years prior to the collection attempt, and where the collection attempt was in the form of written communication, including but not limited to in the forms of 1) a purported notice of acceleration letter or 2) a lawsuit.

105.    **Definition of Feldman Letter Class.**  The second class is the "Feldman Letter Class":

> Any person to whom Feldman sent a letter that stated directly or indirectly that (a) the recipient owed attorney's fees; and/or (b) that if a lawsuit was filed, the recipient would be required to pay court costs, within the 1 year immediately preceding the filing of this complaint.

106.    **Exclusions from Both Classes.**  The following persons are excluded from each class:

> An employee or independent contractor of the Defendants; (ii) a relative of an employee or independent contractor of the Defendants; (iii) an employee of the Court where this action is pending, or (iv) a person who filed for bankruptcy and received a discharge after the date of the letter.

107.    **Numerosity of the Classes.**  Pursuant to Md. Rule 2-231(a)(1), the prospective class members are estimated to number at least 100 and are so numerous that joinder of all members would be impractical.  The estimate of at

least 100 is based on the fact that since 2018 there are at least 38 lawsuits filed by SLS with Feldman as the attorneys.

108.    The exact size of the proposed class and identity of the members thereof are readily ascertainable from Student Loan Solutions' business records.

109.    **Existence of Common Questions of Law and Fact.**    Pursuant to Md. Rule 2-231(a)(2), there are common questions of law and fact which predominate over any individual of class members.    These common questions include, but are not limited to:

    a.    Whether Defendant Student Loan Solutions collected or attempted to collect time-barred debt.

    b.    Whether Defendant Feldman collected or attempted to collect time-barred debt.

    c.    Whether Defendant Feldman collected or attempted to collect attorneys' fees for time-barred debt.

    d.    Whether Defendant Williams & Fudge collected or attempted to collect time-barred debt.

    e.    Whether Defendant Feldman made misleading statements in it collection letters by claiming (1) unearned attorney's fees and (2) that the court costs would inevitably be added to the alleged debt if suit were filed.

110.   **Typicality of Claims.**  The Class Representatives were sued and received form notice documents as described above.  As such, the claim of the Class Representatives are identical to those of the class members.  Therefore, pursuant to Md. Rule 2-231(a)(3)the Class Representatives have claims that are typical of those of the class members.

111.   **Adequacy of Representation.**  Pursuant to Md. Rule 2-231(a)(4), Yury Shadrin and Tania Burinskas will fairly and adequately protect and represent the interest of each class member.  The Plaintiffs' interests are not antagonistic to those of the other members of the Class.

112.   The Class Representatives are represented by counsel competent and experienced in both consumer protection and class action litigation.

113.   The Plaintiffs have no conflicts of interest that would interfere with their ability to represent the interests of the members of the Class.

114.   Neither the Plaintiffs nor their counsel have any interest which might prevent them from actively and vigorously pursuing this action.

115.   **Predominance and Superiority under Md. Rule 2-223(b)(3).** A class action is superior to other methods for fair and efficient adjudication of this controversy.  Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually. The prosecution of separate actions by the individual class members,

even if possible, would create a risk of inconsistent or varying adjudications with respect to the individual class members against Defendants.

116.    Members of the proposed class who have an interest in individually controlling the prosecution of separate claims against Defendants will not be prejudiced by this action. Each member of the proposed classes will be identified through discovery from Defendants and will be notified and given an opportunity to opt out of their respective class(es).

117.    The Class Representatives do not presently know the nature and extent of any pending litigation to which a member of the proposed classes is a party and in which any question of law or fact controverted in the present action is to be adjudicated. The Class Representatives will identify any such pending litigation by discovery from Defendants.

118.    **Certification of a Class under Md. Rule 2-231(b)(2).** Certification of a class under Md. Rule 2-231(b)(2) is also appropriate as the questions of law or fact common to the members of the class predominate over any questions affecting an individual class member; and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

119.    The Class Representatives request certification of a class for monetary damages under Md. Rule 2-231(b)(3) and for equitable relief under Md. Rule 2-231(b)(3).

