UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| **YURY SHADRIN, *et al.*,** | |
|     Plaintiffs | |
| v. | **Case No.  1:20-cv-3641-CCB** |
| **STUDENT LOAN SOLUTIONS, LLC, *et al.*** | |
|     Defendants | |

## MEMORANDUM OF LAW IN SUPPORT OF FELDMAN & ASSOCIATES, P.C.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant Feldman & Associates, P.C. ("Feldman"), by and through its attorneys, James E. Dickerman, Joseph M. Moeller, and Eccleston & Wolf, P.C., hereby submits this Memorandum of Law in Support of its Motion to Dismiss the First Amended Complaint, or in the alternative, for Summary Judgment, and in support thereof, states as follows:

### INTRODUCTION

On or about November 17, 2020, Plaintiffs filed a Class Action Complaint ("Complaint") against Feldman and Defendants Student Loan Solutions, LLC ("SLS") and Williams & Fudge, Inc. ("WFI") in the Circuit Court for Anne Arundel County, Case No. C-02-CV-20-002123, which was removed to this Court on December 17, 2020. The Complaint asserted claims against Feldman for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), Maryland Consumer Debt Collection Act ("MCDCA") and Maryland Consumer Protection Act ("MCPA"), requested Declaratory and Injunctive Relief pursuant to Md. Code, Cts. & Jud. Proc. § 3-406, and asserted an independent cause of action entitled "Claim for Attorney's Fees Allowed By Law."

On January 29, 2021, Feldman filed a Motion to Dismiss, or in the alternative, for Summary Judgment ("Motion to Dismiss"), setting forth arguments supported by legal authorities demonstrating why the Complaint failed to state a viable claim against Feldman and, alternatively, why Feldman was entitled to judgment as a matter of law on all claims asserted in the Complaint. Pursuant to an agreement between counsel for Feldman and Plaintiffs, Plaintiffs' response to Feldman's Motion to Dismiss was originally due on or before March 1, 2021. On February 17, 2021 Plaintiffs' counsel contacted Feldman's counsel explaining that "[w]e have determined that we need to amend the Complaint in this matter," and requesting consent to treat the March 1st response deadline also as a deadline for amendment purposes pursuant to Rule 15.[1]

Thereafter, on March 15, 2021, Plaintiffs filed a First Amended Class Action Complaint ("First Amended Complaint") in response to the arguments set forth in Feldman's Motion to Dismiss as well as the Answers filed by SLS and WFI. Plaintiffs also filed a Response to Feldman's Motion to Dismiss, asserting that the Motion to Dismiss was automatically rendered moot by the filing of the First Amended Complaint. *See* ECF 35. Despite amending their Complaint in response to the arguments set forth in Feldman's Motion to Dismiss, Plaintiffs failed to address the arguments or cure *any* of the fatal defects previously identified by Feldman. Therefore, the arguments set forth in Feldman's first Motion are still valid.

Moreover, Plaintiffs' attempt to inject dozens of new allegations to create entirely separate, novel factual predicates for asserting that Feldman violated the FDCPA, MCDCA and MCPA, still fails to state a legally cognizable claim against Feldman for which relief can be granted.

---

[1] Subsequently, due to an unforeseen family issue, on February 26, 2021 Plaintiffs' counsel requested, and was granted by counsel for Feldman, consent to extend the Plaintiffs' response deadline through March 15, and Plaintiffs' counsel confirmed that they intended to file an Amended Complaint in response to the Motion to Dismiss filed by Feldman.

Essentially, the new allegations attempt to impose liability on Feldman: (1) for alleged errors in the *servicing* of Plaintiffs loans over their lifetime despite the fact that Feldman was only retained as the attorney for SLS for the limited purpose of pursuing the Collection Lawsuits *after* the November 26, 2019 Acceleration Notices; and (2) for taking an overly conservative approach and filing suit against Plaintiffs seeking to collect *less than the maximum possible amount that SLS could have sued for*. Clearly Feldman cannot be vicariously liable for any conduct relating to the servicing of the loans because Feldman was wholly uninvolved, and by representing SLS in the Collection Lawsuits, Feldman does not assume a legal duty to act as an insurer guaranteeing that the servicing of the loans was perfect and without error over the lifetime of the loan.

Furthermore, Plaintiffs expressly admit that they did not pay their loans and, but for their incorrect legal conclusion that the loans were previously accelerated, that the unpaid balance on the loans was substantially higher than the conservative, reduced, principal-only balance for which Feldman on behalf of SLS sued for in the Collection Lawsuits.  There is absolutely no authority that supports the argument that there is liability for suing for less than the maximum total principal amount that could possibly be claimed. Such a theory is illogical and runs counter to the principles of the consumer protection laws pursuant to which Plaintiffs assert their claims.

Accordingly, the Court should dismiss the First Amended Complaint as to Feldman, in its entirety, with prejudice and without leave for further amendment, or, in the alternative, grant judgment in favor of Feldman on all claims.

## **STANDARD OF REVIEW**

To survive a motion to dismiss, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir.

2012) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). The Court construes well pleaded facts in a light most favorable to the plaintiff, but does not accept legal conclusions couched as facts or "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (citations omitted). Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Respess*, 770 F.Supp.2d at 755-56 (*quoting Iqbal*, 556 U.S. at 678–79 *and Twombly*, 550 U.S. at 555).

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013). The Court may also take judicial notice of the pleadings and documents filed in the State court lawsuits. *See Hart v. Pacific Rehab of Md., P.A.*, No. ELH-12-2608, 2013 WL 5212309 at *7-8 (D.Md. Sept. 13, 2013). Where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1465 (4th Cir. 1991).

