UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

**YURY SHADRIN, *et al.*,**

      Plaintiffs

v.

**STUDENT LOAN SOLUTIONS, LLC, *et al.***

      Defendants

**Case No.  1:20-cv-3641-CCB**

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT FELDMAN & ASSOCIATES, P.C.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES ..................................................................... iii

I.   INTRODUCTION ........................................................................... 1

II.  ARGUMENT ................................................................................... 2

A.   PLAINTIFFS PROPERLY PLED THAT DEFENDANT FELDMAN ATTEMPTED TO COLLECT TIME-BARRED DEBT ........................................... 2

B.   A MATERIAL DISPUTE OF FACT EXISTS OVER THE DATE OF ACCELERATION ...................................................................................... 6

i.   Defendant Feldman's Argument on Acceleration Fails as a Matter of Law 6

ii.  Plaintiffs Received Numerous Debt Collection Letters that Accelerated the Alleged Debts ................................................................................... 10

iii. The Bogus Acceleration Notices Contained Incorrect Amounts ............... 12

iv.  A Material Dispute of Fact Remains About Whether the "General Promissory Note Example" is a True and Accurate Document ..................... 15

C.   PLAINTIFFS PROPERLY PLED THAT DEFENDANT FELDMAN IS LIABLE UNDER THE FDCPA .................................................................. 16

i.   Filing Lawsuits for Time-Barred Debts is Illegal Debt Collection Activity ...
................................................................................................................ 16

ii.  Defendant Feldman is Liable for Attempting to Collect Illegal Attorney's Fees ...................................................................................................... 19

iii. Defendant Failed to Provide Evidence of Bona Fide Error Defense ........ 21

D.   PLAINTIFFS PROPERLY PLED THAT DEFENDANT FELDMAN IS LIABLE UNDER THE MCDCA .................................................................. 23

i.   Plaintiffs Properly Pled Defendant Feldman Acted With Knowledge ..... 23

E.   DEFENDANT FELDMAN IS LIABLE FOR DEBT COLLECTION ACTIVITIES UNDER THE MCPA ......................................................... 25

F.   THE FIRST AMENDED COMPLAINT RENDERED THE DEFENDANT'S PRIOR MOTION TO DISMISS MOOT ........................................... 25

III. CONCLUSION ............................................................................... 26

CERTIFICATE OF SERVICE ................................................................ 28

## TABLE OF AUTHORITIES

### Cases

*Abdollahzadeh v. Mandarich Law Group, LLP,* 922 F.3d 810 (7th Cir. 2018) ... 25

*Andrews & Lawrence Pro. Servs., LLC v. Mills,* 467 Md. 126 (2020) ................. 29

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................... 30

*Baltimore Scrap Corp. v. Exec. Risk Specialty Ins. Co.,* 388 F. Supp. 3d 574 (D. Md. 2019) ............................................................................................................ 3

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................................................................................................... 30

*Diaz v. Portfolio Recovery Assocs., L.L.C.,* 2012 WL 1882976 (E.D.N.Y. May 24, 2012) ............................................................................................................... 20

*Gelman v. Public Nat. Bank,* 377 F.2d 166 (D.C. 1967) .......................................... 9

*Hadjis v. Anderson,* 260 Md. 30 (1970) .................................................................... 8

*Hall v. LVNV Funding, L.L.C.,* 2013 WL 5550838 (W.D. Ky. Oct. 8, 2013) ......... 19

*Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri,* 2001 U.S. Dist. LEXIS 13918 (N.D. Ill. Aug. 31, 2001) .......................................................................... 19

*Heintz v. Jenkins,* 514 U.S. 291 (1995) ...................................................... 18, 24, 25

*Hemmingsen v. Messerli & Kramer, P.A.,* 791 F. 3d 1291 (11th Cir. 2015) .......... 26

*Jackson v. Sagal,* 370 F. Supp. 3d 592 (D. Md. 2019) ........................................... 22

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573 (2010) 22

*Kimber v. Fed. Fin. Corp.,* 668 F. Supp. 1480 (M.D. Ala. 1987) ........................... 19

*Kleiman v. Kolker,* 189 Md. 647 (1948) ..................................................................... 7

*Knighten v. Palisades Collections, L.L.C.,* 721 F. Supp. 2d 1261 (S.D. Fla. 2010) 19

*Loftis v. Credit Acceptance Corp.,* 2011 WL 976621 (E.D. Ark. Mar. 18, 2011) .... 19

*Marchese v. JPMorgan Chase Bank, N.A.,* 917 F.Supp.2d 452 (D.Md.2013) ..... 28

*Puffinberger v. Commercion, L.L.C.,* 2014 WL 120596 (D. Md. Jan. 10, 2014) ... 19

*Ramirez v. Palisades Collection L.L.C.,* 2008 WL 2512679 (N.D. Ill. June 23, 2008) ............................................................................................................... 19

*Santini v. Fritkin,* 240 Md. 542 (1965) ..................................................................... 8

*Schaefer v. ARM Receivable Mgmt., Inc.,* 2011 WL 2847768 (D. Mass. July 19, 2011) ............................................................................................................... 20

*Spencer v. Hendersen-Webb, Inc.,* 81 F.Supp. 2d 582 (D. Md. 1999) ................... 28

*Sprayberry v. Portfolio Recovery Assocs., LLC,* No. 3:17-CV-00111-SB, 2021 WL 1109388 (D. Or. Jan. 28, 2021) ......................................................................... 20

*United States ex rel Small Bus. Admin v. La France,* 728 F.Supp. 1116 (D. Del. 1990) ............................................................................................................... 10

*United States v. Cardinal,* 452 F. Supp. 542 (D. Vt. 1978) .................................... 8

*United States v. Feterl,* 849 F.2d 354 (8th Cir. 1988) ......................................... 8, 9

