UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| **YURY SHADRIN, *et al.,*** | |
| Plaintiffs | |
| v. | **Case No. 1:20-cv-3641-CCB** |
| **STUDENT LOAN SOLUTIONS, LLC, *et al.*** | |
| Defendants | |

### FELDMAN & ASSOCIATES, P.C.'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE FIRST AMENDED COMPLAINT OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant Feldman & Associates, P.C. ("Feldman"), by and through its attorneys, James E. Dickerman, Joseph M. Moeller, and Eccleston & Wolf, P.C., hereby submits this Reply to Plaintiffs' Opposition to its Motion to Dismiss the First Amended Complaint, or in the alternative, for Summary Judgment, and in support thereof, states as follows:

### INTRODUCTION

Plaintiffs begin their Opposition with the perplexing statement that "even if 'acceleration' were a material issue in this case (it is not)," their loans were previously accelerated. Opp., p. 1. Plaintiffs then argue that issue for approximately half of their Opposition. Of course, whether or not the loans were previously accelerated is the primary basis for Plaintiffs' claims and a significant issue in these motions,[1] and the fact that they were not previously accelerated is one of

---

[1] Whether or not Feldman's Motion to Dismiss the original Complaint was mooted, it was incorporated into the second Motion to Dismiss to address the claims that were not changed in the Amended Complaint, and those arguments in the original Motion are still before the Court. *See* Motion to Dismiss Amended Complaint, ECF No. 29-1, pp. 5–7. And contrary to Plaintiffs' uncited assertion that incorporation of previous arguments violated the Court's page limits, there

several reasons Feldman cannot be held liable and that the claims against Feldman must be dismissed.

Plaintiffs' Amended Complaint is structured around their Fair Debt Collection Practices Act (FDCPA) claims. Their Maryland Consumer Debt Collection Act (MCDCA), Maryland Consumer Protection Act (MCPA), and declaratory judgment claims are all expressly premised on the alleged violations of the FDCPA. Am. Compl. ¶¶ 172, 178, 190. As such, if their FDCPA claim fails, their other claims also fail. Similarly, because their MCPA claim is based on alleged violation of the MCDCA, the failure of their MCDCA claim is fatal to their MCPA claim. In essence, their Amended Complaint is a chain of claims running from FDCPA to MCDCA to MCPA.

First and foremost, as Feldman has argued thoroughly that the loans at issue were not, as a matter of law, previously accelerated. In response, Plaintiffs do not present *any* case law to contradict the multitude of FDCPA legal precedents cited by Feldman. But even if Plaintiffs' position on acceleration were supported by law, Feldman was unaware of the collection letters sent prior to 2019, and there is no well-pled allegation that Feldman was. In addition, because Feldman has a good faith argument that the loans were not previously accelerated, it is protected by the *bona fide* error defense. Plaintiffs, in their Opposition, have also conceded by omission various points argued by Feldman, and their contention that Feldman violated consumer protection statutes by seeking to collect *less debt than they allege was due* is ridiculous and contrary to law. Additionally, regarding the Maryland statutory claims, the Maryland Courts interpret the MCDCA (like the FDCPA) to allow collection efforts which are made on a novel and good faith basis and are later found to be impermissible, and Plaintiffs have not pled the requisite intent to overcome

---

is no rule which prohibits incorporating already-filed documents into new ones, a practice intended to further the purpose of the Rules, saving time and resources.

that standard. Finally, lawyers are not subject to claims for violations of the MCPA for performing legal services.

Plaintiffs' *ad nauseum* claims of factual disputes are incorrect,[2] and Feldman's Motion must be granted, either on the grounds set forth in its original Motion to Dismiss (which were incorporated into the instant Motion) or those set forth in this Motion and Reply.

## ARGUMENT

There are four alleged bases for Plaintiffs' claims, all of which flow from alleged violations of the FDCPA. They were originally as follows: (1) that Feldman attempted to collect debt which was time-barred due to previous acceleration; (2) that Feldman sought court costs and legal fees in his 2020 collection letters; and (3) that Feldman attached to the letters documents which Plaintiffs question as possibly being unauthentic. In their amendments to the original Complaint, Plaintiffs emphasize the third point with additional allegations and add a fourth factual complaint: that Feldman sent letters and filed a lawsuit which attempted to collect less debt than his clients were entitled to collect. Notably, Plaintiffs have not added any allegation that the "undercharging" forms part of any of their actual claims. As they make clear in their Opposition, their "kitchen sink" approach is to create a series of allegations that appear confusing and then argue that there must be disputed material facts such that Feldman's Motion cannot be granted. None of these arguments avail Plaintiffs, and their Amended Complaint must be dismissed.

