IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YURY SHADRIN, et al.                          *

     v.                                            *        Civil Action No.   CCB-20-3641

STUDENT LOAN SOLUTIONS          *
LLC, et al.

                           ************

**MEMORANDUM**

Plaintiffs Yury Shadrin and Tania Burinskas bring a putative class action against defendants Student Loan Solutions, LLC ("SLS"), Williams & Fudge, Inc. ("WFI") (together, the "servicer defendants"), and Feldman & Associates, P.C. ("Feldman"). The plaintiffs allege that the defendants violated the federal Fair Debt Collections Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), and the Maryland Consumer Protection Act ("MCPA") in their attempts to collect outstanding balances on the plaintiffs' student loans. Mr. Shadrin and Ms. Burinskas also seek attorneys' fees and a declaratory judgment against the defendants.

Now pending before the court is a motion to dismiss, or in the alternative, a motion for summary judgment (ECF 40) brought by Feldman, and a motion for judgment on the pleadings (ECF 50) brought by defendants SLS and WFI. The motions are fully briefed, and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the court will deny both motions.

**BACKGROUND**

**I.   Yury Shadrin**

1

On September 28, 2006, Mr. Shadrin took out a $12,150.00 private, "direct-to-consumer" student loan from Bank of America, upon which he defaulted at some point in 2014 or 2015. (ECF 34, FAC, ¶¶ 44-46, 48-49). Mr. Shadrin claims that Bank of America charged-off[1] his entire loan in 2015, accelerating its entire balance "by Bank of America and through its third-party debt collectors." (*Id.* ¶¶ 49-50).[2] Mr. Shadrin received a collection letter from WFI on August 16, 2016, that alleged he owed $15,452.61, which he also asserts accelerated the loan. (*Id.* ¶¶ 51-52; ECF 34-2, Ex. A).

SLS acquired Mr. Shadrin's student loan in 2017. (ECF 34 ¶ 37(a)). On March 6, 2020, SLS, through its attorneys at Feldman, filed a debt collection action in the District Court for Baltimore County, Case No. D-08-CV-20-014318, to collect $7,188.04 of the balance of Mr, Shadrin's loan. (*Id.* ¶¶ 53-54). SLS and Feldman claimed that the commencement of this action accelerated Mr. Shadrin's loan. (*Id.* ¶¶ 56-58; ECF 34-3, Ex. B).  SLS and Feldman also reference an "acceleration notice" sent by WFI to Mr. Shadrin on November 26, 2019 (ECF 34-4, Ex. C), As noted, Mr. Shadrin asserts acceleration already had occurred in 2015 or 2016. (ECF 34 ¶¶ 59-60).

## II.    Tania Burinskas

Ms. Burinskas similarly took out a student loan totaling $11,049.72 from Bank of America on January 4, 2008. (*Id.* ¶¶ 70-71). Ms. Burinskas took out a second loan for $13,259.67 in 2015, upon which she defaulted in 2016. (*Id.* ¶ 72). On August 5, 2016, Sunrise Credit Services, Inc., a

---

[1] A "charge-off" is an accounting practice: "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." Charge Off, BLACK'S LAW DICTIONARY (11th ed. 2019). Both the defendants and the plaintiffs agree that, by law, charging off a loan does not in and of itself accelerate the loan. (ECF 40 at 10; ECF 50 at 7; ECF 54 at 8).

[2] Mr. Shadrin states that Bank of America lacks a record of this acceleration, because the company does not keep records more than seven years old. (*Id.* ¶ 34)

debt collector acting for Bank of America, wrote to Burinskas, allegedly accelerating and seeking to collect her second loan, listing both an "account balance" and "balance due" of $17,683.79. (*Id.* ¶ 74; ECF 34-6, Ex. E).

SLS acquired both of Ms. Burinskas's student loan accounts from Bank of America in 2017. (ECF 34 ¶ 37(a)). On behalf of SLS, WFI sent Ms. Burinskas a collection letter on November 12, 2017, which she contends accelerated both her loans. (*Id.* ¶¶ 76, 77; ECF 34-7, Ex. F). WFI subsequently sent Ms. Burinskas two letters on November 26, 2019, which she claimed she understood as an additional attempt to accelerate both her loans, demanding $7,182.24 to be repaid on the first and $9,832.72 repaid on the second. (ECF 34 ¶ 78; ECF 34-8, Ex. G). On January 2, 2020, Feldman sent Ms. Burinskas collection two letters demanding "payment in full" on both loans and "attorney's fees of $250," further stating that "court costs will accrue to the debt if lawsuit is filed." (ECF 34 ¶ 79; ECF 34-9, Ex. H).

