# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| YURY SHADRIN, et al, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>STUDENT LOAN SOLUTIONS, et al,<br>　　　　Defendants. | Case No.: 1:20-cv-03641-CCB |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Plaintiffs YURY SHADRIN and TANIA BURINSKAS, by and through undersigned counsel, submit this Memorandum of Law in support of their Motion for Preliminary Approval of Class Settlement, appointment of Plaintiffs as class representative and their counsel as class counsel, certification of the class for settlement only and setting a final approval hearing and notice in this action. Through their counsel, Defendants have reviewed this Memorandum prior to its filing, and they do not oppose any of the relief sought by the Plaintiffs.

In order to inform the members of the Class of the proposed settlement, and obtain their views regarding the proposed settlement, Plaintiffs respectfully requests that the Court issue an Order which: (1) sets a final approval hearing (at a date to be determined by the Court); (2) approves the form of the Notice of Class Action and Proposed Settlement (hereinafter referred to as "the Notice"); (3) authorizes mailing of the Notice; (4) sets dates for Class Members to seek exclusion from the Class Settlement and to submit any

objections; (5) certifies the Class and claims for the purpose of effectuating the settlement only; (6) preliminarily approves the settlement for submission to the Class; and (7) appoints Plaintiffs as class representative and appoints their counsel as Class Counsel.

## INTRODUCTION

Plaintiffs brought this action individually and on behalf of others similarly situated pursuant to Fed. R. Civ. P. 23. ECF 34. Plaintiffs alleged in the Complaint that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act, and the Maryland Consumer Protection Act by sending debt collection letters that deceptively stated that the recipient owed attorney fees in cases where the attorney fees were contingent and stated that if a lawsuit was filed, the court costs would be added to the amount owed by the recipient.

The parties negotiated a Settlement Agreement following mediation with the assistance the Hon. Carol E. Smith (retired) subject to the Court's approval. Exhibit 1. The settlement agreement represents a compromise between the parties' conflicting positions. The agreement provides for relief on the class claims set out below:

The Class consists of:

"Class Members" means:

> Any person to whom FELDMAN & ASSOCIATES, P.C. ("F & A") sent a letter within 1 year immediately preceding the filing of the Lawsuit that stated directly or indirectly that (a) the recipient owed attorney's fees in cases where F & A's fees were contingent and (b) that if a lawsuit was filed, the court costs would be added to the amount owed by the recipient.

The "Sub Class Members" means:

> Class Members to whom F & A sent letters on behalf of STUDENT LOAN SOLUTIONS, LLC ("SLS") and/or WILLIAMS & FUDGE, INC. ("W&F").

Class Members does not mean:

> An employee or independent contractor of Defendants, a relative of an employee or independent contractor of Defendants, an employee of the Court where the Lawsuit is pending, or a person who filed for bankruptcy and received a discharge after the date of the letter from F & A.

The Claims to be addressed on a class basis are:

> Claims under the Fair Debt Collection Practices Act, the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act arising from the facts alleged in the Amended Complaint.

The proposed settlement class meets the prerequisites of Fed. R. Civ. P. 23(a) It is sufficiently numerous, and has commonality, typicality and adequacy of representation. Manageability of the class is not an issue in a settlement class. The requirements of Rule 23(b)(3) are also met: the common issues predominate and a class action is superior to separate individual actions under the circumstances of the class.

The proposed settlement is fair and adequate. Under the proposed settlement Defendants will pay $210,000.00 into a common fund to compensate the class, and pay attorneys' fees and incentive awards. Defendants will pay the costs of class administration separately. Defendants will also provide equitable relief in the form of non-collection of debts, dismissal of cases, and satisfaction of judgments to a sub-class of those who have direct claims against Defendants SLS and W&F.

## FACTUAL BACKGROUND

Defendants are all entities that engaged in the collection of allegedly defaulted student loans. Defendants sought to collect through a campaign of letter writing and

lawsuits. In the course of this, Defendants made representations which Plaintiffs contend are false or misleading in violation of federal and state law, and for which Plaintiffs and the class seek to recover.