120.    There are no difficulties likely to be encountered by the Court in the management of this proposed class action.

121.    The Class Representatives' counsel is entitled to a reasonable fee from the class members or from a common fund for the handling of this action.

## CAUSES OF ACTION

### COUNT ONE
### VIOLATIONS OF FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §1692, *et seq.*

122.    The Class Representatives reallege and reincorporate herein by reference the allegations contained in paragraphs above as if set forth in full herein.

123.    This is an action for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, *et seq.*

124.    Pursuant to § 1692e, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. This prohibition specifically includes the false representation of the character, amount or legal status of any debt.

125.    Pursuant to § 1692k(a)(1) and § 1692k(a)(3), a debt collector in violation of the FDCPA is liable for actual damages, court costs and attorney's fees.

126.    Defendants violated the FDCPA by sending demand letters for statute-barred debts without any notice or warning that the debts were time barred.

127.    Defendant violated the FDCPA by sending acceleration notices falsely stating that "SLS hereby accelerates the loan" when in fact the loan had previously been accelerated.

128.   Defendants SLS & Feldman violated the FDCPA by filing collection lawsuits against Plaintiffs which were barred by the statute of limitations and prohibited by law.

129.   Defendants SLS & Feldman violated the FDCPA by falsely representing on Maryland court form DC-CV-106 that it attached a "certified or properly authenticated photocopy or original document showing the terms and conditions of the consumer debt" when in fact they attached only a blank form "General Promissory Note Example" of the terms and conditions.

130.   Defendants SLS and Feldman violated the FDCPA by falsely stating in Feldman's collection letters that Plaintiffs owed $250 in attorney's fees.

131.   Defendants SLS and Feldman violated the FDCPA by falsely stating in Feldman's collection letters that court costs would be added to Plaintiffs' alleged debts if suit was filed.

132.   Defendants' misrepresentations were material because they are the kind of misrepresentation likely to influence a consumer's response to Defendants' collection efforts: the false representation that a consumer owes $250 in attorney's fees is likely to cause that consumer to be willing to pay more than they otherwise would to settle the debt; the false representation that a consumer will become liable for unspecified court costs if they are sued will increase the pressure on that consumer to pay before suit is filed; the false representation that the original terms of the loan agreement were attached to the complaint tends to conceal from consumers a possible defense to the lawsuit – failure to attach the original terms

25

of the loan agreement; the false representation that a loan was accelerated in 2019, when it was actually accelerated before that date, conceal from consumers that their alleged debt may be beyond the statute of limitations, or that they will remain legally obligated on the debt for longer than is actually the case.

133.   As a result of Defendants' conduct, Plaintiffs and the class have suffered a concrete and legally cognizable injury by Defendants' collection activities proscribed by Congress under the FDCPA. For the Named Plaintiffs, said injury or loss included but was not limited to costs, attorney's fees, inconvenience, plus physical manifestations of emotional distress as described above in this Complaint.

134.   Accordingly, Plaintiffs and the class are entitled to an award of actual and statutory damages pursuant to 15 U.S.C. §1692k.

135.   Plaintiffs and the class are entitled to an award of costs and attorney's fees pursuant to 15 U.S.C. §1692k.

## COUNT TWO
### VIOLATIONS OF THE MD. CONSUMER DEBT COLLECTION ACT
### Md. Code Ann., Com. Law § 14-201 *et. seq.*

136.   The Class Representatives reallege and reincorporate herein by reference the allegations contained in paragraphs above as if set forth in full herein.

137.   Plaintiffs incurred a debt, which was primarily for personal, family, or household purposes, and is therefore a "consumer transaction" as that term is defined by the MCDCA.

138.   Defendants have attempted to collect a debt arising from a consumer transaction and are therefore "collectors" within the meaning of the Maryland Consumer Debt Collection Act (MCDCA), Md. Code Ann. Com. Law § 14-201 (b).