Where other "matters outside of the pleadings are presented to and not excluded by the court," the Rule 12(b)(6) motion shall be converted into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Federal Rule of Civil Procedure 12(d). Summary judgment is appropriate "when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law." *Jarallah v. Thompson*, 123 F. Supp. 3d 719, 724-25 (D. Md. 2015). A dispute about a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jarallah*, 123 F. Supp. 3d at 725 (quoting *Anderson*, 477 U.S. at 248).

## ARGUMENT

As a preliminary matter, it is important to note that, as opposed to filing an Opposition to Feldman's Motion to Dismiss to present arguments concerning why Plaintiffs contend that the allegations in the original Complaint *did* set forth viable claims against Feldman, in response to the numerous fatal deficiencies identified by Feldman, Plaintiffs elected to file an Amended Complaint to attempt to address the defects in their claims. While it is true that "an amended pleading *ordinarily* supersedes the original and renders it of no legal effect," a pending motion to dismiss is <u>not</u> automatically rendered moot by the filing of an amended complaint, rather the Court "has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint." *See, e.g., Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020); *Conforti v. Sunbelt Rentals, Inc.*, 201 F.Supp.3d 278, 291 (E.D. NY 2016); *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F.Supp.2d 376, 384 (D. Conn. 2008); *Jordan v. City of Phila.*, 66 F. Supp. 2d 638, 641 n.1 (E.D. Pa. 1999) (Defendants "are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.") (*quoting* 6 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 1476 at 558 (2nd ed. 1990)).

As opposed to adding new factual allegations in their Amended Complaint to supplement the claims previously asserted against Feldman under the consumer protection statutes in order to substantively cure the deficiencies identified in the Motion to Dismiss, Plaintiffs left the fatally deficient prior claims virtually unchanged but for a few new conclusory allegations, and instead attempted to add an entirely new factual basis for purported liability under the FDCPA, MCDCA

and MCPA that is distinct and independent from Plaintiffs' previous theories. Thus, Feldman's Motion to Dismiss is still viable as to the claims from the original Complaint that are reasserted in almost identical, equally deficient, form in the Amended Complaint, and the Court can consider the merits of the previous Motion to Dismiss as to those claims, which are subject to dismissal. Moreover, Plaintiffs' failure to even *attempt* to substantively address the numerous defects in the claims that were identified in Feldman's Motion to Dismiss, whether by legal arguments in an Opposition or through the inclusion of additional specific factual allegations to cure the deficiencies via amendment, acts as both a tacit acknowledgement that the original claims as to Feldman are fatally defective and subject to dismissal as well as an abandonment of the defective claims.[2]

In the interest of brevity and to avoid reasserting the same detailed legal arguments and authorities thoroughly briefed to which no meaningful response was elicited in the Amended Complaint, Feldman incorporates by reference as if fully stated herein, its prior Motion to Dismiss and Memorandum of Law in Support thereof.   The Motion to Dismiss and supporting Memorandum address the deficiencies in Plaintiff's claims that Feldman is liable for the alleged prior acceleration of the debt, the use of the form loan agreement in the Collection Lawsuits and

---

[2] *See, e.g.*, *Watkins v. Wash. Post,* No. PWG-17-818, 2018 U.S. Dist. LEXIS 21649, at *5-6 (D. Md. Feb. 9, 2018) (failure to respond to substantively address arguments and specific defects identified in a motion to dismiss supported by legal arguments constitutes an abandonment of those claims, which are subject to dismissal with prejudice); *Muhammad v. Maryland*, Civil Action No. ELH-11-3761, 2012 U.S. Dist. LEXIS 38225, at *2 n.3 (D. Md. Mar. 20, 2012) ("Judges in this district have held that, by failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim.") (collecting cases); *Ferdinand—Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010); *Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236 (D. Md. 1997) (failure to respond to arguments in motion for summary judgment constitutes an abandonment of those claims *sub silentio*); *Barker ex rel. Barker v. City of Plaquemine*, No. 17-340-SDD-RLB, 2019 U.S. Dist. LEXIS 160425, at *27 (M.D. La. Sep. 20, 2019) (failure to respond to substantive arguments in motion to dismiss or cure deficiencies identified despite opportunity to amend constitutes abandonment and subjects claims to dismissal).

for sending the letter indicating that the Plaintiffs could be liable for attorneys' fees and potentially court costs.[3]

Before focusing on the fatal deficiencies in the new theories of liability that Plaintiffs are attempting to pursue in their First Amended Complaint, it is necessary to briefly address the few new conclusory allegations that Plaintiffs added and the changes made in a futile attempt to circumvent the meritorious arguments set forth in Feldman's previous Motion to Dismiss.

## I.   The First Amended Complaint fails to cure any of the defects identified in Feldman's Motion to Dismiss.

The few minor changes and amendments that Plaintiffs' made in the Amended Complaint, other than those related to the entirely new claims added to thereto, make clear that the amendment was Plaintiffs' attempt to cure the deficiencies identified in Feldman's Motion to Dismiss, however the new allegations are futile and fail to cure a single defect identified in Feldman's Motion to Dismiss.   For instance, in response to Feldman's argument that Count Five of the original Complaint must be dismissed as a matter of law because there is no recognized independent cause of action for "Claim for Attorney's Fees Allowed By Law," Plaintiffs removed this claim as a standalone cause of action entirely. *See* ECF 34-1 at 45 and ECF 29-1 at 34.   Plaintiffs also converted their declaratory judgment claim (Count Three) from one under State law to a claim for