*United States v. Neudai, Inc.,* No. 92-2389, 1993 U.S. App. LEXIS 32733 (4th Cir. Dec. 16, 1993) ............................................................................................... 11

*Van Hoven v. Buckles & Buckles, P.L.C.,* 947 F.3d 889 (6th Cir. 2020) .............. 26

*von Frank v. Hershey Nat. Bank,* 269 Md. 138 (1973) ............................................. 2

## **Statutes**

28 U.S.C. § 1441 ..................................................................................................... 30

Md. Code Ann. Com. Law § 14–202 (West 2013) ................................................27

Md. Code Ann., Cts. & Jud. Proc. § 5-1202(a) .................................................. 2, 20

## **Rules**

Fed. R. Civ. P. 15(a)(2)........................................................................................... 30

Fed. R. Civ. P. 23.................................................................................................... 30

Maryland Rule 2-231 ............................................................................................. 30

## **Regulations**

12 C.F.R. § 226.20.................................................................................................... 4

Plaintiffs, Yury Shadrin and Tania Burinskas, by their undersigned counsel, do hereby oppose Defendant Feldman & Associates, P.C.'s Motion to Dismiss the First Amended Complaint, or in the Alternative, for Summary Judgment ("Defendant's Motion" or "Def. Mot.") and in support thereof state:

## I.   <u>INTRODUCTION</u>

The Named Plaintiffs allege that Feldman & Associates, P.C. ("Feldman") sued them on time barred debt, and that Feldman also attempted to collect and claimed a right to attorneys' fees when no such right existed because such fees had been incurred or awarded by the court. The Named Plaintiffs also allege that they made no loan payments for a period of more than three years prior to the date on which Feldman filed suit against them. Finally, the Named Plaintiffs allege that even if "acceleration" were a material issue in this case (it is not), in fact their loans were previously "accelerated" by written demand by both Defendant Williams & Fudge ("W&F") and by Bank of America more than three years prior to when Feldman sued them.

The well-pled facts in the Amended Complaint (ECF No. 34, "Am. Compl.") also demonstrate that once Bank of America charged-off the defaulted debts in the Maryland Portfolio, no servicer ever sent notices or demands for periodic installment payments. These were not fixed loans with definite and known monthly payment amounts. Under federal law and the contract, Plaintiffs should have received notices when the variable interest rates changed the payment amounts due. Instead, Plaintiffs and the putative class members received multiple demands from at least four different companies (Bank of America, Sunrise Credit Services, Inc., W&F, and Defendant Student Loan Solutions ("SLS")) for the

accelerated loan balance, and none of the demands even mentioned that installment payments were an option.

For the reasons stated below, the Motion to Dismiss or for Summary Judgment on the First Amended Complaint should be denied.

## II.    **ARGUMENT**

### A. PLAINTIFFS PROPERLY PLED THAT DEFENDANT FELDMAN ATTEMPTED TO COLLECT TIME-BARRED DEBT

In Maryland, "A creditor or collector may not initiate a consumer debt collection action after the expiration of the statute of limitations applicable to the consumer debt collection action." Md. Code Ann., Cts. & Jud. Proc. § 5-1202(a). The alleged debts in the Maryland Portfolio are "Non-Negotiable" Notes. See **Exhibit A**, "Shadrin Credit Application," which was attached to the District Court Complaint. Therefore, "the liability of the parties is determined as a matter of simple contract law." *von Frank v. Hershey Nat. Bank*, 269 Md. 138, 143 (1973). In summarizing and adhering to the holdings of the Maryland Court of Appeals on the statute of limitations in contract actions, this court recently stated:

> In Maryland, actions for breach of contract are generally governed by Maryland's three-year statute of limitations. Notably, a cause of action for breach of contract accrues when the contract is breached, and when the 'breach was or should have been discovered.
>
> An action typically accrues in Maryland at the time of the wrong, unless a judicial or legislative exception provides otherwise.

*See, Baltimore Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 588 (D. Md. 2019), as amended (June 17, 2019)(citations and quotations omitted).

Prior to the charge-off date, the Named Plaintiffs' loans were serviced by American Education Services ("AES"). AES sent consumers a "final notice" prior to charge-off. See Am. Compl., ¶ 31. Plaintiffs did not receive any monthly installment payment demands from Bank of America after the loans were charged-off in 2015 and 2016. Monthly servicing activities never resumed on the Maryland Portfolio.

Defendant Feldman does not dispute that Plaintiffs received form letters demanding the full balances of the debts at specific, identifiable points in time. Plaintiffs' exhibits to the Complaint show that demands for the full balances were made more than three years before Feldman filed suit against them.  Those demands were made: 1) by W&F when Bank of America still owned the debts; ECF No. 34-2; 2) by Bank of America's debt collectors; ECF No. 34-6; and 3) by W&F when SLS purchased the loans; ECF No. 34-9. The well pled facts in the complaint allege that when the Named Plaintiffs received the form letters demanding the full balance of the loans, they reasonably believed precisely what the letters said: that the debt collectors were demanding payment of the full balances. See Am. Compl., ¶¶s 52, 75, and 77.

Here, Defendant Feldman also does not dispute that Defendants SLS and W&F never sought or collected any periodic installment amounts or sent any periodic statements on the loans. See Am. Compl., ¶¶ 73-111. Sending periodic

3

statements is a legal obligation for a performing loan of this type if the creditor seeks to avoid the running of the statute of limitations.[1]  Moreover, pursuant to the General Promissory Note, Defendants SLS and W&F had contractual obligations to act as student loan servicers and collection agents for the Maryland Portfolio. See Exhibit D to Am. Compl., ECF No. 34-5. Yet by their own admission they never sent notices or periodic statements to borrowers.  In sum, neither Feldman nor anyone else treated these loans as ongoing obligations which would be exempted from the general three-year statute of limitations in Maryland.