---

[2] For instance, Plaintiffs claim that whether the prior collection letters accelerated their loans is a dispute of fact. Opp., page 12. The contents of the letters, however, are undisputed, so the determination of whether they constituted an acceleration is a question of law. *E.g.*, *American Jet Leasing v. Flight America, Inc.*, 537 F. Supp. 745, 748–49 (D. W.Va. 1982) (determining as matter of law whether collection letters accelerated debts).

I.     **Plaintiffs' loans were not accelerated until November 26, 2019, and if they were, Feldman has made a *bona fide* mistake of law in an unsettled area of law.**

As explained in Feldman's prior Memoranda, numerous cases (including in Maryland and the Fourth Circuit) hold that to accelerate a debt due in installments, a party must state clearly that the debt has been accelerated by taking some affirmative action to show beyond any doubt that the debt has been accelerated. *Kleiman v. Kolker*, 189 Md. 647, 654–55 (Md. 1948); *United States ex rel Small Bus. Admin. V. La France*, 728 F. Supp. 1116, 1119-20 (D. Del. 1990) (citing general rule that there must be "clear and unequivocal" exercise of acceleration). Simply stating that the full balance of a loan is due is insufficient as a matter of law to constitute acceleration. *Wentland v. Stewart*, 236 Iowa 661, 666 (1948), *cited with approval in Kleiman*, 189 Md. at 654 (holding that statement that "all is now due" did not accelerate loan or trigger statute of limitations).

The letters allegedly sent in 2016 did not clearly and unequivocally state that the debt was being accelerated. *See* Plaintiffs' Exhibit A (ECF 3-4 at 3). The word "acceleration" was not used anywhere in the letters, and they requested that the recipient "begin taking care of" a loan balance which was not stated to be due in full on any specific date. *Id.* There was no "clear and unequivocal" statement in the letters that the debts were being accelerated, and Plaintiffs have cited no legal authority interpreting the language in the letters as clear and unequivocal exercise of an acceleration provision. On the contrary, case law cited with approval by Maryland Courts holds that language similar to that in the 2016 letters is insufficient for acceleration. *Wentland*, 236 Iowa at 666. Moreover, there is no allegation that any other action (such as the filing of a collection suit) was taken that demonstrated an intent on the part of the creditor to accelerate the debt. In contrast, the actual acceleration letters sent by the same creditor in 2019 and relied on by Feldman stated explicitly that the creditor "hereby accelerates the loan and demands all payments due." Am. Compl., Ex. C, ECF No. 34-4, p. 2.

Case 1:20-cv-03641-RDB   Document 46   Filed 06/04/21   Page 5 of 19

Plaintiffs argue that their loans were accelerated not based on applicable law, but rather on Plaintiffs' alleged subjective belief that their loans were previously accelerated. *See* Opp., pp. 3 (citing subjective belief in acceleration), 6 (claiming without citation that any "act" by party to contract automatically accelerates debt). Plaintiffs' focus on subjective belief for the purpose of determining whether or not a communication constituted acceleration is misplaced. As explained in Footnote 2, *supra*, courts ruling on this issue rely upon legal interpretation of objective language, not parties' subjective beliefs as to the effect of the language.

Moreover, it is the conduct of the creditor and not the subjective belief of the debtor that controls the analysis. "Because acceleration clauses are generally for the benefit of the creditor, courts tread lightly on the creditor's freedom to decide whether acceleration is immediately necessary upon the occurrence of a default." *United States v. Feteral*, 849 F.2d 354, 357 (8th Cir. 1988). As a result of the construction in the creditor's favor, "acceleration is seldom implied, and courts usually require that an acceleration be exercised in a manner so clear and unequivocal that it leaves no doubt as to the lender's intention and no doubt that the borrower is apprised that the option has been exercised." *Id.* Under the circumstances, it would be illogical that the subjective belief of the debtor could create an acceleration not desired by the creditor. Instead, the proper focus is on the whether the language or behavior of the creditor objectively manifested an intent on the part of the creditor to accelerate the debt. The only conduct cited by Plaintiffs are the letters, which, as previously detailed, do not meet that standard.