On February 14th and 28th, 2020, SLS and Feldman filed two separate debt collection actions against Burinskas in the District Court for Baltimore County for both her student loan balances (Case Nos. D-08-CV-20013430 and D-08-CV-20011796). (ECF 34 ¶ 86).

## III.   Procedural History

Mr. Shadrin and Ms. Burinskas filed their putative class action complaint against the defendants in the Circuit Court for Anne Arundel County on November 17, 2020. (ECF 1-3, Compl.). The defendants then jointly removed the case to federal court on December 17, 2020, on federal question jurisdiction. (ECF 1 ¶¶ 8-12).

Feldman filed a motion to dismiss on January 29, 2021 (ECF 29), which became moot upon the plaintiffs' filing a first amended complaint on March 15, 2021. (ECF 34). On April 14,

2021, Feldman filed another motion to dismiss, or in the alternative, a motion for summary judgment (ECF 40) that incorporated the arguments made in the previous motion to dismiss. On July 16, 2021, SLS and WFI filed a motion for judgment on the pleadings (ECF 50). The plaintiffs have responded to both motions (ECFs 45, 54), and the defendants have replied (ECFs 46, 61). The plaintiffs also submitted a notice of supplemental authority (ECF 55), to which Feldman has responded (ECF 58) and the plaintiffs replied (ECF 62).

## DISCUSSION

### I.    Standard of Review

"A motion for judgment on the pleading under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citation omitted). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S.*

4

*ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).[3]

## II.    FDCPA Claim

Though the plaintiffs assert claims under the federal Fair Debt Collections Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), and the Maryland Consumer Protection Act ("MCPA"), and request declaratory judgment, each of the latter causes of action is explicitly dependent on the success of their first FDCPA claim.[4]

The FDCPA prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The plaintiffs allege that the defendants[5] violated this provision of the FDCPA in three ways: 1) by attempting to collect the plaintiffs' loans, via sending collection letters that purported to accelerate the loans and filing lawsuits, despite the loans already being time-barred by prior acceleration; 2) by attaching a general promissory note example to their state court filings and representing it to be an original document specific to the plaintiffs; and 3) by falsely stating that Feldman was owed $250 in attorney's fees and that court costs would be added to the plaintiff's alleged debts if suit was filed.[6] (ECF 34 ¶¶ 158-63).

---

[3] As the court has found additional need for discovery, it declines to rule on Feldman's motion for summary judgment (in the alternative) and does not provide the corresponding standard of review. The court may consider many of the documents cited in the dispositive motions, however, as documents integral to and specifically referenced by the complaint. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[4] The plaintiffs allege that the defendants violated the MCDCA, Md. Code Ann. Com. Law. § 14-202(11), by engaging in conduct which violated the FDCPA. (*See* ECF 34, ¶¶ 171-172). Similarly, the MCPA violation is premised on the existence of a violation of either the FDCPA or MCDCA. *See* Md. Code Ann., Com. Law § 13-301(14)(iii) (stating a MCDCA violation is an unfair trade practice) and Md. Code Ann., Com. Law § 14-202(11) (stating conduct violating the FDCPA also violates the MCDCA).

[5] Not all defendants are accused of each violation.

[6] The plaintiffs reference in their briefs, but do not appear to plead on the face of their complaint, that the defendants may have violated the FDCPA by attempting to collect a different (lesser) amount of debt than the total outstanding

**a) Attempting to Collect Time-Barred Debt**

At the heart of both the defendants' dispositive motions is the issue of whether the plaintiffs have sufficiently alleged that their debts were accelerated by the collection letters sent in 2016, more than three years before the debt collection suits were filed.

**i.    Choice of Law Regarding the Applicable Statute of Limitations**

Before addressing the issue of acceleration, the court must determine the law governing the interpretation of the plaintiffs' loan contracts and the applicable statute of limitations. SLS and WFI contend that the California choice of law provision in the contracts is substantive, and therefore governs which statute of limitations controls.