## THE SETTLEMENT TERMS

The terms of the settlement are as follows: Defendants shall pay $210,000.00, into a class fund which shall be applied to the fees of class counsel and distributed amongst the class pursuant to the terms of the Settlement Agreement. Exhibit 1 at 8-9. Any unclaimed funds shall not revert to the Defendants but be paid to the Maryland Volunteer Lawyers Service, Inc. as Cy Pres Recipients. Defendants shall also bear all costs and expenses associated with administration of the settlement. Further, Defendants shall cease all collection activity against Sub Class Members related to SLS Debt (as defined in the Settlement Agreement), cease prosecution of any pending collection suits against Sub Class Members involving SLS Debt, mark satisfied any judgments entered against Sub Class Members involving SLS Debt, and shall not retain any payments on the same after the effective date. Defendants shall not issue 1099-C reporting statements to Sub Class Members. The Defendants shall not transfer ownership or any purported right to collect on any SLS Debt.

In exchange, Defendants will receive a release the claims of Plaintiffs and the Class.

## THE SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR A CLASS ACTION

Fed. R. Civ. P. 23 requires that for a class to be certified:

Page **4** of **16**

(1) the class is so numerous that joinder of all members is impracticable ("numerosity");

(2) there are questions of fact or law common to the class ("commonality");

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and

(4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").

### 1. Numerosity

The first requirement of Rule 23 is that the class members be so numerous that joinder is not practical. "The numerosity requirement mandates only difficulty or impracticability of joinder, not impossibility." *Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337, 346 (D. Md. 2012). The number of class members required to certify a class is not definite, "rather practicality of joinder depends on several factors, including: (1) the size of class, (2) ease of identifying and serving its members, (3) their geographic dispersion, and (4) whether individual claims are so small as to inhibit a class member from pursuing his own interest." *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 498 (D. Md. 2010).

As stated by one court, "when the class is large, numbers alone are dispositive...." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). It is well established that where the class number is twenty-five or more, joinder is usually impractical. *Dameron v. Sinai Hosp. of Balt., Inc.,* 595 F.Supp. 1404, 1408 (D. Md. 1984). Even where the exact size of the class is unknown, if there is general knowledge or common sense that it is large, numerosity is satisfied. *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 556 (D. Md. 2006).

Indeed, requiring the Plaintiffs to provide an exact number would prevent most class actions from being certified. *Id.*

In the instant case, the class is sufficiently numerous. The class consists of approximately 65 individuals. Exhibit 1 at 4. The proposed class easily meets the numerosity required for a class action.

### 2. Commonality

Fed.R.Civ.P. 23(a)(2)'s commonality requirement for class certification requires that "there are questions of law or fact common to the class." This standard "is a liberal one that cannot be defeated by the mere existence of some factual variances among class members." *Smith v. Res-Care, Inc.*, 2015 WL 461529, at *4 (S.D. W. Va. Feb. 3, 2015) (citing cases). "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement" *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 369 (2011). Commonality requires the class members "claims must depend upon a common contention." *Id.* at 350. Although the rule speaks of questions, "what matters to class certification ... is ... the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 338 (emphasis in original) (internal citations omitted).

Here, commonality exists because there are common questions of fact and law, including whether F&A violated the FDCPA and the extent of SLS' and W&F's derivative liability for such violations.

### 3. Typicality

Fed.R.Civ.P. 23(a)(3) requires that the class representative have claims or defenses

"typical of the claims or defenses of the class." As with commonality, the threshold requirement for typicality is "not high." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) (citation omitted). Typicality does not require the claims of the class members to be perfectly identical; rather, typicality is satisfied where the claims are based on the same remedial legal theory. See *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011). "[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001)

In short, the inquiry is whether Plaintiffs are class members — can they assert the same claims, on the same basic facts as the other class members? That is the case. Plaintiffs legal claims and remedial theories are identical to those of the class.

### 4. Adequacy

#### (a) Adequacy of Representative

Fed.R.Civ.P. 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." This requires a two-pronged inquiry: "1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation."