139.   Pursuant to § 14-202 (11), a collector may not engage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act.

140.   Defendants violated the MCDCA by violating the FDCPA, as described in Count I.

141.   Defendants violated the MCDCA by attempting to collect and filing consumer debt collection actions beyond the applicable statute of limitations in violation of Md. Code Ann., Cts. & Jud. Proc. § 5-1202.

142.   Pursuant to § 14-203, a collector in violation of the MCDCA is liable for any damages proximately caused by the violation.  This explicitly includes damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

143.   The Named Plaintiffs were each harmed as a direct result of the Defendants' violation of the MCDCA.  The harms included but were not limited to costs, attorney's fees, inconvenience, plus physical manifestations of emotional distress with or without accompanying physical injury, as described above in this Complaint.

144.   As such, the Named Plaintiffs and the Classes are entitled to relief under the MCDCA.

## COUNT THREE
### DECLARATORY AND INJUNCTIVE RELIEF
### MD. CTS. & JUD. PRO. §3-406

145.    The Class Representatives reallege and reaffirm the allegations contained above as if set forth hereat in full.

146.    This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro §3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the student loan accounts of the Class Representative and members of the class and the consumer protections embodied in the Maryland Consumer Protection Act and Fair Debt Collection Practices Act.

147.    Defendants maintain that they may operate a business of consumer debt collection without complying with the requirements of Maryland consumer law. As such, consumers will not receive the protections and benefits of Maryland law until this Court declares and affirms that Defendants must comply with the requirements of the Maryland and federal debt collection laws.

148.    Based on information and belief, there is an actual, justiciable controversy between the parties relating to the debt collection notice and lawsuit of the Class Representative and members of the Class, and the application of Maryland and federal debt collection laws to those documents.

149.    The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing Defendants from violating the law of the State of Maryland. Those violations of the law have caused

28

– and can continue to cause others – injury or loss including but not limited to costs, attorney's fees, inconvenience, plus physical manifestations of emotional distress as described above in this Complaint.

150.    The Class Representative and other members of the Class are likely to succeed on the merits of this action.

## COUNT FOUR
### VIOLATIONS OF THE MD. CONSUMER PROTECTION ACT
### Md. Code Ann., Com. Law § 13-101 *et. seq.*

151.    The Class Representatives incorporate by reference the foregoing allegations of this Complaint.

152.    Plaintiffs are "consumers" within the meaning of the Maryland Consumer Protection Act ("MCPA"), Com. Law § 13-101(c).

153.    Plaintiffs incurred all alleged debts subject to this dispute primarily for personal, family, or household purposes.

154.    The Defendants are subject to all of the consumer protections mandated by the CPA which, among other things, prohibits unfair or deceptive practices in the collection of consumer debts.  MCPA, Com. Law §§ 13-303(c) and (d).

155.    Defendants' actions in violation of the MCDCA constitute unfair or deceptive trade practices in violation of MCPA § 13-301 (14).

156.    Defendants made misleading written statements in written communications to Plaintiff and the putative class.

157.    Defendants further made material omissions that the debt was time-barred.

158.    Plaintiffs relied on the Defendants' statements when they received the Feldman Letter and when they were sued.

159.    The Named Plaintiffs sustained injury or loss under as the result of the Defendants' practices which are prohibited by the CPA.  Said injury or loss included but were not limited to costs, attorney's fees, inconvenience, plus physical manifestations of emotional distress as described above in this Complaint.

160.    As such, they are entitled to relief pursuant to the CPA.

**COUNT FIVE**
**CLAIM FOR ATTORNEY'S FEES ALLOWED BY LAW**

161.    Pursuant to Rule 2-703(b) the Plaintiff includes this separately numbered claim for attorney's fees in this initial pleading.  Further, pursuant to Rule 2-703(d), the Plaintiff advises the court and the Defendants that he believes that this case is likely to result in a substantial claim for attorneys' fees for services over a significant period of time.