---

[3] As set forth in the attached Motion to Dismiss and supporting Memorandum, (1) the prior acceleration claim fails because (a) the prior communications do not operate as an acceleration of the debts as a matter of law; (b) Feldman lacked knowledge of the prior letters regardless; and (c) Feldman cannot be liable based upon the application of the *bona fide* error defense; (2) the claim regarding attachment of the form loan terms fails because (a) despite being *captioned* as a general example, the loan terms that were attached were, in fact, true and accurate copies of the *actual* terms of the Plaintiffs' loan agreements; (b) the loans themselves authorized the attachment of copies; (c) the attachments complied with Md. Rule 3-306; and (d) at most, Plaintiffs' claims could be a potential defense to the Collection Lawsuits, but are not affirmative claims recognized under the applicable statutes; and (3) the claims relating to the Feldman letter fail because (a) collection of attorneys' fees and court costs were authorized by the loan agreements and (b) even if it was impermissible, any alleged misrepresentation was not material and Feldman cannot be liable.

"Relief Requested Under the Declaratory Judgment Act 28 U.S.C. §2201." *See* ECF 34-1 at 41-43.

In response to Feldman's arguments that the attachment to the Collection Lawsuits of the boilerplate terms for the Plaintiffs' respective loans, which have specific corresponding loan identification numbers stamped on the terms demonstrating that the terms are, in fact, the *actual* terms of Plaintiffs' loans, Plaintiffs insert the new conclusory allegation that "Defendants lack personal knowledge as to whether the 'General Promissory Note Example' is a true and correct copy of the terms and conditions of the consumer debt." They also argue that the standard terms are not signed or dated by Shadrin, do not contain any specific mention of the debt and are marked as a "Lender Copy" and that "the Defendants admit that it is only a 'general...example.'" ECF 34 at 13-14, ¶ 63. Notably, Plaintiffs do not, and for that matter *cannot* in good faith, allege that the loan terms attached to the Collection Lawsuits are not *actually* true and accurate copies of the terms for the loans. Plaintiffs essentially make the illogical argument that a loan agreement becomes invalid unless each individual page is signed and dated by the debtor and specifically identifies the borrower's loan number, an argument that lacks any authority. Plaintiffs fail to substantively address any of the arguments set forth in the Motion to Dismiss concerning why the attachment of the standard boilerplate loan terms, which in fact *does* identify the Plaintiffs' respective loans by virtue of the unique loan identification number stamped on each page, clearly does not give rise to a claim under the FDCPA, MCDCA or MCPA as a matter of law. *See* ECF 29 at ¶ 10; ECF 29-1 at 23-26.[4] Simply put, there is no cause of action against Feldman for the

---

[4] Notably, the conclusory arguments relate exclusively to Shadrin and the Amended Complaint lacks any similar assertions relating to Burinskas, highlighting the fact that the attempt to pursue class action claims is improper and impermissible, especially given the unavoidable fact that the terms of the loan agreements for even just the two named Plaintiffs' vary significantly such that any claims are necessarily individualized and depend upon the distinct loan agreements.

attachment of the standard form loan terms that Plaintiffs cannot dispute are authentic copies of the terms they agreed to when obtaining their student loans.

In response to Feldman's arguments that Plaintiffs fail to sufficiently allege and are incapable of establishing that their loans were accelerated at any time prior to the November 26, 2019 Acceleration Notices sent by WFI, Plaintiffs simply include the new conclusory allegations that upon receipt of the prior correspondences that they now claim accelerated the debts, Shadrin and Burinskas "believed that this was a demand for the full balance of the alleged debt," and that only Burinskas, "relied on the representation that the letter was a demand for the full balance of the alleged debt[s]." ECF 34 at 12, ¶ 52 (re: August 16, 2016 letter from WFI to Shadrin (Amended Compl., Ex. A)); *Id.* at 15, ¶ 75 (re: August 5, 2016 letter from Sunrise to Burinskas (Amended Compl., Ex. E)); *Id.* at 16, ¶ 77 (re: November 12, 2017 letter from WFI to Burinskas (Amended Compl., Ex. F)).

Plaintiffs are clearly attempting to circumvent Feldman's argument, supported by legal authorities, that clearly proves that these prior communications come nowhere close to constituting an acceleration of the debts as a matter of law. They attempt to do this by presenting new, conclusory allegations without any factual support that Plaintiffs believed the prior communications to be intended to accelerate their debts. Setting aside Plaintiffs' failure to address the legal requirements for conduct or communication operating as an acceleration of the applicable loan, Plaintiffs cannot allege any facts in response to the indisputable fact that at no time prior to filing the Collection Lawsuits was Feldman ever aware of any of the prior letters that Plaintiffs are now alleging accelerated the loans.

Although the arguments in Feldman's Motion to Dismiss focused on the reasons why the previous collection letters that Plaintiffs received clearly did not satisfy the legal requirements for

an acceleration, Plaintiffs also assert that their loans were automatically accelerated when they were charged-off by Bank of America, as required by federal law, when they remained in default by virtue of Plaintiffs' intentional non-payment for more than 180 days. *See* ECF 34 at ¶ 29, 38, 50. The law, however, clearly provides that the opposite is true:

> A charge off is "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." Charge Off, BLACK'S LAW DICTIONARY (11th ed. 2019) . . .

> Charging off a debt "is a business practice where a creditor writes off a debt and no longer considers the account balance an asset for accounting purposes." *Christian v. Equifax Info. Servs., LLC*, No. 18-cv-13682, 2020 U.S. Dist. LEXIS 76725, 2020 WL 2087869, at *4 (E.D. Mich. Apr. 30, 2020). Banks are in fact required under Federal Regulations to charge off debt that is past due by over 180 days. *See In re Anderson*, 884 F.3d 382, 386 n.2 (2d Cir. 2018) (citing 65 Fed. Reg. 36,903, 36,904) . . .