In its Motion to Dismiss, Feldman argues that "the fundamental purpose of acceleration is to terminate the debtor's ability to continue to make monthly payments and make the full balance of the debt immediately due and owing, in full. Thus, the terms of the loan regarding recalculation of monthly installment payments are inapplicable because the privilege of paying the loans back in installments is severed and terminated upon acceleration." See Def. Mot. at 22. Emphasis added. Defendant Feldman's argument ultimately concedes that, prior

---

[1] First, Regulation Z of the Truth-in-Lending Act ("TILA") required Defendants SLS and W&F to send consumers periodic statements when the variable interest rates and payments changed on their student loans. Pursuant to the TILA, "an adjustment to the interest rate with or without a corresponding adjustment to the payment in a variable-rate transaction subject to § 226.19(b) is an event requiring new disclosures to the consumer." See 12 C.F.R. § 226.20. Second, Defendants SLS and W&F had a contractual obligation to provide statements to borrowers. Plaintiffs properly pled that the "General Promissory Note Example" explained how a change in the variable interest rate could change the amount of a future monthly payment, and that the servicer promised to inform borrowers of any new payment amount before it was due. See Exhibit D, ECF 34-5.

to acceleration, Maryland consumers should have received notices of future installment payments. Because they did not, in fact, have notice, Maryland consumers did not have knowledge of the actual amounts due and owing in order to make accurate installment payments to Defendants SLS and W&F. See Am. Compl., ¶ 102. By failing to provide any notices, even of the alleged principal balances, Defendants SLS and W&F violated their obligations under the TILA.

Defendant Feldman further asserted that "SLS made a calculated business decision to take the most conservative approach possible in proceeding with filing the Collection Lawsuits by electing to waive their contractual rights to collect any and all interest accrued on Shadrin's account." Def. Mot. at 20. This is an example of the many unsupported statements Feldman made throughout its motion to dismiss that support the facts alleged that Defendant Feldman had actual knowledge of the attempts to collect on time-barred debt from its clients.

Although Defendant Feldman disputed Plaintiffs' well-pled allegations of waiver and the closely tied issue of miscalculated installment payments, it did not provide any legal or factual support for its assertions. See Def. Mot., pps. 19-23. As a matter of factual importance, Defendant Feldman did clarify that "the representations regarding the balances and calculations concerning the total amount being claimed were those of Christopher P. Ruh, the General Manager of SLS, not of Feldman." Def. Mot. at 19. The well-pled facts construed in the light most favorable to the Plaintiff, clearly indicate that there are no grounds to dismiss the claims against Feldman.

## B. A MATERIAL DISPUTE OF FACT EXISTS OVER THE DATE OF ACCELERATION

### i. Defendant Feldman's Argument on Acceleration Fails as a Matter of Law

Contrary to the Defendant's professed belief, the Plaintiffs do not allege that the charge-off of a loan constitutes an acceleration of the amount due. Rather, the Plaintiffs allege that the loans in this case were not subject to acceleration, and even if they were subject to acceleration, the fact is that they were purportedly accelerated more than three years prior to when Feldman sued the Named Plaintiffs. The loans were accelerated first by Bank of America, and later W&F, when they sent letters demanding the full amount of their debts. Am. Compl., ¶ 51.

Under Maryland law, acceleration occurs when a party to a contract takes "some act" of acceleration. Feldman cites to Maryland law as persuasive authority for the assertion that the holder of a promissory note must take some affirmative action that indicates it has elected to take advantage of the acceleration provision. Def. Mot. at 7. Each of the cases cited by Feldman involve mortgages – security for promissory notes. In contrast, the promissory notes at issue in this case are unsecured. One of the many distinctions between a mortgage and an unsecured promissory note is the fact that the public policy surrounding foreclosure law seeks to preserve homeownership to the benefit of lenders and homeowners, and as such a simple default is not enough to justify a foreclosure unless it is coupled with some formal act of acceleration. No such public policy considerations exist in the context of simple promissory notes.

6

Feldman relies on *Kleiman v. Kolker,* where the issue was whether the breach of a mortgage provision automatically triggers an acceleration. 189 Md. 647 (1948). The court held that the statute of limitations does not begin to run upon breach of a mortgage provision. *Id.* at 655. Again, the debt here is an unsecured promissory note, not a note which is secured by a mortgage. The issue in *Santini v. Fritkin* was whether a foreclosure action by the holder of a promissory note indicated intent to accelerate payment of the whole balance due on the note. 240 Md. 542 (1965). The Court found that it did. *Id.* at 546. In *Hadjis v. Anderson,* 260 Md. 30 (1970), the court held that because the mortgagee took no affirmative action to accelerate the debt, it would therefore be inequitable to the debtor to allow a foreclosure to proceed. *Id.* at 42. While all of these cases articulate the rule that some affirmative action is needed to trigger acceleration in the context of a mortgage foreclosure, none of them are relevant to the unsecured promissory notes at issue in this case.

Feldman cites cases from the Eighth and Second Circuits to assert that there "must be clear and unequivocal conduct that removes all doubt that the entire remaining balance of the debt has been accelerated…" Def. Mot. at 7. Both *United States v. Feterl*, 849 F.2d 354, 357 (8th Cir. 1988) and *United States v. Cardinal*, 452 F. Supp. 542 (D. Vt. 1978) are inapposite. The *Feterl* court considered whether acceleration can be implied when lender has "sufficient information to conclude that it w[ill] eventually be required to accelerate payments on the loan." 849 F.2d at 356. And the *Cardinal* court looked at whether the cause of action accrues upon

7

default when the promissory note contains a waiver of demand. 452 F. Supp. At 543. Notably, the *Cardinal* decision contains no language concerning "clear and unequivocal conduct...remov[ing] all doubt," as cited by Feldman, but rather applies the same rule as the Maryland state courts requiring some "affirmative action by the creditor." *Id.* at 547.