Plaintiffs cite no legal authority (and Feldman is unaware of any) or any legal rationale that supports their suggestion that the law treats acceleration of unsecured debts differently from acceleration of debts secured by property. Opp., p. 6. Additionally, their convoluted description of their position on acceleration appears to be inconsistent with their own allegations and only

5

emphasizes their inability to rebut the applicable case law. *Compare id. and* Am. Compl., ¶ 29. Absent a clear and unequivocal statement of acceleration or any equivalent action taken based on the 2016 letters, Plaintiffs' debt cannot have been accelerated by the 2016 letters or a prior "charge-off" of their loans. As a matter of law, the statute of limitations did not begin to run until the actual acceleration letters were sent in 2019, and Feldman instituted a collection suit within three years of the 2019 letters *United States v. Myers*, 308 F. Supp. 859, 862 (D. Md. 1970).

In an attempt to confuse this clear legal issue without any legal authority in their favor, Plaintiffs offer a variety of irrelevant arguments unsupported by their Amended Complaint or law. They make a new allegation not found in their Amended Complaint and not relevant to Feldman that an agent of another defendant is an attorney and is somehow barred from acting for his own financial benefit. Opp., p. 14. They also make numerous references to actions taken by previous servicers. *Id.*, pp. 3–5. Plaintiffs claim without citation that various alleged failures to send statements to them constituted violations of the Truth in Lending Act,[3] but they fail to offer any authority for their apparent belief that upon failing to send a periodic (or other loan-related) statement, prior loan servicers somehow triggered the statute of limitations for the subsequent servicers who employed Feldman. Plaintiffs note that Feldman "does not dispute that Plaintiffs received form letters demanding the full balances of the debts . . . more than three years before Feldman filed suit against them." Opp., p. 3. For the purpose of a motion to dismiss, Feldman does not "dispute" the facts in Plaintiff's Amended Complaint, although there is no clear "demand" for payment in letters which sought to "begin taking care of this/these debt(s)." Am. Compl., Ex. A, ECF No. 34-2, at 3. However, as explained above and in Feldman's Motions, Feldman's argument

---

[3] As the Court can see from the page cited, Feldman did not concede anything as to what notices any "Maryland consumers" should have been sent prior to acceleration. *Compare* Opp., pp.4–5 *and* Motion to Dismiss Am. Compl., pp. 22–23.

is not that the 2016 letters in question were not sent, but that those letters did not accelerate Plaintiffs' debts. Whether or not they are actually pled in the Amended Complaint and therefore before the Court, these claims are not supported by law, are not material to the dispositive legal arguments made by Feldman, and therefore have no effect on the merits of Feldman's motions.

Despite devoting multiple pages to distinguishing the facts of cases cited by Feldman, remarkably, **Plaintiffs do not cite a single case to support their assertion that their subjective belief that their loans were accelerated years before Feldman brought lawsuits against them is relevant to a legal analysis of acceleration.** The only case law affirmatively cited by Plaintiffs is on an issue that Feldman does not dispute—*if* the debts had been accelerated more than three years previously, the collection claims would have been time-barred.[4] Essentially, Plaintiffs' argument on this issue is that they have made allegations that the debts were time-barred, an issue of law, and Feldman has not *factually* disproven their allegations that the debt is time barred. Feldman's argument is that even if Plaintiffs' well-pled allegations are true, Plaintiffs are not entitled to relief. There are no *material* facts which are disputed and must be resolved, and Plaintiffs have not cited any law that says otherwise. As collection of Plaintiffs' debts was not time-barred, Feldman did not violate any of the complained-of statutes by attempting to collect the debts for its client.