In Maryland, a statute of limitations is typically considered a "procedural" rule "for choice-of-law purposes," and "[p]rocedural matters…are always governed by the law of the forum." *Lewis v. Waletzky*, 422 Md. 647, 657-58 (2011); *see also Doughty v. Prettyman*, 219 Md. 83, 88 (1959) ("Included in the procedural matters governed by the law of this state is the statute of limitations"); *Akinmeji v. Jos A. Bank Clothiers, Inc.*, 399 F. Supp. 3d 466, 472 (D. Md. 2019) (holding that "Maryland courts almost universally view issues pertaining to the statute of limitations as procedural, not substantive," but determining an exception exists where California statute both created a liability that did not exist at common law and identified a statute of limitations for that right); *cf. Jennings v. Dynamic Recovery Sols. LLC*, 441 F. Supp. 3d 106, 112-14 (D. Md. 2020) (holding Delaware's statute of limitations to apply where the choice of law would influence the

---

principal at the time of capitalization. (*See* ECF 54 at 15-16). It is well established that a plaintiff may not amend his complaint through a memorandum and is bound by the allegations contained in his complaint. *See Stahlman v. U.S.*, 995 F. Supp. 2d 446, 453 (D. Md. 2014); *Zachair, Ltd. v. Driggs,* 965 F. Supp. 741, 748 n.4 (D. Md. 1997).  Further, SLS has a right to attempt to collect less than the total they are owed, thereby waiving a portion of the balance. *See, e.g., Lynch v. Cal. Coastal Com.*, 396 P.3d 1085, 1088-89 (Cal. 2017) (defining waiver generally); (*see also* ECF 61 at 10 (SLS and WFI state that attempting to collect less than the total obligation amounts to waiver of the remainder)).

"real-world activity of debtors," because making the partial payment requested in the collections letter would revive the debt only under Delaware, not Maryland, law).

Here, unlike in *Jennings*, the distinction is not one of substance, but rather is merely the difference of a year. *Compare* Maryland Code Ann. CJP § 5-101 ("A civil action at law shall be filed within three years from the date it accrues. . .") *with* Cal. Civ. Proc. Code § 337(a) (West) (A plaintiff shall bring "[w]ithin four years . . . [a]n action upon any contract").[7] Both states hold the statute to begin running separately for each installment as it becomes due, then for the entirety of the loan upon acceleration. *See Garver v. Brace*, 55 Cal. Rptr. 2d 220, 223 (Cal. Ct. App. 1996) ("[W]hen a note is payable in installments, the statute of limitations begins to run on the date each installment is due. Where a note contains an acceleration clause, the statute does not begin to run on installments not yet due until the creditor, by some affirmative act, manifests his election to declare the entire sum due.") (internal citations and quotation marks omitted); *Allied Funding v. Huemmer*, 96 Md. App. 759, 764 (1993) *(*quoting *Santini v. Fritkin*, 42 Md. 524, 544-45 (1965)) ("When . . . the holder takes positive action indicating that he has elected to exercise the option [to accelerate], then the full amount of the unpaid balance of principal and accrued interest becomes immediately due and payable and the statute of limitations begins to run from that time"). Accordingly, the choice of law is a procedural issue, and Maryland law governs.

### ii.    Acceleration Through 2016 Collection Notices

#### a.    Acceleration is Material to the FDCPA Claim

---

[7] It is important to note that the expiration of the statute of limitations does not extinguish the right to collect the debt, only the ability to file suit. *See, e.g., In re Dubois*, 834 F.3d 522, 529 (4th Cir. 2016) ("Under Maryland law, the statute of limitations 'does not operate to extinguish [a] debt, but to bar the remedy'") (citation omitted).