*Donaldson v. Primary Residential Mortg., Inc.*, 2021 WL 2187013, at *6 (D. Md. May 28, 2021). The requirement of adequate representation is not a search for a perfect plaintiff with an unassailable claim. The requirement merely assures that absent class members who will be bound by the result are protected by a vigorous and competent prosecution of the case by someone who shares their interests. See 1 NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS, § 3:21 (4th ed. 2004).

The Named Plaintiffs in this case do not have interests antagonistic to the class members. To date, they have actively participated in this litigation, and will continue to do so on behalf of the members of the class. Plaintiffs are like the class members and share their interests in that all were subject to the same practices by Defendants.

### (b) *Adequacy of Counsel*

The adequacy of counsel is addressed by Rule 23 (g) which provides:

> (g) Class Counsel.
>
> (1) Appointing Class Counsel. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
> (A) must consider:
>
> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources counsel will commit to representing the class;
>
> (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

>(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;
>
>(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and
>
>(E) may make further orders in connection with the appointment.

Consideration of each of these factors warrants appointment of the Plaintiffs' counsel as class counsel in this matter.

INVESTIGATION: Plaintiffs' counsel (and former counsel) devoted time to identifying and pleading the claims, potential claims and defenses, finding out the relevant factual background, and determining whether class claims were likely to be viable before filing suit.

EXPERIENCE: As stated in their declarations, **Exhibits 3-4,** Plaintiffs' counsel have been appointed class counsel in many cases involving unlawful debt collection in Maryland state and Federal courts.

KNOWLEDGE OF APPLICABLE LAW: Plaintiffs' counsel focus their practices on consumer rights law, have spoken at conferences on the subject, and have published in the field. They have also represented consumers in many reported consumer rights cases, as noted in their declarations.

RESOURCES COUNSEL WILL COMMIT: To date, Plaintiffs' counsel combined have devoted more than 71 hours to this case in order to ensure due diligence such that that every claim asserted, and every paper filed, is well founded and done to the best of their ability

and with allocation of appropriate resources.[1]  Plaintiffs' counsel will continue to commit the necessary resources to litigate this case to its conclusion.

## RULE 23(B)(3) REQUIREMENTS ARE SATISFIED

Rule 23(b)(3) requires that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  The requirements of (b)(3) of Rule 23 are commonly referred to as predominance and superiority.

### A. Predominance

Fed.R.Civ.P. 23(b)(3)'s predominance requirement requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" "Where the purported class members were subject to the same harm resulting from the defendant's conduct and the 'qualitatively overarching issue' in the case is the defendant's liability, courts generally find the predominance requirement to be satisfied." *Starr v. Credible Behav. Health, Inc.*, 2021 WL 2141542, at *4 (D. Md. May 26, 2021) (quoting *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010)). "The entire notion of predominance implies that the Plaintiffs' claims need not be identical, and, as the Supreme Court has noted, a class can meet this requirement 'even though other important matters will have to be tried separately.'" *Krakauer*, 925 F.3d at 658 (quoting

---

[1] Plaintiffs' former co-counsel, Kathleen Hyland, devoted 123 hours to this case, before leaving private practice to work in the Consumer Protection Division of the Office of the Attorney General

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

Critically, while Rule 23(b)(3) requires a showing that common questions predominate, it does not require proof that those questions will be answered, on the merits, in favor of the class. *Amgen Inc. v. Ct. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) ("[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'").

Here the common issues are predominant. Individual questions of the degree of harm do not destroy predominance. The facts and law essential to the claims of all class members are the same.

**B. Superiority**

Superiority is the second prong of Rule 23(b)(3). Each of the issues identified support certification here.