**WHEREFORE**, Yury Shadrin and Tania Burinskas, individually and on behalf of others similarly situated in the "Limitations Class" and the "Feldman Letter Class" seek the following relief for themselves and for members of the Classes:

a.  For an Order certifying the instant matter as a class action;

b. For a declaratory judgment establishing that Defendants may not continue operating as collection agencies without complying with the requirements of Maryland law;

c. For actual and compensatory damages as a result of Defendants' direct and indirect, unfair or deceptive and unlawful practices as described herein pursuant to Md. Code Ann., Com. Law §§ 13-301 & 14-202, in an amount in excess of $75,000.00 to be determined by a jury at trial ;

d. For actual and statutory damages as a result of Defendants' direct and indirect, unfair or deceptive and unlawful practices as described herein pursuant to 15 U.S.C. 1692k.

e. For reasonable attorney's fees and costs pursuant to Md. Code Ann. Com. Law §§ 13-301 and 15 U.S.C. § 1692k(a)(3).

f. For such other and further relief as the Court deems just and proper.

Dated: November 17, 2020                    Respectfully Submitted,


/s/Kathleen P. Hyland, Esq.
Kathleen P. Hyland
CPF# 1206200116
HYLAND LAW FIRM, LLC
222 Severn Avenue, Suite 17
Annapolis, MD 21403
Telephone: (410) 777-5396
Facsimile: (410) 777-8237
kat@lawhyland.com

AND

*/s/Peter A. Holland, Esq.*
Peter A. Holland
CPF# 9212160067
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd. Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
peter@hollandlawfirm.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| **YURY SHADRIN**<br>*individually and on behalf of all*<br>*others similarly situated*<br>2617 Meadowland Court<br>Parkville, Maryland 21234 | **IN THE**<br><br>**CIRCUIT COURT**<br><br>**OF** |
| **AND**<br><br>**TANIA BURINSKAS**<br>*individually and on behalf of all*<br>*others similarly situated*<br>416 Belfast Road<br>Sparks Glencoe, Maryland 21152 | **MARYLAND**<br><br>**FOR**<br><br>**ANNE ARUNDEL COUNTY** |
| ***Plaintiffs*** | **CASE NO.:** _C-02-CV-20-002123_ |
| **v.** | |
| **STUDENT LOAN SOLUTIONS, LLC**<br>707 Landfall Drive<br>Rock Hill, South Carolina 29732 | |
|     **SERVE ON:**<br>    **RESIDENT AGENT**<br>    Cogency Global, Inc.<br>    1519 York Road<br>    Lutherville, Maryland 21093 | |
| **AND**<br><br>**WILLIAMS & FUDGE, INC.**<br>300 Chatham Avenue<br>Rock Hill, South Carolina 29730 | |
|     **SERVE ON:**<br>    **RESIDENT AGENT**<br>    The Corporation Trust, Inc.<br>    2405 York Road<br>    Suite 201<br>    Lutherville-Timonium,<br>    Maryland 21093-2264 | |

**AND**

**FELDMAN & ASSOCIATES, P.C.**
451 Hungerford Drive
Suite 201
Rockville, Maryland 20850

 **SERVE ON:**
 **RESIDENT AGENT**
 William R. Feldman
 451 Hungerford Drive
 Suite 210
 Rockville, Maryland 201850

 *Defendants*

## **REQUEST FOR JURY TRIAL**

 Plaintiffs, Yury Shadrin and Tania Burinskas, demand a jury trial in this matter for all claims that may be heard by a jury.

Dated: November 17, 2020   Respectfully Submitted,

        */s/Kathleen P. Hyland, Esq.*
        Kathleen P. Hyland
        CPF# 1206200116
        HYLAND LAW FIRM, LLC
        222 Severn Avenue, Suite 17
        Annapolis, MD 21403
        Telephone: (410) 777-5396
        Facsimile: (410) 777-8237
        kat@lawhyland.com

        AND

Peter A. Holland
CPF# 9212160067
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd. Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
peter@hollandlawfirm.com

*Attorneys for Plaintiffs*