> Since financial institutions are required to comply with this federal requirement, it follows that charging off an account does not equate to debt forgiveness. Any other conclusion would be illogical; it would simply encourage a consumer to take out massive amounts of debt and wait around six months for it to be wiped away. Thus, the act "does not diminish the legal right of the original creditor to collect the full amount of the debt." *Hinkle v. Midland Credit Mgmt., Inc*., 827 F.3d 1295, 1297 (11th Cir. 2016); *see In re McGarvey*, 613 B.R. at 307 n.14 ("The creditor may continue to try and collect (or sell it to someone else to try and collect) the debt. The 'charge-off' does not change the legal enforceability of the debt."); *Dye v. TransUnion, LLC*, No. 13-cv-1094, 2013 U.S. Dist. LEXIS 148834, 2013 WL 5663094, at *3 (D. Nev. Oct. 15, 2013) ("[Charged off] debt is still enforceable."). Creditors, for example, could attempt to collect the debt themselves — either by utilizing internal collections staff or by contracting with a third-party agent willing to collect the debt on their behalf. Alternatively, they could sell the debt to a third-party purchaser at a discounted price based on the reduced likelihood of collection. *See Hinkle*, 827 F.3d at 1297-98.

> But charging off an account is not the same as "accelerating" the debt. *See Christian*, 2020 U.S. Dist. LEXIS 76725, 2020 WL 2087869, at *1. "If a debt is accelerated, the full amount — including all monthly payments and interest — becomes due immediately." Id. Once a "debt is accelerated, the debtor would not be able to continue to make monthly payments in an amount less than the full amount due." *Id*. Conversely, if the debt has not been accelerated, a consumer is still able and obligated to make, and a creditor may still collect, a monthly payment on the account that is less than the full balance. 2020 U.S. Dist. LEXIS 76725, [WL] at *4.

*Lieberman v. Am. Express Co*., No. 19-cv-6989 (BMC), 2020 U.S. Dist. LEXIS 167279, at *6-8 (E.D.N.Y. Sep. 13, 2020); *see also Artemov v. TransUnion, LLC,* No. 20-cv-1892 (BMC), 2020 U.S. Dist. LEXIS 159267, at *9 (E.D.N.Y. Sep. 1, 2020); *Verdini v. First Nat'l Bank of Pa*., 135 A.3d 616, 619-620 (Pa. 2016); *In re Wash.*, 581 B.R. 150, 158-59 (Bankr. D.S.C. 2017); *Bononi v. Bayer Emps. Fed. Credit Union (In re Zilka)*, 407 B.R. 684, 687 (Bankr. W.D. Pa. 2009).

Accordingly, as a matter of law, Bank of America's *obligation* to "charge-off" Plaintiffs' delinquent debts after Plaintiffs refused to make their monthly installment payments for more than 180 days did not accelerate Plaintiffs' loan balances or make the full balance immediately due and owing as alleged by Plaintiffs. Thus, the statute of limitations on the entire debts did not begin to run as a result of the charge-off.  Because the charge-offs had no effect on the statute of limitations, each monthly installment payment that Plaintiffs refused to pay carried its own three-year limitations period running from the date payment became delinquent and could be collected at any point within three-years thereafter. *See e.g. Avery v. Weitz*, 44 Md. App. 152, 154 (1979). Because neither the charge-off nor any of the prior collection letters had the legal effect of accelerating any portion of Plaintiffs' debts, the foundation of Plaintiffs' entire lawsuit (that Plaintiffs' loans had been accelerated more than three years prior to the date that the Collection Lawsuits were filed and thus Feldman was attempting to collect time-barred debts in violation of the FDCPA, MCDCA and MCPA) is fatally flawed.

Next, in response to Feldman's arguments in the Motion to Dismiss that the Complaint failed to state any plausible claims against Feldman for which relief could be granted arising out of the January 2, 2020 pre-suit letters from Feldman to Burinskas (the "Feldman Letters"), the First Amended Complaint added allegations that Burinskas: (1) believed that the Feldman Letters were a demand for the full balance of the unpaid debt plus attorneys' fees of $250; (2) relied upon

her alleged subjective interpretation of the Feldman Letters and believed that she had to pay Feldman a sum of $250; and (3) purportedly believed that if the matter went to court, she would be liable for court costs. *See* ECF 34 at 16-17, ¶¶ 80-82.[5] Feldman *was* demanding payment of full balance on behalf of its client; however, the fundamental *purpose* of the November 26, 2019 acceleration was to make the full remaining balance immediately due and payable by the Plaintiff, and it was proper to demand payment of the full accelerated balance on behalf of and for the benefit of SLS.  The contention that Burinskas believed she was obligated to pay $250 *to Feldman* is belied by the Feldman Letter itself, which clearly establishes that Feldman was demanding payment on behalf of SLS. *See* ECF 34-9. The First Amended Complaint makes no attempt to address the arguments and legal authorities establishing that even assuming, *arguendo*, it was improper to demand attorneys' fees pre-suit, Plaintiffs have *at worst* alleged a misrepresentation that was immaterial as a matter of law, which does not create any liability. *See* ECF 29-1 at 26-29.