Feldman cites to further non-binding authority for the assertion that a notice of intention to accelerate is only a "step" in the acceleration process, which must be followed by further enforcement action. Def. Mot. at 8. *Gelman v. Public Nat. Bank*, 377 F.2d 166 (D.C. 1967). The *Gelman* case looked at whether a notice of intention to accelerate was required prior to a demand for full payment of the note, and importantly, the citation Feldman uses is from a footnote by the court. *Id.* at 169. Much like the other authorities its cites, Feldman does not expound upon why it has cited to this case. It makes no argument that the collection letters sent by Bank of America and W&F were actually just "notices of intention to accelerate" or another "step" in the acceleration process that fell short of legal acceleration.

The case cited by Feldman which most closely relates to the facts of Plaintiffs' case is both non-binding and distinguishable. *United States ex rel Small Bus. Admin v. La France* involved a dispute over whether a small business loan had been accelerated in a letter from May, 1980, or in a letter from September, 1983. 728 F. Supp. 1116 (D. Del. 1990). The 1980 letter stated that "[t]he purpose of this letter is to acquaint you with the fact that you should contact the undersigned at once to discuss what arrangements you plan to make to pay the

loan in the near future." *Id.* at 1120. The 1983 letter contained the explicit language that "demand is hereby made upon you for immediate payment of [the] balance." *Id.* at 1120-21. The Delaware court found that the 1980 letter did not manifest an exercise of acceleration in a manner "so clear and unequivocal as to leave no doubt as to the holder's intention and to appraise the maker effectively of the fact that the option has been exercised." *Id.* The Court reasoned that the 1980 letter did not demand payment on any future installments or the balance of the loan, and was just a request to the debtor to contact a loan officer. *Id.* In contrast, the 1983 letter did make a demand for the balance of the loan, and was therefore considered an acceleration. *Id.* The letters sent to Plaintiffs Shadrin and Burinskas also made a demand for the balance of their loans.

Relying on a single unpublished case from three decades ago, Feldman argues that identifying the full remaining loan balance as the "amount owed" in a demand letter to a debtor does not establish that an acceleration has occurred. Def. Mot. at 10. *See United States v. Neudai, Inc.,* No. 92-2389, 1993 U.S. App. LEXIS 32733, at *6-8 (4th Cir. Dec. 16, 1993), attached as Ex. 5 to Def. Mot. *Neudai* involved communications over a small business loan that was in default. *Id.* An initial letter sent to the guarantor of the note merely stated the balance due on the note, but did not contain a request or demand for any payment, much less a demand for accelerated full payment of the debt. *Id.* at *2. A second letter referred to "the balance due us," and provided both the outstanding "principal" and "accrued interest to date." *Id.* at *3. The court upheld the Magistrate Judge's

finding that the "balance due us" referred to the balance of past due interest, and not the full balance of the loan. *Id.* Additionally, the second letter was sent at the request of a guarantor's attorney and was therefore even less likely to be a demand for the full principal of the loan. *Id.* This case does little to support Feldman's arguments. While it is true that there are many circumstances in which a letter containing the words "balance due" may not involve an acceleration of a loan, the circumstances and the other statements included in the letter are what will help determine the intent of the sender.  If the court does not find the letters to be unambiguous on their face, then at a minimum there is a dispute of material fact such that Feldman's motion should be denied.

### ii. Plaintiffs Received Numerous Debt Collection Letters that Accelerated the Alleged Debts

Plaintiffs properly pled that they received numerous debt collection letters that demanded payment in full of the balance of their loans.  While they do not concede that "acceleration" is a necessary antecedent to commence the running of the statute of limitations.  To the extent that the court finds that "acceleration" is necessary, then these letters in fact accelerated the alleged debts. The First Amended Complaint also provided additional facts to address that Plaintiffs believed these were demands for the full balance due, as they appeared to be on the face of each letter. The Plaintiffs' letters, provided as Exhibits A, E, and F to the First Amended Complaint, constituted affirmative acts of acceleration.

Plaintiff Shadrin received the W&F Acceleration Letter  on or about August 16, 2016. See ECF No. 34-2, Am. Compl, Exhibit D. The W&F Acceleration Letter

stated that the total amount owed was $15,452.61 and that the original creditor was Bank of America. It also stated that "because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an additional balance may remain after we receive your payment."

It undisputed that this statement regarding an additional or increasing balance was untrue, as Bank of America was no longer computing interest or late charges on the balance of the alleged debt. In addition, the letter stated that "it is important that we arrive at an agreement to begin taking care of this/these debt(s)."

Plaintiff Burinskas properly pled that Sunrise Credit Services attempted to collect the full balance of her alleged debt on behalf of Bank of America. Am. Compl., ¶ 74 and ECF No. 34-6, Exhibit E. The letter contained two distinct categories: "Account Balance: $17,683.79" and "Balance Due: $17,683.79." Page two included a list of payment options. Upon receipt, Burinskas reasonably believed the total balance was due. Am. Compl., ¶ 75. The Sunrise letter omitted any information about whether smaller payment options or payments on an installment amount were available. In sum, this letter constituted another act of acceleration.

Third, W&F sent Plaintiff Burinskas the form notice on behalf of SLS in Exhibit F of the Amended Complaint, ECF No. 34-7. The notice referred to the "amount owed," "balance due," or "amount due" three times. The amount was

11

listed in two separate places as "$29,213.91." The letter further advised that "in order to clear the outstanding account(s), you may contact the undersigned or send the balance due to the above-referenced office address." *Id.* The notice also references that the total amount due consisted of two separate SLS accounts with no additional breakdown of principal versus interest. *Id.* Upon receipt, Burinskas believed these constituted demands for the full amounts due. Am. Compl. 77.

When there is a demand to "take care of" the full balance of a debt, that constitutes a demand for payment of the full amount, regardless of the presence or absence of the word "acceleration." At a minimum, it would be a question of fact, and the Amended Complaint alleges that both of the Named Plaintiffs properly pled that they believed that it did constitute an acceleration. Am. Compl., ¶¶s 52, 75, 77, 80.