But even if it is determined that the collection had been time-barred, Feldman still would not have violated the FDCPA, or at least would have been protected by the *bona fide* error defense. A debt collector or attorney who threatens to take action that cannot legally be taken is not guilty of violating the FDCPA if he or she made a *bona fide* error of fact or unsettled law despite

---

[4] Plaintiffs use this tactic throughout their Opposition, citing cases that stand for undisputed propositions (e.g., that improper conduct can be a violation of the FDCPA) as authority for specific, heavily disputed legal issues (i.e., that an alleged act by Feldman violated the statute).

procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c); *see*, *e.g.*, *Heintz v. Jenkins*, 514 U.S. 291, 295–96 (1995) (noting that fact that litigation is unsuccessful does not mean filing suit violated FDCPA); *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 897-99 (6th Cir. 2020) (holding also that there is no violation of FDCPA for filing lawsuit to argue unsettled law); *Abdollahzadeh v. Mandarich Law Group LLP*, 922 F.3d 810 (7th Cir. 2019) (holding that attorney's legal mistake as to statute of limitations was not FDCPA violation). Here, Feldman contends (with the support of numerous cases) that the debts at issue were not time-barred. Plaintiffs respond by claiming (without citation to law) that Feldman is incorrect as a matter of law. Even if Plaintiffs' uncited argument is correct, the multitude of authorities on which Feldman relies plainly demonstrate that any legal error was made in *bona fide* reliance on existing law.

In the recent case of *Sprayberry v. Portfolio Recovery Assoc.,* 2021 U.S. Dist. Lexis 57488 (D. Ore. 2021), the federal district court held that where a law firm filed suit to collect a debt which may have been time-barred, but applicable state law was not clear as to which of two possible statutes of limitations applied, the law firm did not violate the FDCPA. *Id.* at *20–22. The court did not even reach the issue of the *bona fide* error defense, finding that the firm had not taken an action barred by the FDCPA due to the unsettled nature of the law, and that thus no defense was necessary. *Id.* at *22, n. 5. At minimum, this supports Feldman's *bona fide* error defense, and Feldman further contends that it warrants dismissal of the FDCPA claims in their entirety.

Plaintiffs attempt to distinguish *Sprayberry*, a highly similar case, on the basis that (1) it dealt with only *sending* letters and this case is based in part on suing to collect time-barred debt, and (2) there is only one statute of limitations at issue here. Opp., p. 19. Addressing these contentions briefly, Plaintiffs have alleged that Feldman violated the FDCPA *both* by sending them letters (like the defendant in *Sprayberry*) *and* by filing suit. That "Maryland has a law which makes

it illegal to sue on time-barred consumer debt," Opp., p. 19, is not disputed and does not have any effect on the applicability of *Sprayberry* and numerous other federal cases. Again, Plaintiffs are citing an undisputed, elemental principle of law as support for their disputed interpretation of the law. The question is not whether it is illegal to collect on time-barred debt, but whether the law clearly states that legal collection of the debt at issue here is time-barred. Whether the legal uncertainty is created in applying "statute one or statute two" or "statute one or no statute," the legal principle is the same, and *Sprayberry* remains highly persuasive authority that Plaintiffs' claims are not actionable. In other words, the *reason* there is uncertainty as to whether the claims are barred by limitations is immaterial; it is the mere existence of the uncertainty that protects the attorney (Feldman) from liability.

The only case Plaintiffs cite as to the *bona fide* error defense is *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010). *Jerman* is plainly unhelpful to Plaintiffs. The issue in *Jerman* was "whether the 'bona fide error' defense . . . applies to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA" itself. *Id.* at 577. Consistent with most other civil law, the Supreme Court held that misunderstanding of the requirements of the FDCPA *itself* was not a *bona fide* error; ignorance of the law was no excuse. *Id.* at 587. Feldman does not claim to have erred in interpreting the FDCPA. Rather, it argues that if its interpretation of unsettled Maryland common law as to acceleration was incorrect, its interpretation of Maryland common law was a *bona fide* error. *Jerman* explicitly states that it does not address that very different circumstance (a critical legal distinction which Plaintiffs fail to mention), *id.* at 580, n.4, but numerous federal decisions cited by Feldman have held that a mistake as to other law *can* constitute a *bona fide* error since *Jerman* was issued. *See supra*, p. 7; *see also Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297-1300 (11th Cir.

2015); *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2012); *Johnson v. Riddle*, 305 F.3d 1107, 1123 (10th Cir. 2002) (*cited in* Feldman's Original Motion, pp. 18–19).