At one point the plaintiffs appear to argue that whether Mr. Shadrin and Ms. Burinskas's loans had previously accelerated is not "material" to their claims, suggesting that prior acceleration is sufficient, but not necessary, to trigger the statute of limitations for a breach of contract action in Maryland. (*See* ECF 54 at 1-4, citing *Himmelfarb v. American Express Co.,* 301 Md. 698, 703 (1984) (holding for breach of contract actions, the statute of limitations generally begins to run upon breach)). While a general rule may apply to many contract cases, Maryland courts have made clear that the statute of limitations for collecting the entirety of a loan contractually to be repaid by installment is not triggered until the servicer or lender accelerates the debt. *Allied Funding*, 96 Md. App. at 764. For purposes of this ruling, the court will focus on the issue of acceleration. If the debt had been previously accelerated, demanding payment without disclosing that the statute of limitations had run would be, at the very least, misleading and a violation of the FDCPA and MCDCA. 15 U.S.C. §1692e; *see also* Md. Code Ann., Cts. & Jud. Proc. § 5-1202 ("A creditor or collector may not initiate a consumer debt collection action after the expiration of the statute of limitations applicable to the consumer debt collection action"). While the date of acceleration may not bear on all the alleged FDCPA violations, it is of consequence to whether the defendants acted fraudulently or deceptively by attempting to collect on the plaintiffs' debts and by filing debt collection actions beyond the applicable statute of limitations: in other words, more than three years after previous collectors sent them collection notices in 2016[8] that accelerated their debt and caused the statute to begin to run.

> **b. The Pleadings Are Sufficient to Support a Finding that Mr. Shadrin and Ms. Burinskas's Loans Were Previously Accelerated, Meriting Further Discovery**

---

[8] It appears that Ms. Burkinsas alleges that Sunrise Credit Services only accelerated her second loan in 2016, omitting mention of any acceleration of the first student loan she took from Bank of America. (ECF 34 ¶ 78; ECF 34-6, Ex. E). For the purposes of this stage of litigation, so long as at least part of the total amount demanded in the collection action is properly before this court, Ms. Burkinsas's claim will be allowed to proceed to additional discovery.

The defendants' principal argument for dismissal of the plaintiffs' claims is that the 2016 collection letters[9] did not accelerate their loans. SLS and WFI proffer two reasons why these letters did not serve to accelerate the plaintiffs' student loans. First, they argue that the plaintiffs failed to properly plead that Sunrise and WFI had the authority to accelerate the loan on behalf of Bank of America. And second, the letters were too ambiguous to legally constitute notices of acceleration. Under this theory of the case, no violation of any lending statute occurred, as the defendants would have begun collection attempts well within the three-year statute of limitations commencing in 2019 with the new WFI letters, or in 2020,[10] with the filing of collection actions in state court.

### 1) The Plaintiffs Properly Pled Agency

Despite SLS and WFI's contention that the plaintiffs failed to properly plead that Sunrise Credit Services and WFI had actual or apparent authority to act as servicers for Bank of America in 2016, the complaint alleges their authority on its face. (ECF 34 ¶¶ 50-51 ("At the time of the charge-off, the entire balance was accelerated by Bank of America and through its third-party debt collectors . . . Shadrin received a form letter from Williams & Fudge alleging he owed $15,452.61, and demanding the full amount due"); ¶ 74 ("Credit Services, Inc., a debt collector acting for Bank of America"); *see also* ECF 34-4, 2016 WFI Letter to Mr. Shadrin; ECF 34-6, 2016 Sunrise Letter to Ms. Burinskas). Authority is sufficiently alleged, and the plaintiffs are not obliged to provide further evidence of the contractual relationship between lender and servicer in order to proceed to

---

[9] The "2016 collection letters" refer to the August 16, 2016 letter from WFI sent to Mr. Shadrin (ECF 34-2) and the August 5, 2016 letter from Sunrise Credit Services sent to Ms. Burinskas (ECF 34-6).

[10] As the 2019 WFI collection letters are within three years of the respective collection actions, the court need not determine whether these letters and/or the commencement of the suits themselves would formally constitute acceleration.

discovery. Any residual challenge to the actual or apparent authority of Sunrise Credit Services or

WFI in 2016 involves questions of fact inappropriate to determine at this stage of litigation.

### 2) The Plaintiffs Sufficiently Plead that the 2016 Collection Letters Accelerated Their Debts Under Governing Law

As the issue of when acceleration occurs is substantive, California law governs under the

loans' choice of law provisions.[11] (*See* ECF 29-2, Ex. 1, Burinskas Loan Terms, at 4 ¶ L1; ECF

29-3, Ex. 2, Burinskas Loan Terms, at 5 ¶ L1; ECF 29-4, Ex. 3, Shadrin Loan Terms, at 4 ¶ 9). In

California, a promissory note is not accelerated automatically by its contractual terms. Rather, it

requires some "[affirmative] act . . . to effect such acceleration." *Green*, 27 Cal. Rptr. at 851-52.