**1. The interest of members of the class in individually controlling the prosecution or defense of separate actions.**

Whether or not class members want to file their own actions is often marked by a defendant appearing to advocate out of concern for the class members and preserving their rights to sue the defendant on an individual basis. The Court in *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir 1968) recognized the concern expressed by a defendant may be feigned since no defendant would truly want a slew of individual cases if the individuals were truly able to pursue individual claims:

> The lower court indicated that efficiency could best be served in the instant case by allowing intervention. However, the

> procedures available for handling proliferated litigation, including intervention, presuppose 'a group of economically powerful parties who are obviously able and willing to take care of their own interests individually * * *.' Frankel, Amended Rule 23 from a Judge's Point of View, 32 Antitrust L.J. 295, 298 (1966). **Yet if the purchasers fit this description, it is to be supposed that the defendants would join in demanding a class action since they could scarcely desire to defend separate actions by each party they have now admittedly injured.**

*Esplin v. Hirschi*, 402 F.2d at 101 (emphasis added).

In *Esplin* the class members were concerned with investments that they had made, and the Court posited that the class members would not be in position to pursue individual claims.

Here, there is no evidence of any individual interest in control of the litigation. In addition, anyone who wants to assert such an interest will be given the opportunity to opt-out or object to the settlement.

## 2. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class

The Plaintiffs are not aware of any other litigation seeking to hold Defendant accountable on the class claims.

## 3. the desirability or undesirability of concentrating the litigation of the claims in the particular forum

Litigating these claims in this court is desirable because almost all the class members are likely to be located within the geographical territory of this District and this Court has significant familiarity with the issues in this case, having handled Defendants' motions for judgment on the pleadings and to dismiss.

> **4. the difficulties likely to be encountered in the management of a class action.**

Manageability is not an issue in this settlement class.

<div align="center">

**THE SETTLEMENT IS FAIR AND ADEQUATE**

</div>

Once it has been determined that the Class should be certified, the Court must additionally evaluate the proposed class settlement for purposes of preliminary approval. The settlement must be fair and adequate to receive preliminary approval. Fed. R. Civ. P. 23(e)(2). The Rule requires the court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Each of these factors weighs in favor of the proposed settlement.

> **1. Adequate representation**

As set out above, the Plaintiffs are adequate representatives of the class whose interest are common with the class members and not adverse to them. Plaintiffs were

represented in the negotiations by competent counsel familiar with the relevant law and with class claims generally.

### 2. The settlement was negotiated at arm's length

The settlement was the result of lengthy arm's length negotiation and mediation before Hon. Carol Smith (Ret'd) on July 19, 2022. The parties then had further arm's length negotiations to arrive at the detail of the settlement agreement attached hereto as Exhibit 1.

### 3. The relief provided is adequate

The relief provided to all class members is financially significant: each class member is likely to receive in excess of $1,000 as a result of this settlement. In addition, the members of the sub-class (with direct claims against SLS and W&F) will receive significant non-monetary relief in the form of freedom of debt and from judgments which might otherwise be with them for many years to come.

### 4. The proposal treats class members equitably relative to each other

All class members are treated equally. The members of the sub-class will receive different relief from the members of the class at large because they have direct claims against Defendants SLS and W&F.

## THE PROPOSED NOTICE IS APPROPRIATE AND CAN BE SENT BY MAIL TO EACH CLASS MEMBER

The Plaintiffs have proposed a class notice to be sent to each member of the proposed class. The proposed notice is attached as **Exhibit 2**. The name of each class member is known to the Defendants.

**CONCLUSION**

Plaintiffs respectfully request that this Court grant preliminary approval of the class settlement.

                                                Respectfully submitted,

                                                */s/ Emanwel J. Turnbull*
Emanwel J. Turnbull
CPF# 1606210269
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd, Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
eturnbull@hollandlawfirm.com

Peter A. Holland
CPF# 9212160067
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Rd. Ste 230
Annapolis, MD 21403
Telephone: (410) 280-6133
Facsimile: (410) 280-8650
peter@hollandlawfirm.com

*Attorneys for the Named Plaintiffs
and the Putative Class*

**CERTIFICATE OF SERVICE**


I hereby certify that on December 2, 2022, I served the foregoing on all parties entitled to receive service electronically through the MDEC system.

    */s/ Emanwel J. Turnbull*
    EMANWEL J. TURNBULL