The new allegation that Burinskas believed she would be liable for court costs if the lawsuit was filed does nothing to cure the fatal deficiencies previously identified, because the loan documents authorized SLS to assess and collect court costs, which are inherently incurred when suit is filed, and which SLS did intend to demand upon filing suit. Feldman's notification to Burinskas of SLS's intent to try and collect attorney fees and court costs if suit was filed is not unlawful, especially because if Feldman had *failed* to notify Burinskas that these facts, she undoubtedly would have alleged that such a nondisclosure was false, deceptive or misleading.  The state and federal statutory consumer protection framework was never intended to be manipulated in such a way that a consumer can pursue claims against their creditor's attorney whether he does

---

[5] Plaintiffs use the kitchen-sink pleading approach designed to strategically disguise which specific allegations Plaintiffs are alleging to apply to which causes of action and which provisions of the statutes are allegedly violated by the different allegations.

or does not disclose that his client intends to try to collect court costs that are expressly permitted in the loan document, and this Court cannot sanction Plaintiffs' attempts to do just that. A ruling for Plaintiffs on this issue would effectively bar debt collectors from obtaining costs and fees in collection actions.

In an attempt to negate or circumvent Feldman's *bona fide* error argument set forth in the Motion to Dismiss, the First Amended Complaint adds several conclusory allegations that are unavailing. First, Plaintiffs supplement the allegation that Burinskas "advised Defendants of her statute of limitations defenses, but they have refused to dismiss the illegal debt collection actions against her" with the inaccurate legal conclusion that "[i]nstead, they have doubled down and insisted that the lawsuits are not time barred, thus negating any potential defense of bona fide error." *See* ECF 35 at 17-18, ¶¶ 86, 90. The argument that the *bona fide* error defense is automatically negated because Feldman and SLS did not immediately dismiss the pending Collection Lawsuits against Burinskas upon being "advised" by Burinskas of her purported statute of limitations affirmative defense to the collection lawsuit is without any support. *See Sprayberry v. Portfolio Recovery Assoc.*, 2021 U.S. Dist. Lexis 57488 (D. Ore. 2021) at * 21 (The Court agrees "that where the applicable statute of limitations on a debt collection action is an open question of state law, a debt collector's efforts to collect the debt does not violate the FDCPA."), copy attached as **Exhibit 1**.

As set forth in Feldman's prior Motion, the issue concerning whether there was a prior acceleration of the debt is a disputed legal issue.   That has not yet been resolved, although the law is fairly clear that the prior letters do not meet the requirements for acceleration. In any event Feldman, as the attorney for SLS, has a duty to zealously advocate on behalf of his client, and there is a good faith basis for refuting Plaintiffs' conclusion that the debts were previously

accelerated and are therefore time-barred. If Feldman had blindly accepted Plaintiffs' argument and dismissed the Collection Lawsuits as Plaintiffs contend was required, Feldman would likely have violated the ethical obligations it owed to SLS.

Plaintiffs then inject new allegations regarding the October 31, 2017 Loan Sale Agreement ("LSA") between SLS and Bank of America for the purchase of the Maryland Portfolio which includes Plaintiffs' loans, and argue that it is their "belief" that SLS received all "Loan Documents" for Plaintiffs' loans from Bank of America. *See* ECF 34 at 19, ¶¶ 65-67. Plaintiffs contend that WFI was the prior debt collector of the accounts in the Maryland Portfolio on behalf of Bank of America, and then without any actual knowledge or factual basis whatsoever, Plaintiffs strategically attempt to lump Feldman in with SLS and WFI, by arguing that "[a]ll Defendants to this action knew or should have known what the debt collection notices attached to this action stated." *See Id.* at ¶¶ 68-69. Plaintiffs then improperly argue that "Feldman knew or should have known about the *existence* of the [LSA] because it is the document that Defendant SLS claimed gave it ownership of the debts in the Maryland Portfolio." *Id.* at ¶ 70 (*emphasis added*). As a result of the alleged knowledge merely of the *existence* of the LSA, Plaintiffs make the conclusory arguments that: (1) "Feldman either knew or should have made a reasonable inquiry to review the Plaintiffs' debt collection notices prior to filing any debt collection actions on behalf of Maryland consumers" or, (2) "[a]lternatively, Defendant Feldman did not have reasonable practices or procedures in place to review the Loan Documents in the Maryland Portfolio." *Id.* at ¶¶ 71-72.

Essentially, Plaintiffs are making conclusory legal arguments couched as factual allegations in an effort to circumvent and undermine the applicable *bona fide error* defense set forth in Feldman's Motion to Dismiss. Plaintiffs improperly include these unsupported legal arguments as allegations in their First Amended Complaint as opposed to in a brief in Opposition

to the Motion to Dismiss because there are no facts or legal authorities that could support these bald conclusory charges. There is no dispute that Feldman was retained by SLS in the limited capacity to file the Collection Lawsuits against Plaintiffs. Whether SLS or WFI possessed copies or knowledge of prior collection letters based upon their dealings with Bank of America or their prior involvement with the specific loans is entirely irrelevant and has no bearing whatsoever on the fact that Feldman never had any knowledge or reason to know of any prior collection letters at any point prior to the Collection Lawsuits being filed. The knowledge of SLS or WFI is not imputed to Feldman.  There are no allegations in the First Amended Complaint that suggest Feldman was placed on notice such that he should have requested additional information from clients on this topic.

It is clear that Plaintiffs' improper attempt to couch a conclusory legal argument as a factual allegation is in an effort to negate the arguments and legal authorities set forth in detail in the Motion to Dismiss establishing that the *bona fide* error defense protects Feldman from liability regardless of any alleged violations, because Plaintiffs are fundamentally incapable of setting forth any factual allegations or legal authorities whatsoever that defeat the *bona fide* error defense. Moreover, the entire premise that a creditor's attorney can be retroactively liable for filing suit to collect a consumer debt because the lawsuit was not immediately dismissed when the defendant-debtor merely *asserted* an affirmative defense is unsupported by any actual authority and illogical.