### iii. The Bogus Acceleration Notices Contained Incorrect Amounts

Defendant's Motion to Dismiss hinges on the Court's acceptance of a "clear and unequivocal" acceleration letter that Defendants SLS and W&F allegedly sent to the Named Plaintiffs. All three of the acceleration letters Defendant W&F supposedly sent the Plaintiffs are dated November 26, 2019. Yet, problematically, none of the amounts in the acceleration letters match what the principal balances would have been, had they been accelerated on November 26, 2019.

First, Plaintiff Shadrin was sued for $7,188.04. According to the affidavit of Christopher Ruh (ECF No. 34-3), this amount represented the principal balance owed for 142 installment periods between March 6, 2020 through December 6,

2028. In support of this, Defendant Feldman points to the acceleration notice dated November 26, 2019, which claimed to accelerate the debt as of that date to $7,188.04. Yet, on November 26, 2019, 145 installment periods remained on the debt and the total amount of an acceleration would have been $7,339.90. The issue of why the amounts of the acceleration letter, affidavit, and lawsuit matched when they should not have matched is a question for discovery.

Second, Plaintiff Burinskas was sued for $9,832.72 for Loan #1. According to the affidavit of Christopher Ruh (ECF No. 34-10), this amount represented the principal balance owed for 178 installment periods between February 15, 2020 and November 15, 2031. In support of this, Defendant Feldman pointed to the acceleration notice dated November 26, 2019, which claimed to accelerate the debt as of that date to $9,832.72. Yet, on November 26, 2019, 180 installment periods remained on the debt and the total amount of an acceleration would have been $9,943.20. The issue of why the amounts of the acceleration letter, affidavit, and lawsuit matched when they should not have matched is a question for discovery.

Third, Plaintiff Burinskas was sued for $7,182.24 for Loan #2. According to the affidavit of Christopher Ruh (ECF No. 34-11), this amount represented the principal balance owed for 156 installment periods between February 15, 2020 and November 15, 2031. In support of this, Defendant Feldman pointed to the acceleration notice dated November 26, 2019, which claimed to accelerate the debt as of that date to $7,182.24. Yet, on November 26, 2019, 159 installment

periods remained on the debt and the total amount of an acceleration would have been $7,320.36. The issue of why the amounts of the acceleration letter, affidavit, and lawsuit matched when they should not have matched is a question for discovery.

Defendant Feldman does not dispute Plaintiffs' allegation in paragraph 79 of the Amended Complaint that it sent out debt collection letters similar in form and style demanding the same accelerated amounts. See ECF No. 34-9, Am. Compl., Exhibit H. In its Answer, Defendant W&F denied any facts other than the mere existence of the letter, ultimately denying that it sent the letters at all. See Answer, ECF No. 41, ¶ 59 & ¶ 78. Whether the letters were sent is a matter for discovery, and this issue is not ripe for dismissal.

In sum, Plaintiffs contend that the November 2019 W&F letter is not legally germane to the statute of limitations.  If this Court disagrees, then the question of whether W&F actually ever sent the purported November 2019 letter remains to be seen.  In addition to the fact that the numbers are wrong, the Plaintiffs deny ever receiving it.  Further, both W&F and SLS had a financial interest in generating the November 2019 letter: Christopher Rue is simultaneously a Partner and W&F, and an Owner of SLS.  He is a lawyer representing himself for financial gain.  At a minimum, discovery is needed.

### iv. A Material Dispute of Fact Remains About Whether the "General Promissory Note Example" is a True and Accurate Document

Defendant Feldman attempts to argue the "General Promissory Note Example" is a true and accurate document by stating the document has "specific corresponding loan identification numbers stamped on the terms demonstrated that the terms are, in fact the *actual* terms of the Plaintiffs' loans." Def. Mot. at 8. Emphasis in original. And in response to the allegation that Defendant Feldman lacks any personal knowledge about the documents, Defendant states: "Plaintiffs *cannot* in good faith, allege that the loan terms attached to the Collection Lawsuits are not *actually* true and accurate copies of the terms for the loans." *Id.* Emphasis in original.

Defendant fails to explain what the stamped numbers are and how they prove this fact, leaving the Court and Plaintiffs to guess the meaning of vaguely alleged serial numbers, when they were placed on the versions of the documents, and by whom. Also, if these are original documents, it simply does not make sense to call them "General Promissory Notes" as the Defendants did in the debt collection lawsuits, and that distinction raises a red flag and a need for proper authentication by Defendants SLS and W&F. Plaintiffs do not know if, instead, Defendants ever had their actual loan documents when the notes were purchased from Bank of America. It is reasonable for Plaintiffs to question whether these are their contracts. In 2017, the Consumer Financial Protection Bureau filed an

enforcement action against the National Collegiate Student Loan Trusts that alleged, in part:

> In order to sue to collect debts, the person or company filing suit must be able to prove that the consumer owed the debt and that they own the loan that is being collected. The companies participated in illegal litigation practices when suing consumers without the necessary documentation required to sue. Over 2,000 collections lawsuits were filed on behalf of the trusts in violation of consumer financial protection laws that prevent consumers from having to pay debts they do not legally owe. In these lawsuits, the trusts do not have or cannot find the documentation necessary to prove either that they own the loans or that the consumer owed the debt. In some of these cases, the document the consumer signed promising to pay back the loan is missing. Nonetheless, the trusts filed suit against consumers to collect the debts.

*See* "CFPB Takes Action Against National Collegiate Student Loan Trusts, Transworld Systems for Illegal Student Loan Debt Collection Lawsuits," https://www.consumerfinance.gov/about-us/newsroom/cfpb-takes-action-against-national-collegiate-student-loan-trusts-transworld-systems-illegal-student-loan-debt-collection-lawsuits/ (last accessed May 12, 2021.)