Feldman contends that pursuant to case law, the debts at issue were not accelerated prior to 2019. Plaintiff contends otherwise, stating that the cases cited by Feldman are distinguishable and do not control as to the acceleration issue. But the stronger Plaintiffs argue that Feldman's case law is distinguishable, the more support they provide for Feldman's *bona fide* error of law defense. If Feldman's case law is not strictly on point, and Plaintiffs are unable to cite case law to the contrary, the issue must therefore be unsettled, enabling Feldman to pursue the debts under the protection of the *bona fide* error defense *if* he is found to be incorrect. *See Sprayberry,* 2021 U.S. Dist. Lexis 57488 at *21 (stating that attorneys must be allowed to litigate unsettled questions of law in debt collection, or questions could never be settled, forever preventing collection in any area not firmly established in preexisting case law). The same is true of Plaintiffs' suggestion that any ambiguity in the letters sent in 2016 is a dispute of fact that requires denial of Feldman's Motion. Opp., p. 10. If there is such an ambiguity, any error in failing to treat them as exercising the acceleration provisions would be a *bona fide* error. Because, as discussed *supra*, only the creditor has the power to accelerate a loan, an attorney cannot be expected to construe a collection letter that does not even mention acceleration to have triggered an acceleration provision without the creditor's knowledge it was doing so. There is no dispute of fact as to what those letters said. As a matter of law, they were either insufficient to trigger acceleration or were (at most) ambiguous as to triggering acceleration. As Plaintiffs have not cited any legal authority for the argument that

the debts were accelerated prior to the 2019 letter, Feldman's conduct in filing collection suits was, at worst, a *bona fide* error in an unsettled area of the law.[5]

Similarly, Plaintiffs' argument that Feldman acted with "knowledge" and therefore cannot claim the protection of the *bona fide* error defense is unavailing. Opp., pp. 24–25. Plaintiffs confuse the *bona fide* error defense from the FDCPA with the knowledge requirement of the Maryland statutes. As explained above, the *bona fide* error defense is not dependent on whether Feldman knew of the letters' existence, but instead is based on the fact he had a good faith legal argument that the debt had not been accelerated. Critically, even if Plaintiffs' conclusory allegation that Feldman knew about the prior letters was sufficient to create a genuine dispute of fact (it is not), that issue would not defeat Feldman's *bona fide* error defense as to the acceleration issue. As such, Feldman prevails as a matter of law in its arguments that (1) the debts were not previously accelerated and were collectable, and (2) that even if they were not, the legal issue of their collectability is unsettled, insulating Feldman from liability.

## II.    Plaintiffs have abandoned their allegations as to court costs and offer no substantive argument as to materiality of the legal fees at issue.

Plaintiffs claim that Feldman sent them an impermissible statement that "court costs would be added to Plaintiffs' alleged debts if suit was filed." Am. Compl., ¶ 163. In response, Feldman argued that the statements regarding court costs were not false, deceptive, or misleading, nor were they unfair or unconscionable means of collecting a debt, because the terms of Plaintiffs' loans expressly allowed for collection of court costs if suit was instituted. In their Opposition, Plaintiffs offer no argument on this issue. Indeed, the word "costs" does not even appear in their Opposition.

---

[5] The Court can also review the affidavit submitted by Feldman and rule on this Motion as a motion for summary judgment, finding that Feldman made a *bona fide* error of fact (clerical in nature) as to the existence of the prior collection letters, despite taking precautions to avoid such an error.

In the absence of any opposition, Feldman's argument on this issue must prevail, eliminating another ground on which Plaintiffs' claim violation of the various statutes.

Turning to the issue of legal fees, Feldman is alleged to have sought payment of "attorney's fees of $250" in his collection letters to Plaintiffs. Again, Feldman has argued that collection of fees was permitted by the terms of Plaintiffs' loans. But even it were not, Feldman has also explained that misstatements of as much as 8.4% of a total debt owed are not actionable in the Fourth Circuit because they are "immaterial" and "would not frustrate a consumer's ability to choose his or her response." *See Archie v. Nagle & Zaller, P.C.*, 2018 U.S. Dist. LEXIS 120482, at *13 (D. Md. July 19, 2018) (*citing with approval Dudley v. Focused Recovery Solutions, Inc.*, U.S. Dist. LEXIS 108015, at *4 n. 5 (E.D. Va. July 12, 2017) ("understatements of 3.6% and 8.4% 'would not frustrate a consumer's ability to intelligently choose his or her response' and were immaterial"). The standard is whether, mathematically, the fees were actually material, a standard based on objectivity. Only if they are material does the Court turn to whether the plaintiff subjectively believed the fees were confusing.