While the defendants contend that caselaw governing mortgage acceleration should also

govern when student loan acceleration occurs, the plaintiffs argue that policy rationales unique to

the protection of mortgagors make this law distinguishable from that applicable to the present

debts. In California, "[t]he exercise of the option to accelerate [a mortgage loan] must be in a

manner that is clear and unequivocal and effectively informs the maker that the option to accelerate

has been exercised...." *In re Crystal Properties, Ltd., L.P.*, 268 F.3d 743, 750-51 (9th Cir. 2001),

citing *In re Holiday Mart, Inc.,* 9 B.R. 99, 105 (Bankr. D. Haw. 1981). A standard requiring an

"unequivocal" statement informing mortgagors that their loans have been accelerated seeks to

preserve homeownership, preventing a simple default from justifying a foreclosure without an

accompanying, additional warning. The defendants fail to supply, and the court fails to locate, any

---

[11] While the defendants argue that, under *Jennings*, 441 F. Supp. 3d 106, this would make the choice of law question regarding statute of limitations substantive, the court considers *for how long* the statute will run and *the reason the statute may be triggered* two distinct questions of independent significance. Moreover, Maryland and California law do not materially differ in the standard used to determine when acceleration occurs, making the choice of law immaterial to the motions' outcome. *Compare Green v. Carlstrom*, 27 Cal. Rptr. 850, 851-52 (Cal. Dist. Ct. App. 1963) ("The option to accelerate a promissory note does not operate automatically but some act is required to effect such acceleration") *with Hadjis v. Anderson*, 260 Md. 30, 41 (1970) (acceleration occurs when a party to a contract takes "some positive action" to show an intent to accelerate the maturity of an obligation).

controlling authority that has applied this arguably more rigorous standard to evaluating whether acceleration has occurred with respect to an unsecured promissory note.

In any event, the plaintiffs have sufficiently alleged through their pleadings and integral documents that, under the "affirmative act" standard, the 2016 collections letters served as notices of acceleration under an objective interpretation.[12] While the 2019 WFI letters unequivocally state that "SLS hereby accelerates the loan and demands all payments due" (ECF 34-4 at 2; ECF 34-8 at 2, 3), other evidence of acceleration, short of explicitly invoking the word, is present in the contents and circumstances of the 2016 collections letters.

The 2016 WFI letter to Mr. Shadrin identified the total amount of his loan and notified him that the total amount had been placed for collection. (ECF 34-2 at 3). The letter lists the borrower's account number, the amount owed ($15,452.61), and that same amount repeated immediately below a summation line. (*Id.*). The 2016 Sunrise Letter to Ms. Burinskas similarly stated an "Account Balance" of $17,683.79 and a "Balance Due" of the same amount, without any additional description or other dollar figures listed. (ECF 34-6 at 1).

SLS and WFI argue that such language merely identified the outstanding amount, and did not accelerate either loan. In support of this, the defendants cite an unpublished 1993 Fourth Circuit opinion. *See United States v. Neudai, Inc.*, 14 F.3d 598 (Table), No. 92-2389, 1993 WL 537722, at *3 (4th Cir. Dec. 16, 1993). In *Neudai*, however, the letters at issue referred to the past due interest, not the full balance of the loan, as the "balance due us," and failed to contain any language requesting immediate payment of this or any other amount. *Id.* at *2-*3. Such circumstances, where any reasonable person could not confuse this much smaller request with the acceleration of

---

[12] Though the plaintiffs additionally assert that Mr. Shadrin and Ms. Burinskas each personally believed their loans to be accelerated upon receipt of the letters, the relevant inquiry is objective, not subjective, in nature. (ECF 34 ¶¶ 52, 75).

the entire debt, are easily distinguished from the present facts, where the collection letters list figures that approximate the total debts of both plaintiffs.[13, 14]