Further, the contention that Feldman lacked reasonable practices and procedures to review the Loan Documents in the Maryland Portfolio is fundamentally flawed.  It is SLS, not Feldman, that possesses those documents, and Feldman based its analysis on the information that was provided by its client. There are no allegations in the First Amended Complaint that support a conclusion that Feldman was on notice that it should have requested additional documents or

information from its client.  Feldman was provided with copies of the Acceleration Notices sent to Plaintiffs in November 2019 and an affidavit explaining the timing of the acceleration in relation to the balance sought. It would be illogical for Feldman to *assume* that a complete review of all prior communications with the debtor was necessary to guarantee that there was no *previous* acceleration before pursuing the debts given that the information Feldman received from its client demonstrated that the debts were owed and unpaid, and that they were accelerated on November 26, 2019.

Plaintiffs cannot unilaterally impose upon their creditor's collection litigation attorney a legal obligation to act as a compliance officer to review the entire servicing history of the loans and guarantee that no potential defenses exist before filing suit.  An attorney's scope of representation and duties on behalf of a client are determined by the relationship between the attorney and client, not at the will of an opposing party who needs to create nonexistent legal duties and obligations in order to create a viable cause of action against their opposing counsel. Any attempt by Feldman to exceed the scope of the representation which was limited to filing the Collection Lawsuits would have been improper.  Moreover, it is necessary to keep in mind the fact that the entire premise that the debts were time-barred because the prior collection letters accelerated the debts is fundamentally flawed and disproven by controlling precedent. Thus, even if Feldman was provided with copies of the prior collection letters, which it was not (*see* Feldman Affidavit, ¶ 9, attached as Exhibit 4 to Feldman's Motion to Dismiss), there still could not be any liability for filing the Collection Lawsuits *regardless*, because as a matter of law the loans were not accelerated until November 26, 2019, or at least it was a disputed issue.

## II.   **The new claims alleged in the First Amended Complaint are illogical and fundamentally flawed, and fail to state a viable claim against Feldman**.

Plaintiffs amended their Complaint to add entirely new theories of liability in an attempt to save their lawsuit against Feldman from being dismissed for failing to state any viable claims against Feldman. The new allegations in the Amended Complaint, however, are still fatally defective and Plaintiffs' new theory does not state a viable claim against Feldman for violation of the FDCPA, MCDCA or MCPA.  Ultimately, the Plaintiffs' new claims attempt to impute liability to Feldman for (1) alleged miscalculations and/or errors in the servicing of Plaintiffs' loans, in which Feldman was completely uninvolved and (2) taking, at its client's direction, the most conservative approach possible (by attempting to collect significantly less than the amount of unpaid debt actually owed by Plaintiffs) to avoid any possible issues with respect to the collection of Plaintiffs' debts.  For obvious reasons, those theories of liability are unsupported by any legal precedent, and Plaintiffs have failed to state any viable claim against Feldman.   The new allegations as to Feldman lack any *factual* basis and are a futile effort by Plaintiffs to misapply state and federal consumer protection laws in an effort to create liability for their creditor's attorney and circumvent the necessary and proper dismissal of Feldman from this litigation.

Plaintiffs are attempting to convert what the legislature intended to be a shield protecting consumers into a sword, trying to secure a windfall by coercing Feldman and the Co-Defendants into a significant settlement payment, while also nullifying their significant student loan debts. *See e.g. United States v. Nat'l Fin. Servs., Inc*., 98 F.3d 131, 135 (4th Cir. 1996); *McCray v. Samuel I. White, P.C.*, Civil No. ADC-13-1518, 2019 U.S. Dist. LEXIS 30811, at *15-16, 2019 WL 935236 (D. Md. Feb. 26, 2019); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 941 (9th Cir. 2007). In reality, Plaintiffs' lawsuit is a strategic maneuver intended to avoid Plaintiffs' obligation to defend the Collection Lawsuits seeking to collect student loan debts that Plaintiffs openly admit

that they refused to pay. Plaintiffs seek to convert what could be potential defenses to the validity or collectability of the debts in the Collection Lawsuits into offensive claims against Feldman, whose involvement was limited to being retained to file suit on behalf of its client SLS. Feldman is neither directly nor vicariously liable for any of the claims set forth in the First Amended Complaint, which the Court should dismiss as a matter of law.

Plaintiffs are fully aware that Feldman was in no way involved in the servicing of Plaintiffs' loans, the calculation of payments, principal, or interest for Plaintiffs' loans, or in any other manner prior to the end of 2019 when SLS retained Feldman exclusively to file lawsuits against Plaintiffs to collect the unpaid debts after the loans had been accelerated by SLS through its debt collection agent, WFI.  Feldman Affidavit, ¶ 5, attached as Exhibit 4 to Feldman's Motion to Dismiss. Nonetheless, in their new claims, Plaintiffs improperly lump Feldman in with SLS and WFI and levy allegations generally against the "*Defendants*" collectively, regardless of the fact that few, if any, of the allegations could possibly be properly directed at Feldman because they relate to alleged errors and omissions in loan servicing. Loan servicing issues plainly predate and fall outside the scope of Feldman's retention.