To clarify, the General Promissory Note is still unauthenticated, and Defendant Feldman has not put any documents before the court to prove that the note applies to the Maryland Portfolio. On its face, the General Promissory Note does not contain any identifying information.

### C. PLAINTIFFS PROPERLY PLED THAT DEFENDANT FELDMAN IS LIABLE UNDER THE FDCPA

#### i. Filing Lawsuits for Time-Barred Debts is Illegal Debt Collection Activity

It is well-established in state and federal courts that litigation is considered

debt collection activity.  As the Supreme Court explained more than twenty years ago in *Heintz v. Jenkins*, 514 U.S. 291, 294, 115 S. Ct. 1489, 1491, 131 L. Ed. 2d 395 (1995):

> In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly "attempts" to "collect" those consumer debts. See, e.g., Black's Law Dictionary 263 (6th ed. 1990) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings").

Ample federal decisions support the fact that Plaintiffs state a claim under §§ 1692e and 1692f of the FDCPA by alleging that the Defendants filed a complaint to collect a time-barred debt. *See Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1488 (M.D. Ala. 1987) (Filing a time-barred claim without reason to believe the statute of limitations had been tolled was unfair in violation of § 1692f.); *Puffinberger v. Commercion, L.L.C.*, 2014 WL 120596 (D. Md. Jan. 10, 2014) (Suing or threatening to sue on a time-barred claim violates the FDCPA); *Loftis v. Credit Acceptance Corp.*, 2011 WL 976621 (E.D. Ark. Mar. 18, 2011) (Complaint stated a claim for relief by alleging that the defendant prosecuted a state court collection action that was time-barred); *Knighten v. Palisades Collections, L.L.C.*, 721 F. Supp. 2d 1261 (S.D. Fla. 2010) (lawyer violated numerous provisions of the FDCPA by filing a time-barred lawsuit); *New v. Gemini Capital Group*, 859 F. Supp. 2d 990 (S.D. Iowa 2012) (Denying defendants' motion for summary judgment on the claim that they violated the

17

FDCPA by filing a time-barred collection suit since the collection action as a matter of state law was time-barred when the defendants filed suit); *Hall v. LVNV Funding, L.L.C.*, 2013 WL 5550838 (W.D. Ky. Oct. 8, 2013) (After state court judgment finding that debt was time-barred, federal court refused to dismiss the consumer's case); *Ramirez v. Palisades Collection L.L.C.*, 2008 WL 2512679 (N.D. Ill. June 23, 2008) (Because defendant filed a plainly time-barred suit against an unwitting consumer, it is subject to liability under §§ 1692e and 1692f); *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri*, 2001 U.S. Dist. LEXIS 13918 (N.D. Ill. Aug. 31, 2001) (Consumer's allegations that collection attorney filed suit on a time-barred debt were sufficient to survive debt collector's motion to dismiss FDCPA action); *Schaefer v. ARM Receivable Mgmt., Inc.*, 2011 WL 2847768 (D. Mass. July 19, 2011) (debt collector may seek voluntary repayment of a time-barred debt as long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts); *Diaz v. Portfolio Recovery Assocs., L.L.C.*, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) (plaintiff stated a claim under §§ 1692e and 1692f by alleging that the defendant filed a complaint to collect a time-barred debt).

Defendant Feldman attached the case of *Sprayberry v. Portfolio Recovery Assocs., LLC*, No. 3:17-CV-00111-SB, 2021 WL 1109388 (D. Or. Jan. 28, 2021) in support of its argument that an FDCPA action cannot stand if there is a dispute over the statute of limitations. Leaving aside the fact that the unpublished out-of-circuit *Sprayberry* case is not binding, it is irrelevant. It deals with collection

letters that fail to disclose the fact that the debt is time-barred.  In contrast, the State of Maryland has a law which makes it illegal to sue on time-barred consumer debt Md. Code Ann., Cts. & Jud. Proc. § 5-1202(a). Here, there is no dispute over which statute of limitations applies, but rather on the Defendants' very specific and deliberate scheme to collect on the original, time-barred principal balance when that balance is divided by the number of total installment periods, and any installments from more than three years ago are subtracted.

## ii. Defendant Feldman is Liable for Attempting to Collect Illegal Attorney's Fees

Defendant argued that it had the right to send the demand for $250.00 in attorney's fees because the contract allegedly authorized collection of these fees. Def. Mot., pp. 11-13. A material dispute of fact exists as to whether the General Promissory Note is authentic. Even if that issue was properly before the Court, the Plaintiffs should still survive a motion to dismiss because the demands were false and misleading, and Defendant had not incurred any attorney's fees.

In *Jackson v. Sagal* this Court considered a similar issue at the same pleading stage, and denied the Defendant's motion to dismiss:

> The FDCPA prohibits attempts to collect nonexistent debt, including attorney's fees. See Spencer, 81 F.Supp.2d at 591 (concluding that "[w]hen [the defendant] attempted to collect non-existent attorney[']s fees on behalf of [its client], [the defendant] violated the FDCPA"). In this case, the Letter demands that Jackson pay "attorney fees of $ 188.03 and interest," (Compl. ¶ 7; Letter at 1), and Jackson alleges that MMC had not incurred attorney's fees at the time, (Compl. ¶ 64). Nevertheless, Defendants maintain that "in all MMC debt collection cases handled by Defendants," including the

case against Jackson, "MMC incurs a $ 50 minimum fee at the time the case is assigned." (Defs.' Mem. Supp. Defs.' Mot. at 3, ECF No. 7-1). In support of that contention, Defendants offer an affidavit from Sagal, (Defs.' Mot. Ex. 1 ["Sagal Aff."], ECF No. 7), which the Court will not consider at this stage because the Court's analysis is confined to the allegations in the Complaint. Further, Defendants do not account for the remaining $ 138.03 allegedly owed. Thus, the Court concludes that Jackson plausibly alleges that the Letter's demand for attorney's fees is false, deceptive, and misleading.