To the extent Feldman improperly requested $250 in legal fees from Plaintiffs, the amounts constituted less than 3.5% of the debt owed and were therefore unactionable immaterial misstatements. The only case Plaintiffs cite on this issue, *Jackson v. Sagal*, 370 F. Supp. 3d 592 (D. Md. 2019), actually supports Feldman's argument on this issue, recognizing that a much larger demand (for 10% of a debt) was previously held to be material and concluding that fees of *more* than that larger demand, (for 15%) were therefore material. *Id.* at 601–02. Plaintiffs' alleged confusion as to the collectability of the legal fees is irrelevant to the legal issue argued by Feldman, with Plaintiffs again confusing the issues by relying on the red herring of Plaintiffs' subjective interpretation. In the absence of any authority contradicting Feldman's argument that the claimed

attorney fees were immaterial as a matter of law, Plaintiffs' claims as to attorney's fees are not a basis for any relief.

### III.     Plaintiffs' arguments as to the "authenticity" of their loan documents do not constitute an FDCPA claim.

To briefly address an argument raised by Plaintiff in the context of attorney's fees, Opp., p. 19, there is no genuine dispute of material fact as to the loan documents' authenticity. Plaintiffs do not, and cannot, allege that they have any good faith basis for believing that the loan documents they were sent (attached to the Complaint) contain incorrect terms. Their allegation that they do not personally know if the documents are accurate is not a genuine dispute of the fact that they are. Previously, Feldman has explained very clearly the reasons the loan documents are authentic. Feldman's Original Motion, pp. 23–25. Summarized briefly, Plaintiffs signed the initial, debtor-specific pages of their loan agreements, and the signed pages were followed by standardized terms which Plaintiffs approved. As permitted by the text of the agreements, and contrary to Plaintiffs' statement at Opp. p. 16 that the terms "did not contain any identifying information", Feldman then produced copies of the signed pages attached to the standardized terms and identified by the loan serial numbers matching the serial numbers on the copies Plaintiffs signed. *Id.*

Plaintiffs' apparent insistence on viewing their original loan documents, Opp., p. 15, is unsupported by either law or the Consumer Financial Protection Bureau complaint they cite as authority. This argument, repeated in various forms throughout their Opposition, is simply an effort to turn a potential evidentiary issue in a collection action into an affirmative claim of a deceptive debt collection practice. Whether or not the document is sufficiently authentic to be relied upon in a collection suit, it undisputedly set forth the actual terms of Plaintiffs' loans and was therefore not misleading. Plaintiffs have not alleged in their Amended Complaint, for example, that they agreed to different loan terms than those set forth in the loan documents. Stated

differently, Plaintiffs raise a legal issue as to whether the documents were sufficiently authentic, not a factual issue as to whether they contained the correct terms. Their subjective belief as to authenticity is not a legal argument for the Court to consider, and marks the third attempt by Plaintiffs to muddy the standard applicable to a motion to dismiss through suggestion that their subjective interpretations are in any way relevant.

But even if Plaintiffs' authenticity argument is credited, it does not affect Feldman's legal arguments as to acceleration, *bona fide* error, fees, or costs as set forth in its Motion and Reply. Indeed, given the explanation in Feldman's original Motion of the authenticity of the loan documents used, any lack of accuracy would be the result of a *bona fide* error (indisputably provided-for in the *bona fide* error defense, *Jerman*, 559 U.S. at 587) in relying upon the documents provided to Feldman by its client for Plaintiffs' accounts. Plaintiffs' uncited arguments and conclusory allegations on the issue of evidentiary admissibility do not affect the Court's determination on this issue, which must be in Feldman's favor.

## IV.    <u>The fact that Feldman's collection efforts sought less money than was owed is not actionable.</u>

Plaintiffs argue that it is "problematic" that the amounts sought to be collected were not the full amounts that could have been collected, and that as a result, they are entitled to discovery such that their claims cannot be dismissed. Opp., pp. 12–14. As Feldman explained at length in its Motion to Dismiss the Amended Complaint, the FDCPA and Maryland statutes do not provide a plaintiff with a remedy when a debt collector seeks to collect *less* than is owed. That is certainly not unfair or deceptive and indeed, obviously does not harm any debtor.

The factual issues cited by Plaintiffs, such as whether the other Defendants sent certain letters, are irrelevant to Feldman's arguments. Any need for discovery against the other Defendants, *e.g.*, Opp., p. 14, does not prevent the Court from granting Feldman's Motion.