Lending additional support to the plaintiffs' positions that the 2016 collections letters served to accelerate their loans is the fact that neither letter included any installment schedule or information about the amount, means by which, or possibility of making regular installment payments. (ECF 34-2, ECF 34-6). The plaintiffs cite a clause in Mr. Shadrin's contract that states: "the servicer shall tell me my new payment amount before it is due." (ECF 34-5 at 4).[15] Additionally, the plaintiffs allege that no further installment notices were ever sent by any servicer. (ECF 34 ¶¶ 82, 96). By not including this information or subsequently complying with its contractual obligations to provide monthly statements, Bank of America, which owned the plaintiffs' loans until 2017, and the servicing defendants also acted in a manner consistent with understanding the 2016 letters to have accelerated the debts.[16]

In sum, the plaintiffs have sufficiently pled that the 2016 collection letters began the statute of limitations for their servicers to file suit to recover the unpaid student loan debts. Each letter

---

[13] Though the plaintiffs contend that the exact amounts demanded and total principal owed differed by a few hundred dollars with respect to each loan, these differences are immaterial, and neither side disputes that the balances are intended to represent the bulk of the principal owed by the borrowers at the time of default.

[14] While not in any way binding, the plaintiffs cite to a New York State case that found a very similar communication from WFI sufficiently clear to constitute an acceleration letter. *See Student Loan Solutions, LLC v. Colon*, 69 Misc.3d 1222(A) (N.Y. Sup. Ct. 2020).

[15] The plaintiffs also appear to argue that the Truth in Lending Act (TILA) requires that any "adjustment to the interest rate with or without a corresponding adjustment to the payment in a variable-rate transaction subject to § 226.19(b) is an event requiring new disclosures to the consumer." 12 C.F.R. § 226.20. This provision, however, does not apply to unsecured student loans. *Id.* § 226.19(b) (holding § 226.20 applies "in a transaction secured by the consumer's principal dwelling").

[16] Both 2016 letters do contain boilerplate information urging the recipients to contact their servicers. (*See* ECF 34-2 at 3 ("We want to find a way to work with you in order to clear this outstanding balance"); and ECF 34-6 at 1 ("[Y]our attention is important and may avoid further collection efforts")). Such generic language, however, does little to further the defendants' interpretation of the letters as ambiguous collection notices, because pleas to contact the servicer and pay the debt owed are not inconsistent with what a reasonable person would expect to see included on a notice of acceleration demanding payment in full.

contained demands for the entire balance of the borrower's loan, coupled with the lack of information about or subsequent notices of installment payments. Together, these could fairly amount to an affirmative act necessary to accelerate an unsecured loan.

### b) Additional Grounds for Alleging FDCPA Violations

In addition to the argument that the defendants attempted to collect a debt that was barred by the statute of limitations, the plaintiffs contend that the demand for attorney's fees and threat of inclusion of court costs also constitute violations of the FDCPA, and have raised claims for declaratory and injunctive relief.

As the motion to dismiss the claim for using deceptive means to collect a debt will be denied, the court will defer ruling on these additional violations for now. The parties will not be prejudiced, as discovery in these closely related matters will substantially overlap. As the plaintiffs take issue with the evidentiary sufficiency of the general promissory note terms attached to the defendants' filings, which lack the plaintiffs' signatures or other obvious identifying information, this issue may be resolved through discovery. Similarly, investigation into whether Bank of America retained any records of communications regarding either plaintiff's loans could be useful in determining whether Bank of America in fact accelerated the loans as early as the time of charge-off in 2015. (*See* ECF 34 ¶¶ 34, 49-50).

### c) Defendant Feldman's Liability and *Bona Fide* Mistake Defense

The plaintiffs bring their FDCPA claim, *inter alia*, against Feldman for representing the servicer defendants in the allegedly time-barred 2020 collection litigation against Mr, Shadrin and Ms. Burinskas. Such litigation, like other debt collection activities, may expose attorneys to liability under the FDCPA. *See, e.g.*, *Knighten v. Palisades Collections, L.L.C.*, 721 F. Supp. 2d

1261, 1269-71 (S.D. Fla. 2010) (holding a lawyer violated provisions of the FDCPA by filing a time-barred lawsuit); *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1488 (M.D. Ala. 1987) (filing a time-barred claim without reason to believe the statute of limitations had been tolled was unfair in violation of 15 U.S.C. § 1692f.); *Puffinberger v. Commercion, LLC*, 2014 WL 120596 at *4 (D. Md. Jan. 10, 2014) (suing or threatening to sue on a time-barred claim violates 15 U.S.C. § 1692(e)).[17]