Plaintiffs falsely claim that the *Defendants collectively*, including Feldman, engaged in egregious misconduct by manipulating math and miscalculating payments and amounts in order to knowingly pursue the collection of time-barred debts. *See* ECF 34 at 20, ¶¶ 73-74.  This alleged conduct, however, also predates Feldman's retention.  Plaintiffs made no attempt to address the arguments in Feldman's Motion to Dismiss, supported by numerous legal authorities, which demonstrate that as a matter of law, Plaintiffs' loans were not accelerated by any of the previous debt collection letters. Plaintiffs instead continue to proceed based upon the conclusory declaration that Plaintiffs' loans were previously accelerated and therefore time-barred. As noted above, the

law is abundantly clear that the charge-off also did not accelerate the loans, and thus there is no legitimate basis for Plaintiffs' conclusory argument that their debts were time barred, because they were not accelerated until November 26, 2019. Because Plaintiffs' new claims also depend upon the incorrect conclusion of acceleration more than three years prior to filing suit, the Court should also dispense with these claims and dismiss the lawsuit in its entirety as to Feldman, with prejudice.

Plaintiffs' new theory alleging that the Defendants "manipulated the math" and essentially falsely calculated the amounts owed is a blatant attempt by Plaintiffs to survive a motion to dismiss through conclusory claims. Plaintiffs argue that Defendants improperly used original principal balances for the promissory notes to determine the remaining balance that SLS would seek to recover in the Collection Lawsuits, and that it was unlawful to use the original principal balance rather than the balance of the loans as of the date of charge-off. *See* ECF 34 at 20-22, ¶¶ 74-80. Despite the fact that Feldman was not involved in the servicing of Plaintiffs' loans, Plaintiffs argue that Feldman is liable for alleged errors by the prior loan servicers, including the alleged failure to send Shadrin notices of any new payment amounts before they were due (ECF 34 at 20, ¶ 76), and the alleged failure to properly apply a complicated interest rate calculation, regularly amortize the loan balances, and send out periodic notices required by the agreements (*Id.* at 22, ¶ 81). Plaintiffs essentially allege that the Defendants attempted to use a false loan balance to miscalculate and misrepresent the Plaintiffs' payment obligation.

First and foremost, the representations regarding the balances and the calculations concerning the total amount being claimed were those of Christopher P. Ruh, the General Manager of SLS, not of Feldman. *See* Affidavit of Christopher P. Ruh at ECF 34-3. Contrary to Plaintiffs' conclusory assertions in the First Amended Complaint, Mr. Ruh's affidavit identifies the original principal amount of Shadrin's loan, as evidenced by the copy of the loan subsequently attached,

and outlines the relevant payment terms whereby Shadrin agreed to pay the total balance of the loan plus any interest and fees added to the loans over twenty years via monthly installments. *Id.*[6] Shadrin admits that she did not make *any* monthly payments since 2014, that interest was accruing on the account balance, and that interest capitalized and was added to the total amount owed by Shadrin on the loan. *See* ECF 34 at ¶¶ 48, 91-92. Plaintiffs admit that the total balance owed on Shadrin's loan was several thousand dollars higher than the original principal balance of $12,150.00, but claim that SLS' attempts to collect significantly less than was actually due was unlawful and violated the FDCPA, MCDCA and MCPA. Plaintiffs attempt to mischaracterize Mr. Ruh's statements in his affidavit as being representations that the current total principal balance of the loans as of filing was the original principal balance, when the affidavit does not make such a claim.  In any event, the statements that Plaintiffs take issue with were statements made under oath in an affidavit by the General Manager for SLS, not by Feldman, so there is no basis for Plaintiffs' effort to impute vicarious liability on Feldman, the attorney-agent, for the sworn statements of his client, the principal.  Similarly, there is no legal basis for Plaintiffs' attempts to make Feldman vicariously liable for alleged errors and failures by the original lender (Bank of America) or any of the loan servicers regarding alleged failures to comply with various terms of the loan agreement.

Plaintiffs' assertion that Feldman, SLS, and WFI conspired to deceive and mislead Plaintiffs by **not** suing them for a higher amount is and absurd. SLS made a calculated business decision to take the most conservative approach possible in proceeding with filing the Collection Lawsuits by electing to waive their contractual right to collect any and all interest accrued on Shadrin's account. Instead, it chose to only pursue collection of the proportional principal amount

---

[6] Once again, the First Amended Complaint attempts to pursue entirely new claims against Feldman based upon an entirely new theory of liability, yet the allegations relate exclusively to Shadrin, not Burinskas, further demonstrating the individuality of the Plaintiffs' claims.

of the original loan balance for unpaid monthly installments within three years prior to the date of filing and for the remaining months of the term of the loan, which had been accelerated. There could be no dispute whatsoever that at the very *minimum*, Shadrin was obligated to repay the principal amount of the loan, so deciding to sue to collect a significantly lower amount than the actual unpaid balance on the loan (by calculating the proportional amount of principal that would be due for the monthly installments that were clearly not time-barred) does not give rise to any cause of action under the FDCPA, MCDCA or MCPA.