Judging from the perception of the least sophisticated consumer, Defendants' demand for attorney's fees is also material. The Fourth Circuit has held that billing discrepancies in instances where the overstatement amount is similar to that of Defendants' Letter are material. See *Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F.App'x 377, 379–80 (4th Cir. 2016) (citing Powell, 782 F.3d at 126). Specifically, the Fourth Circuit concluded that a debt collector's overstatement of $ 165.02 (ten percent of $ 1,583.96 due) was material to the least sophisticated consumer because it "caus[es] confusion." Id. Here, the discrepancy is fifteen percent—even greater than the ten percent overstatement that was material in Conteh. That is, the least sophisticated consumer would reasonably face confusion when deciding how to respond to the Letter. As a result, such a demand for attorney's fees is material to the least sophisticated consumer.

Thus, the Court concludes that Jackson plausibly pleads a violation of the FDCPA related to the Letter's demand for attorney's fees. Accordingly, the Court will deny the Motion as to Count I.

*See Jackson v. Sagal*, 370 F. Supp. 3d 592, 601–02 (D. Md. 2019).

So too here, the Defendant's demand for attorney's fees gives rise to a material violation because Defendant had not incurred attorney's fees at that time, and the demand letters provided in Exhibit H of the Amended Complaint caused

confusion about the total amount owed. Plaintiff Burinskas properly pled that she believed the demand for attorney's fees was part of the total amount owed, and that Defendant had not yet filed her case or incurred any attorney's fees. *See* Am. Compl., ¶¶s 79-86. As a result, Plaintiffs' claim should not be dismissed.

### iii.   Defendant Failed to Provide Evidence of Bona Fide Error Defense

The Plaintiffs properly pled new allegations that Defendant Feldman did not have a Bona Fide Error defense. Defendant did not provide any evidence to counter these allegations. The FDCPA is a strict liability statute, to which mistake of law is not a defense. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 584 (2010) involved a dispute over whether a "violation" resulting from a debt collector's misinterpretation of the legal requirements of the FDCPA can ever be "not intentional" under 1692k(c). 559 U.S. 573 at 581. The Court held that it could not. *Id.* at 574.

Responding to the argument that imposing FDCPA liability on an attorney who misapplies or misinterprets the law would have a chilling effect on legal advocacy, the Supreme Court stated that "an attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct." *Id.* at 600. (citing *Nix v. Whiteside,* 475 U.S. 157, 168, 106 S.Ct. 988 (1986)). Moreover, avoiding FDCPA liability for yourself and your client is an important way to be an affective legal advocate. *Id.* at 600. The Court acknowledged that statutory damages could be adjusted for a

good-faith misinterpretation of the law, even when a debt collector is not entitled to absolute protection under the *bona fide* error defense. *Id.* at 594.

Feldman cites to the *Jerman* decision to support its argument that the *bona fide* error defense applies to mistakes of law. Def. Mot. at 18. However, the court specifically states that it does *not* apply to mistakes of law in interpreting the FDCPA itself, and declines to make a determination on whether it applies to mistakes of other federal or state laws. 559 U.S. 573 at 580, n.4. The court did, however, recognize that "[s]everal States [including Maryland] have enacted debt collection statutes that contain neither an exemption for attorney debt collectors nor any bona fide error defense at all," and that "a group of 21 States … inform us they are aware of 'no [judicial] decisions interpreting a parallel state bona fide error provision [in a civil regulatory statute] to immunize a defendant's mistake of law,' except in a minority of statutes that expressly provide to the contrary." *Id.* at 601

Other than one reference to the *Jerman* decision, Feldman relies exclusively on cases from outside the Fourth Circuit to establish its *bona fide* error argument. In addition to the fact that none of these cases are binding on this court, none of them contain facts that are relevant to this case.

Finally, Feldman's assertion regarding the CFPB rule is incorrect as well. Def. Mot. at 21] The proposed rule prohibits lawsuits on time-barred debt, but only when "the debt collector knows or should know [the debt] is time-barred." The safe

harbor language is found in the *bona fide* error defense, which is not applicable here.

### D. PLAINTIFFS PROPERLY PLED THAT DEFENDANT FELDMAN IS LIABLE UNDER THE MCDCA

The Plaintiffs pled that Feldman's violations of the FDCPA also constitute *per se* violations of MCDCA.  Plaintiffs also allege that  Feldman attempted to collect a debt with knowledge that the right to collect the debt did not exist. As such Plaintiffs stated a claim for violations of the FDCPA.

### i. Plaintiffs Properly Pled Defendant Feldman Acted With Knowledge

Under §14-202 (8), the MCDCA prohibits a debt collector from "claim[ing] or attempt[ing] or threaten[ing] to enforce a right with knowledge that the right does not exist." See Md. Code Ann. Com. Law § 14–202.  The knowledge requirement of the MCDCA "has been held to mean that a party may not attempt to enforce a right with actual knowledge or with reckless disregard as to the falsity of the existence of the right." *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F.Supp.2d 452, 463 (D.Md.2013) (citing *Kouabo v. Chevy Chase Bank*, F.S.B., 336 F.Supp.2d 471, 475 (D.Md.2004)).

As an attorney, Defendant Feldman was not immunized from mistakes in the underlying debt collection actions. As the Federal District Court for Maryland stated in *Spencer v. Hendersen-Webb, Inc.*,

> Considering the remedial aim of the MCDCA and the dilution of the statute that would result from a contrary interpretation, the Court holds that the term "knowledge" in the Act does not immunize debt collectors

23

> from liability for mistakes of law. This interpretation bears in mind the age-old maxim that ignorance of the law will not excuse its violation. Moreover, in the context of consumer protection, "it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Professional debt collectors and their attorneys, therefore, must be held to be aware of laws affecting the validity of their collection efforts.