Moreover, even if these supposed factual disputes had any relevance to Feldman's legal arguments, the alleged misstatements of less than $200 would, again, be unactionable immaterial amounts, even when combined with the allegedly improper legal fees addressed *supra*. The new allegations that Feldman attempted to collect slightly less debt than Plaintiffs calculate was owed, Opp., pp. 13–14, are irrelevant and do nothing to prevent dismissal of the claims against Feldman.

## V.   Plaintiffs' Maryland statutory claims are not actionable and inadequately pled.

Beginning with Plaintiffs' MCDCA claim, the federal case regarding mistakes of law upon which Plaintiffs rely does not dictate the outcome of Feldman's Motion. *Spencer v. Hendersen-Webb*, Inc., 81 F. Supp. 2d 582 (D. Md. 1999), held that the MCDCA's "knowledge" requirement did not allow mistakes of law. *Id.* at 594. There were numerous limitations on the 1999 *Spencer* opinion, which was admittedly a case of first impression and only addressed the narrow issue of a clear "mistake" of well-settled law. As a preliminary matter, even Plaintiffs' quotation of *Spencer* that "debt collectors and their attorneys…must be held to be aware of **laws affecting the validity of their collection efforts**" makes Feldman's point, since the acceleration issue is either settled in Feldman's favor, or unsettled. Opp., p. 24 (emphasis added).

Indeed, more importantly, Maryland Courts have subsequently reached a different interpretation of the MCDCA. In the recent 2020 case of *Chavis*, 246 Md. App. 517 (*cert. granted*, 471 Md. 100 (Oct. 6, 2020)), the Court of Special Appeals issued a clear statement of Maryland law contrary to Plaintiffs' reading of *Spencer*. The court held that where the law as to collectability was not settled, the parties' "legal disagreement" as to the amount of debt that could be collected "does not result in a cognizable claim under the MCDCA." *Id.* at 530, n.4.[6]  The court cited other

---

[6] This holding also plainly contradicts Plaintiffs' new argument that their Maryland claims can proceed based on their dispute of the amounts charged.

recent Maryland decisions in which disputes as to "the validity of the debt itself" (rather than the methods of collection) were not a basis for an MCDCA claim. *Id.* at 529–530. Thus, here, where the parties have a dispute of law as to the validity of the debt and various parts thereof, Feldman cannot be held liable under the MCDCA. As stated above, disputes as to collectability of an admittedly existing debt are defenses to collection, not affirmative claims under the consumer protection statutes. Thus, *Spencer* does not relieve Plaintiffs of their need to plausibly plead actual knowledge or reckless disregard.

The court in *Chavis* also affirmed the knowledge requirement set by the MCDCA, which is "actual knowledge or reckless disregard as to the falsity of the existence of the right" to collect a debt. *Id.* at 528, n. 3. Here, Plaintiffs have pled that other Defendants *should* have received certain documents and concluded that Feldman *should* have received them years later. Am. Compl. ¶¶ 65–72. In their Opposition, Plaintiffs misstate their allegations as pleading that "Bank of America transferred all collection letters to Defendants" (including Feldman). Plaintiffs' attempt to exaggerate what they have actually alleged and consolidate all Defendants into a single entity possessed of the same knowledge should not be permitted. That *other* Defendants *should* have received documents years previously from a non-party does not mean that they did, and it certainly does not provide support for their conclusory allegation that Feldman *knew* about the prior letters. Alternatively, the Court may also look beyond Plaintiffs' conclusory allegations on this issue and rule in the posture of a Motion for Summary Judgment. **Feldman provided with its original Motion an affidavit stating that despite reasonable practices to comply with consumer protection statutes, it did not receive from the other Defendants the 2016 letters upon which Plaintiff relies**. Feldman incorporated that affidavit into this Motion. Absent knowledge of the letters or reckless disregard for their existence, Feldman cannot be liable under the MCDCA.