In response, Feldman asserts the *bona fide* error defense, under which a defendant may show that the violation "was not intentional and resulted from a bona fide error not withstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). The *bona fide* error defense applies to errors of fact, and may apply to errors of law not involving interpretation of the FDCPA itself. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 594 (2010).[18]

The plaintiffs have sufficiently pled that Feldman was on notice of the potential that collection of their debts was time-barred, because SLS recently had been found liable for illegally pursuing similar time-barred private student loan debts. (ECF 34 ¶¶ 125-126). Despite Feldman's insistence to the contrary, (*see* ECF 40-1 at 15), additional discovery is merited to determine facts specific to this case, including whether Feldman had access to Bank of America's records, any of the notices the plaintiffs allege previously accelerated their loans, or other information that would

---

[17] Unpublished opinions are cited for the persuasiveness of their reasoning, not for any precedential value.

[18] The parties dispute the applicability of the holding of the Supreme Court's decision in *Jerman*, 559 U.S. 573. There, the Court determined that "the bona fide error defense in [15 U.S.C.] § 1692k(c) does not apply to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA." *Id.* at 604-605. This holding does not control the present case, where Feldman contends that any error of law does not relate to the terms of the FDCPA, but rather whether the previous notices accelerated the plaintiffs' debts under California law. *See Jerman,* 559 U.S. at 580 n. 4 (declining to reach the issue); *see also Puffinberger*, 2014 WL 120596 at *4-*5. The court does not decide at this time what errors of state law, if any, can support a *bona fide* error defense.

Case 1:20-cv-03641-CCB   Document 65   Filed 03/31/22   Page 15 of 16

bear on Feldman's knowledge of the status of the plaintiffs' loans when they attempted to collect. Similarly, the plaintiffs assert that Feldman lacked, and Feldman fails to identify with specificity which procedures, if any, existed to avoid such errors, as required to successfully invoke the defense. *See* 15 U.S.C. § 1692k(c); (*see also* ECF 34 ¶ 71-72).

While it is important to protect attorneys' ability to advocate zealously for the legal position of their clients, Congress has expressly provided for liability for attorneys who engage in deceptive debt collection practices through litigation. This obligation falls short of "act[ing] as a compliance officer to review the entire servicing history of the loans" in question, as Feldman asserts. (ECF 40 at 16). Rather, it remains an attorney's ethical and "solemn duty to comply with the law and standards of conduct," and if on notice of a client's potential misbehavior, to investigate whether pursuing litigation may itself constitute a deceptive collection activity. *Jerman*, 559 U.S. at 600 (internal citation omitted). Thus, resolution of whether the *bona fide* error defense is applicable to Feldman's actions in this instance demands additional factual investigation.[19]

## CONCLUSION

---

[19] Feldman also disclaims liability because of MCPA's "professional services" exemption for attorneys. *See* Md. Code Ann., Com. Law § 13-104(1); (*see also* ECF 29 at 31). But in *Andrews & Lawrence Pro. Servs., LLC v. Mills*, the Maryland Court of Appeals held that:

> [I]n the context of debt collection activity, not all services provided by a lawyer or a law firm fall within the "professional services" exemption under the CPA. Specifically, where: (1) the lawyer's services could be provided by any licensed debt collection agency without regard to whether the agency is affiliated with a lawyer or a law firm; or (2) where the alleged conduct by the lawyer or law firm violates the MCDCA, the collection activities in question do not fall within the lawyers' professional services exemption of the CPA, thereby escaping the reach of the Act.

467 Md. 126, 168 (2020). As the plaintiffs allege that Feldman's MCPA violation is premised on a violation of the MCDCA, and that Feldman demanded attorney's fees for letters that could have been authored by non-attorney collectors, this claim will be allowed to proceed to discovery.

Given the sufficiency of the pleadings, Feldman's motion to dismiss will be denied, as will

SLS and WFI's motion for judgment on the pleadings. A separate order follows.


__3/31/2022_____                          ____/S/_____
Date                                          Catherine C. Blake
                                              United States District Judge

16