Plaintiffs acknowledge that the principal balance of Shadrin's loan was $15,743.43 in December 2013, yet they claim it was improper for SLS to use the substantially lower original principal amount to calculate an even lower amount that it would try to recover from Shadrin in the Collection Lawsuit. *See* ECF 34 at ¶ 91.  Essentially, Plaintiffs are attempting to pursue class action claims against a creditor and its attorney for *not suing them for more of their unpaid debts which were owed to the creditor*. A creditor does not, as Plaintiffs appear to contend, have a legal obligation to attempt to collect the maximum amount they could possibly recover from a debtor when filing a collection lawsuit. Feldman cannot be liable for his client's decision to waive any claim to unpaid interest or other amounts that the creditor was contractually entitled. Under this theory, a creditor's strategic legal decision to sue to collect only $29,999.99 of unpaid consumer debt for an account that had a total unpaid balance of $40,000.00 (in order to file a lawsuit in the District Court rather that the Circuit Court of Maryland) would give rise to claims against the creditor for violating the FDCPA, MCDCA, and MCPA because the creditor intentionally sued the consumer debtor for less than the full amount that could possibly be pursued. By the same token, attempts to settle consumer debts for less than owed and other actions such as partial forgiveness, waiver, or reductions by creditors would be actionable consumer protection

violations. Such a novel legal position runs directly counter to the purpose of the statutory consumer protection framework.

The argument that Defendants used a "bogus loan balance as the basis for their calculation for damages" is simply wrong, because Plaintiffs recognize that the balance used *was lower than the total amount actually due on the account* and thus the lesser amount is necessarily included in a higher balance. *See* ECF 34 at 21.  Indeed, Plaintiffs actually *benefit* from attempts to collect less than the maximum that could possibly be collected. There cannot be liability under the FDCPA, MCDCA or MCPA for waiving amounts otherwise due from a debtor or reducing the balance that is being collected. There is nothing false, deceptive or misleading about suing a consumer for less than the full amount they owe or using a significantly lower total balance to calculate the significantly reduced amount that is being claimed in a collection lawsuit. Similarly, Plaintiffs' allegations concerning improper attempts to "recalculate" installment payments without proper notice to Plaintiffs is nonsensical, because the fundamental purpose of acceleration is to terminate the debtor's ability to continue to make monthly installment payments and make the full balance of the debt immediately due and owing, in full.

Thus, the terms of the loan regarding recalculation of monthly installment payments are inapplicable because the privilege of paying the loans back in installments is severed and terminated upon acceleration. There cannot be an obligation to send new installment notices when installment payments were no longer an option for Plaintiffs, and the notice stating that the full balance was due would constitute such notice of the next payment that Plaintiffs were obligated to make. There was not a "new calculation" used as Plaintiffs allege. Instead, the balance of the loan was accelerated, meaning the full account balance was immediately due, and SLS had the discretion to decide to waive the collection of any portion of the principal, interest, or other fees

that would otherwise be owed by the debtor. Even if the original creditor or any of the loan servicers did fail to provide notice of allegedly newly calculated monthly installments, the terms of the loans themselves make clear that in such an event, Plaintiffs are simply required to continue making the same payments they were previously obligated to make.        Ultimately, Plaintiffs' attempts to make Feldman liable for alleged errors and omissions by the original creditor, loan servicers, or even by Feldman's client, SLS, or by its debt collection agent, WFI, lack any factual or legal support. Feldman also cannot be liable for the decision by SLS to take an overly conservative approach and file suit to collect a substantially lesser amount that the maximum that SLS could have attempted in good faith to collect.  Plaintiffs cannot manipulate and exploit the framework of the FDCPA, MCDCA and MCPA in order to punish creditors and their attorneys for attempting to collect *less* than the total amount that could admittedly have been pursued.  To hold otherwise would have drastic ramifications for both creditors and consumers, as it would essentially prevent consumer creditors from waiving or reducing amounts they attempt to collect from debtors, while also substantially increasing the cost of obtaining consumer credit to the point that it would likely upset the entire consumer credit industry, hurting most the very consumers who the laws are intended to protect.

## CONCLUSION

For the reasons set forth herein and in Feldman's Motion to Dismiss the First Amended Class Action Complaint, Defendant Feldman & Associates, P.C. respectfully requests that this Honorable Court dismiss the Amended Complaint as to Feldman in its entirety, with prejudice, or enter judgment as a matter of law in favor of Feldman on all claims, and for any such other or further relief as the Court may deem just and proper.

Dated: April 14, 2021                                          Respectfully submitted,


*/s/ James E. Dickerman*                               */s/Joseph M. Moeller*
James E. Dickerman (Bar No. 10687)          Joseph M. Moeller (Bar No. 21682)
ECCLESTON & WOLF, P.C.                       ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center              Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor                7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378                       Hanover, MD 21076-1378
(410) 752-7474                               (410) 752-7474
(410) 752-0611 (fax)                         (410) 752-0611 (fax)
E-mail: dickerman@ewmd.com                   E-mail: moeller@ewmd.com
*Attorney for Feldman & Associates, P.C.*    *Attorney for Feldman & Associates, P.C.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 14, 2021, copies the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT were served electronically through the Court's ECF system and by first-class mail, postage prepaid, upon:

Kathleen P. Hyland, Esq.
Hyland Law Firm, LLC
222 Severn Avenue, Suite 17
Annapolis, Maryland 21403
kat@lawhyland.com

Peter A. Holland, Esq.
The Holland Law Firm, P.C.
914 Bay Ridge Road, Suite 230
Annapolis, Maryland 21403
peter@hollandlawfirm.com
*Attorneys for Plaintiffs*

James M. Connolly, Esq.
Kramer & Connolly
465 Main Street
Reisterstown, Maryland 21136
jmc@kramerslaw.com

Jeffrey C. Turner, Admitted PHV
David B. Shaver, Admitted PHV
Surdyk, Dowd & Turner Co., L.P.A.
8163 Old Yankee Street, Suite C
Dayton, OH  45458
jturner@sdtlawyers.com
dshaver@sdtlawyers.com
*Attorneys for Defendant Student Loans Solutions, LLC and Williams & Fudge, Inc.*

*/s/ James E. Dickerman*
James E. Dickerman (#10687)