81 F. Supp. 2d 582, 594–95 (D. Md. 1999) (citations and quotations omitted).

Plaintiffs properly pled that Defendants had knowledge of the prior form letters because the Loan Sale Agreement stated that Bank of America transferred all collection letters to Defendants. See Am. Compl. ¶¶s 65-72. Defendant Feldman contends that it did not have knowledge of the prior acceleration letters. Def. Mot. at 15 (stating "Whether SLS or WFI possessed copies or knowledge of prior collection letters based upon their dealings with Bank of America or their prior involvement with the specific loans is entirely irrelevant and has no bearing whatsoever on the fact that Feldman never had any knowledge or reason to know of any prior collection letters  at any point prior to the Collections Lawsuits being filed.") Therefore, a  genuine dispute of fact exists about whether Defendant Feldman filed and pursued time-barred debt, and whether Defendant Feldman knowingly sent debt collection notices in violation of the FDCPA and MCDCA. Therefore, the matter should not be dismissed.

## E. DEFENDANT FELDMAN IS LIABLE FOR DEBT COLLECTION ACTIVITIES UNDER THE MCPA

Defendant Feldman mistakenly argued that it is not liable for debt collection activities under the MCPA. The Maryland Court of Appeals recently considered this issue in *Andrews & Lawrence Pro. Servs., LLC v. Mills*, 467 Md. 126 (2020). In reviewing the scope of the MCPA and its application to the purported "professional services" of debt collection attorneys, the Court of Appeals held as a matter of first impression that,

> [I]n the context of debt collection activity, not all services provided by a lawyer or a law firm fall within the "professional services" exemption under the CPA. Specifically, where: (1) the lawyer's services could be provided by any licensed debt collection agency without regard to whether the agency is affiliated with a lawyer or a law firm; or (2) where the alleged conduct by the lawyer or law firm violates the MCDCA, the collection activities in question do not fall within the lawyers' professional services exemption of the CPA, thereby escaping the reach of the Act.

*See Andrews* at 168 (2020). The Court of Appeals also determined that vicarious liability may be imputed onto an attorney's clients. *Id.* at 156, FN 7.

Here, whether Defendant Feldman performed debt collection activity by demanding payment on the Maryland Portfolio and demanding attorney's fees is a dispute of fact. As such, there is no basis to dismiss the MCPA claim.

## F. THE FIRST AMENDED COMPLAINT RENDERED THE DEFENDANT'S PRIOR MOTION TO DISMISS MOOT

On November 17, 2020, Plaintiffs filed this action in the Circuit Court for Anne Arundel County. On December 17, 2020, Defendants removed the action

pursuant to 28 U.S.C. § 1441, *et seq*. See ECF No. 1. The Plaintiffs elected, pursuant to Fed. R. Civ. P. 15(a)(2), with written consent of Defendants, to amend their original complaint. *See* ECF. Nos. 32 and 34. Such amendment was necessary to update the rules for pleading a class action from Maryland Rule 2-231 to Fed. R. Civ. P. 23. and to update the facts pled from a brief statement of facts to meet the pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In support of this, the Amended Complaint added twelve pages of well-pled facts and law.  *See* ECF No. 34. These included substantive updates in response to the Defendant's Motion, as well as adjustments to jurisdiction and claims due to Defendant's removal of this matter to federal court. In sum, the Amended Complaint mooted the Defendant's original Motion to Dismiss.[2]

### III.   <u>CONCLUSION</u>

In light of the foregoing points of fact and law, the Defendant's Motion to Dismiss the First Amended Complaint, or in the Alternative, for Summary Judgment, should be denied.

---

[2] Defendant Feldman alleges that the Amended Complaint failed to cure defects and states that it is incorporating the thirty-five page memorandum in support of its first motion to dismiss (ECF 29-1) into the twenty-five page memorandum in support of the second motion to dismiss (ECF 40-1).  Doing so would exceed the page limits provided by Local Rule 105. Plaintiffs submit this response in opposition to second motion to dismiss, as the first one was mooted by the amended complaint.

Dated: May 12, 2021                    Respectfully Submitted,

                                       */s/Kathleen P. Hyland, Esq.*
                                       Kathleen P. Hyland
                                       Fed. Bar No. 30075
                                       HYLAND LAW FIRM, LLC
                                       222 Severn Avenue, Suite 17
                                       Annapolis, MD 21403
                                       Telephone: (410) 777-5396
                                       Facsimile: (410) 777-8237
                                       kat@lawhyland.com

                                       AND

                                       */s/Peter A. Holland, Esq.*
                                       Peter A. Holland
                                       Fed. Bar No. 10866
                                       THE HOLLAND LAW FIRM, P.C.
                                       914 Bay Ridge Rd. Ste 230
                                       Annapolis, MD 21403
                                       Telephone: (410) 280-6133
                                       Facsimile: (410) 280-8650
                                       peter@hollandlawfirm.com

                                       *Attorneys for Plaintiffs*

27

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 12, 2021 the foregoing Plaintiffs' Response in Opposition to Defendant Feldman & Associates, P.C.'s Motion to Dismiss the First Amended Complaint, or in the Alternative, for Summary Judgment, was served electronically through the Court's ECF system upon:

James Dickerman, Esq.
Eccleston & Wolf
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076
Dickerman@ewmd.com

James M. Connolly, Esq.
Kramer & Connolly
465 Main Street
Reisterstown, Maryland 21136
jmc@kramerslaw.com

Jeffrey C. Turner
David B. Shaver
Surdyk, Dowd & Turner Co., L.P.A.
8163 Old Yankee Street, Suite C
Dayton, OH 45458
jturner@sdtlawyers.com
dshaver@sdtlawyers.com

*/s/ Kathleen P. Hyland*
Kathleen P. Hyland, Esq.

28