Plaintiffs' Opposition also addresses an argument contained in Feldman's original Motion to Dismiss that Feldman's conduct was exempt from the MCPA pursuant to an exemption for legal services. Opp., p. 25. Plaintiffs have alleged that Feldman violated the FDCPA (and thus the Maryland statutes) by sending demand letters, *filing collection lawsuits*, and *filing a Maryland court form*. Am. Compl. ¶¶ 158–163. Plaintiffs are correct that Feldman can theoretically be liable under the MCPA[7] for debt collection activities which could be performed by a non-lawyer. But only the alleged sending of letters potentially falls into that category. Their allegations as to Feldman's representation of its client *in the filing of lawsuits* are barred by the legal services exception. *Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 467 Md. 126, 155, n.7 (describing "filing lawsuits or filing liens" as "services that only a lawyer could undertake" which are "exempt from the application of" the MCPA). As such, the allegations of filing a lawsuit and other court documents cannot form the basis of an MCPA claim against Feldman. If Plaintiffs' claim of improperly sending letters is not actionable (since it is expressly premised on a flawed FDCPA claim), they cannot state a claim under the MCPA.

## <u>CONCLUSION</u>

Plaintiffs' FDCPA claim is that Feldman violated the FDCPA in a small number of actions taken on behalf of its client. Each of Plaintiffs' claims other than the FDCPA claim is expressly premised on another claim or claims. For example, their MCDCA claim is, by its plain text, a claim that Feldman is liable under the MCDCA because it violated the FDCPA. Thus, their pleadings form a logic chain in which the failure of the preceding claim is fatal to all of those that follow. Most importantly, as set forth herein and in both of Feldman's Motions to Dismiss, their FDCPA

---

[7] Of course, since the MCPA claim is expressly premised on violations of the MCDCA, and that claim is expressly premised on violations of the FDCPA, the failure of either of those claims is fatal to the MCPA claim in its entirety.

claim is not actionable for multiple reasons. None of the alleged actions subject Feldman to liability, even if they are proven to be true. As that claim fails, so do their others, and their entire Amended Complaint must be dismissed. Further down the chain, their other claims also fail for various reasons, each failure extinguishing all of the claims that follow.

The amendments to Plaintiffs' Complaint and the arguments in their Opposition seek above all else to confuse the issues and create some semblance of a disputed fact in an effort to avoid dismissal. But as Feldman has argued, the purported disputes are either not genuine, not disputed as to Feldman, or not material to Plaintiffs' claims. Plaintiffs' alleged subjective confusion as to the balances of their loans, combined with arguments portraying *undercharging* debtors as sinister, do not change the undisputed material facts and do not require factfinding for resolution. For the abundance of reasons set forth in Feldman's Motion, Feldman is entitled to dismissal of the claims against them with prejudice or a judgment as a matter of law in its favor.

Dated: June 4, 2021                                      Respectfully submitted,


*/s/ James E. Dickerman*                                 */s/Joseph M. Moeller*
James E. Dickerman (Bar No. 10687)                       Joseph M. Moeller (Bar No. 21682)
ECCLESTON & WOLF, P.C.                                    ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center                          Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor                            7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378                                   Hanover, MD 21076-1378
(410) 752-7474                                           (410) 752-7474
(410) 752-0611 (fax)                                     (410) 752-0611 (fax)
E-mail: dickerman@ewmd.com                               E-mail: moeller@ewmd.com
*Attorney for Feldman & Associates, P.C.*                *Attorney for Feldman & Associates, P.C.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2021, copies the foregoing Reply to Plaintiffs'
Opposition to Motion to Dismiss the First Amended Complaint were served electronically through
the Court's ECF system and by first-class mail, postage prepaid, upon:

> Kathleen P. Hyland, Esq.
> Hyland Law Firm, LLC
> 222 Severn Avenue, Suite 17
> Annapolis, Maryland 21403
> kat@lawhyland.com
>
> Peter A. Holland, Esq.
> The Holland Law Firm, P.C.
> 914 Bay Ridge Road, Suite 230
> Annapolis, Maryland 21403
> peter@hollandlawfirm.com
> *Attorneys for Plaintiffs*
>
> James M. Connolly, Esq.
> Kramer & Connolly
> 465 Main Street
> Reisterstown, Maryland 21136
> jmc@kramerslaw.com
>
> Jeffrey C. Turner, Admitted PHV
> David B. Shaver, Admitted PHV
> Surdyk, Dowd & Turner Co., L.P.A.
> 8163 Old Yankee Street, Suite C
> Dayton, OH  45458
> jturner@sdtlawyers.com
> dshaver@sdtlawyers.com
> *Attorneys for Defendant Student Loans Solutions, LLC*
> *and Williams & Fudge, Inc.*

> */s/ James E. Dickerman*
> James E. Dickerman (#10687)